# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

MAX STORY, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

HEARTLAND PAYMENT
SYSTEMS, LLC, a Foreign Limited
Liability Company,

    Defendant.

CASE NO.:
3:19-cv-724-J-34JBT

## DEFENDANT HEARTLAND PAYMENT SYSTEMS, LLC'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

**ORR|COOK**

*/s/Michael Fox Orr*
**Michael Fox Orr, Esquire**
Florida Bar No.: 14594
morr@orrcook.com
nmitchell@orrcook.com
edocket@orrcook.com
**Kathleen H. Crowley, Esquire**
Florida Bar No.: 93587
kcrowley@orrcook.com
50 N. Laura St., Ste. 1675
Jacksonville, Florida 32202
Telephone: (904) 358-8300
Facsimile: (904) 358-8303

*Attorneys for Heartland Payment Systems, LLC*

1788589.1

## **Table of Contents**

I.   Background ..........................................................................................2

II.  Legal Standards ..................................................................................5

III. Argument ............................................................................................7

    A.   Story has obtained complete relief...............................................7

    B.   Because Story has obtained complete relief, his case is moot...................10

    C.   Story's case is moot even though he asserts class claims..........................14

    D.   Story's expected counterarguments are not persuasive. ............................17

        1.   Any (unlikely) deficiency in the amount of attorneys' fees Story has received does not create an Article III case or controversy...........................................................................17

        2.   HPS has already acquiesced to the injunctive relief Story requests, but in any event, he has always lacked Article III standing to pursue injunctive relief because he alleges only *past* wrongdoing. .................................................................18

        3.   Story's demand for a court order declaring HPS's conduct unlawful does not create an Article III case or controversy. .............19

IV. Conclusion ........................................................................................20

1788589.1

i

## Table of Authorities

**Cases**

*Al Najjar v. Ashcroft*,
    273 F.3d 1330 (11th Cir. 2001) ................................................................6

*Alliant Tax Credit Fund 31-A, Ltd. v. Murphy*,
    2012 WL 887589 (N.D. Ga. Mar. 15, 2012)...........................................5

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013)...................................................................................20

*Alvarez v. Smith*,
    558 U.S. 87 (2009)...................................................................................19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).................................................................................15

*Auto-Owners Ins. Co. v. Elite Homes, Inc.*,
    160 F. Supp. 3d 1307 (M.D. Fla. 2016)..................................................16

*Baez v. LTD Fin. Servs., L.P.*,
    2019 WL 2223773 (M.D. Fla. May 23, 2019)........................................7

*Belmont Condo. Ass'n. v. Geibel*,
    74 A.3d 10 (N.J. App. Div. 2013)............................................................8

*California v. San Pablo & Tulare R.R.*,
    149 U.S. 308 (1893).................................................................................10

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016)..................................................................... *passim*

*Chen v. Allstate Ins. Co.*,
    819 F.3d 1136 (9th Cir. 2016) ...............................................................13

*Church v. City of Huntsville*,
    30 F.3d 1332 (11th Cir. 1994) ...............................................................18

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)...................................................................................19

*Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.*,
    839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) ......................................8

*Delgado v. Collecto, Inc.*,
    2013 WL 6332748 (M.D. Fla. Dec. 5, 2013).......................................5, 6

*Demmler v. ACH Food Cos.*,
    2016 WL 4703875 (D. Mass. June 9, 2016).................13, 15, 17, 18, 20

*Devine v. Advanced Comput. Concepts Inc.*,
    2009 WL 78158 (D.N.J. Jan. 9, 2009) ................................................................8

*Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*,
    647 F.3d 1296 (11th Cir. 2011) ..............................................................5, 6

*Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*,
    104 F.3d 1256 (11th Cir. 1997) ..............................................................6

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ..............................................................6, 14, 15, 16

*Gray v. Kern*,
    143 F. Supp. 3d 363 (D. Md. 2016) ..............................................................13

*Lawrence v. Dunbar*,
    919 F.2d 1525 (11th Cir. 1990) ..............................................................6

*Lewis v. Cont'l Bank Corp.*,
    494 U.S. 472 (1990) ..............................................................17, 18

*Leyse v. Lifetime Entm't Servs., LLC*,
    679 F. App'x 44 (2d Cir. 2017) ..............................................................12

*Little v. Bowers*,
    134 U.S. 547 (1890) ..............................................................10

*N. Shore Gas Co. v. EPA*,
    930 F.2d 1239 (7th Cir. 1991) ..............................................................16

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ..............................................................14

*Ocean Dynamics USA, Inc. v. U.S. Dep't of Homeland Sec.*,
    2015 WL 12825787 (S.D. Fla. July 10, 2015) ..............................................................5

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ..............................................................15

*Price v. Berman's Auto., Inc.*,
    2016 WL 1089417 (D. Md. Mar. 21, 2016) ..............................................................12

*San Mateo Cty. v. S. Pac. R.R.*,
    116 U.S. 138 (1885) ..............................................................10

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ..............................................................15

*Simon v. E. Ky. Welfare Rights Orgs.*,
    426 U.S. 26 (1976) ..............................................................14

*Spencer v. Kemna*,
    523 U.S. 1 (1998) ..............................................................19

*Steel Co. v. Citizens for Better Env't,*
  523 U.S. 83 (1998)..........................................................................................17

*Stein v. Buccaneers Ltd. P'ship,*
  772 F.3d 698 (11th Cir. 2014) ......................................................................16

*United Consumer Fin. Servs. Co. v. Carbo,*
  982 A.2d 7 (N.J. App. Div. 2009)....................................................................8

*Warth v. Seldin,*
  422 U.S. 490 (1975)........................................................................................15

*Williams v. New Penn Fin., LLC,*
  2018 WL 8584149 (M.D. Fla. Dec. 21, 2018) ...............................................3

**Statutes**

28 U.S.C. § 2072..................................................................................................15

**Other Authorities**

Martin H. Redish, *Class Actions and the Democratic Difficulty: Rethinking the Intersection of Private Litigation and Public Goals,*
  2003 U. Chi. Legal F. 71 ..............................................................................16

Robert A. Skitol, *The Shifting Sands of Antitrust Policy: Where It Has Been, Where It Is Now, Where It Will Be in Its Third Century,*
  9 Cornell J.L. & Pub. Pol'y 239 (1999)........................................................16

This case is moot because Defendant Heartland Payment Systems, LLC ("HPS") has given Plaintiff Max Story complete relief.  HPS operates an online service called MySchoolBucks that gives parents a way to make electronic payments for their children's school-related activities.  Story, who is a plaintiffs' class action lawyer, uses MySchoolBucks.  Depending on a number of factors, transactions processed on MySchoolBucks may involve payment of a Program Fee (often $2.49).  When a Program Fee is charged, it is disclosed on the payment screen and authorized by the user.  Story does not claim otherwise.

Instead, Story has ginned up an erroneous theory: he says HPS represents that the school requires and retains the Program Fee, and parents pay this fee not for the convenience of making an electronic payment (rather than sending a check or cash), but because they are misled into believing they are making some sort of donation to the school.  HPS denies liability and is confident it will prevail in this action.  But merely by making these allegations, Story is likely to impose, without hyperbole, millions of dollars of costs on HPS. Discovery and motions practice in class cases is extraordinarily expensive and time-consuming.

Thus, HPS made a business decision to provide Story with complete relief and to moot his claim, such that he may not proceed on an individual or class basis.  Recently, the Supreme Court has considered when and how a defendant might moot the claim of a putative class representative.  In *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), the Court held that an ***unaccepted*** offer of judgment does not moot a putative class representative's claim. But the Justices also indicated that ***actual payment*** of complete relief could moot such a

claim.  When a plaintiff receives complete relief, there is no live "case" or "controversy," as required by Article III of the Constitution, and a plaintiff may not proceed on an individual or class basis—even if he wants to do so to obtain attorneys' fees.

HPS has provided complete relief here. Story's complaint asks for six specific forms of relief—five monetary and one injunctive: (1) disgorgement of the Program Fees he paid; (2) treble damages; (3) statutory damages; (4) attorneys' fees and costs; (5) prejudgment interest; and (6) injunctive relief requiring HPS to change certain disclosures. While HPS denies Story's claims, to avoid the substantial time, business disruption, and expense associated with defending this meritless putative class action, it gave Story everything he demands. It transferred $40,000 into Story's credit card account, more than enough money to cover items (1) through (5), and it voluntarily changed the disclosures Story (erroneously) says are deceptive, which takes care of (6). There is thus no longer any Article III case or controversy between the parties, so the complaint must be dismissed as moot.

## I.    Background

This case is about an online service that gives parents a convenient way to electronically pay for school-related purchases like in-school meals. HPS is a payment-processing and technology provider, and it offers a service called MySchoolBucks. D.E. 4 ("Compl.") ¶ 1. MySchoolBucks is a platform that gives parents a way to pay for their children's school meals and other expenses using easy and convenient online or mobile applications (by credit card, e-check, etc.). *See id.* Of course, parents who do not wish to use MySchoolBucks can pay for their children's activities the old-fashioned way: by sending their children to school with lunch money, cash or check.

Plaintiff Story is a user of MySchoolBucks. Compl. ¶ 2. He is also himself a plaintiff's class action lawyer. *See, e.g.*, *Williams v. New Penn Fin., LLC*, 2018 WL 8584149, at *4 (M.D. Fla. Dec. 21, 2018) (approving a FDCPA settlement in which Story and Varnell & Warwick, his lawyers in this case, represented the class plaintiff).

Story claims he paid a $2.49 "Program Fee" each time he used MySchoolBucks. Compl. ¶ 2. Although Story—like all MySchoolBucks users—was informed of this fee before completing any transactions, *see id.* ¶ 16, Story alleges that by charging that fee HPS violated New Jersey consumer protection laws. *See generally id.* The crux of Story's theory is this: HPS misled him into thinking his children's school requires and retains the Program Fee, when actually the fee is going to HPS. *See* Compl. ¶ 2; *see also id.* ¶ 3 (HPS "misleads consumers to believe the MySchoolBucks Program Fee monies are going to the school district, a government entity, when they are not"). Seizing on his experience as a plaintiff's class action lawyer, Story alleges that every parent in the United States was misled in the same way. *See id.* ¶ 25. In other words, Story insists that all MySchoolBucks users used the service and paid the Program Fee solely because they thought the fee was required and retained by their children's schools, and not because the service created ease and convenience.

HPS denies Story's claims and would ultimately prevail in this action. *See generally* D.E. 9 ("Ans."). But HPS seeks to avoid the cost of this litigation because, even though the case is substantively meritless, it is likely to be protracted and to cost the company millions of dollars in legal fees. Story and his counsel will seek to put HPS through expensive, time-consuming class discovery and motions practice. While it is unfortunate that Story can

impose such costs on HPS merely by making (unfounded) class allegations, HPS has made a business decision to avoid the substantial time, disruption, and expense that comes with defending against a (meritless) putative nationwide class action by giving Story complete relief—even though it denies any liability to him.

Story's complaint makes six demands for relief—five monetary and one injunctive: (1) disgorgement of all Program Fees collected and retained by HPS; (2) treble damages under the New Jersey Consumer Fraud Act ("NJCFA"); (3) statutory damages under the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("NJTCCWNA"); (4) attorneys' fees and costs; (5) prejudgment interest; and (6) injunctive relief prohibiting HPS from violating NJCFA and NJTCCWNA. *See* Compl. at 14-15 (prayer for relief ¶¶ c, e-h).[1]

On August 1, 2019, HPS processed a payment of $40,000 to Story's credit card account. *See* Declaration of David Hyde ("Hyde Decl.") ¶¶ 12-13, attached as Exhibit 1. That amount fully compensates (indeed, overcompensates) Story for the five categories of monetary relief he demands in his complaint. And HPS has also changed its terms of service and website, so Story's injunctive relief claim is now moot. Specifically, on July 31, 2019, HPS made two changes to its customer-facing statements that specifically address Story's allegations of deception. It changed the question-and-answer from the MySchoolBucks FAQ web page that is quoted in Story's complaint. *See* Compl. ¶¶ 18, 37, 48; *see also* Ex. 1 (Hyde Decl.) ¶¶ 5-6. And it also updated the MySchoolBucks terms of service, including changing the "Program Fee or Membership Fee" section quoted in Story's complaint. *See* Compl.

---

[1] As discussed in more detail below, several of Story's demands are either improper as a matter of law (e.g., his demand for punitive damages under the NJCFA, Compl. at 15 (prayer for relief ¶ f)), or do not on their own create an Article III case or controversy (e.g., his demand for attorneys' fees, Compl. at 15 (prayer for relief ¶ g)).

¶¶ 14, 36, 47, 74; *see also* Ex. 1 (Hyde Decl.) ¶¶ 7-8. These are the two, and only two, items that Story (erroneously) alleges are misleading.

By giving Story all the monetary and injunctive relief he demands, HPS has rendered Story's claims moot. This case should thus be dismissed for lack of jurisdiction.

## II.    Legal Standards

This Court lacks subject-matter jurisdiction because Story's claims against HPS are moot. Mootness arguments are generally presented in Rule 12(b)(1) motions. *See, e.g.*, *Ocean Dynamics USA, Inc. v. U.S. Dep't of Homeland Sec.*, 2015 WL 12825787, at *1 (S.D. Fla. July 10, 2015). But HPS has already answered, and Rule 12(b) motions "must be made before pleading," so this motion is one for judgment on the pleadings under Rule 12(c).

This distinction makes little difference. The legal standards for Rule 12(b) and 12(c) motions alleging lack of subject-matter jurisdiction are identical. *See, e.g.*, *Alliant Tax Credit Fund 31-A, Ltd. v. Murphy*, 2012 WL 887589, at *3 (N.D. Ga. Mar. 15, 2012). Moreover, district courts must consider even untimely Rule 12(b)(1) motions given their obligation to *sua sponte* dismiss cases where subject-matter jurisdiction is lacking. *See Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011); *see also, e.g.*, *Ocean Dynamics*, 2015 WL 12825787, at *1 n.2 ("Even if the construed Rule 12(b)(1) motion was untimely filed, the Court would be obligated to inquire into Defendants' subject-matter jurisdiction argument *sua sponte* to determine if subject-matter jurisdiction exists.").

The Court should thus analyze this motion as it would a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *See Murphy*, 2012 WL 887589, at *3. Such attacks on subject-matter jurisdiction come in two forms: "facial" and "factual." *Delgado v.*

*Collecto, Inc.*, 2013 WL 6332748, at *2 (M.D. Fla. Dec. 5, 2013). This motion is a factual

attack because it uses "matters outside the pleadings" to "challenge the existence of subject

matter jurisdiction in fact." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d

1256, 1261 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.

1990)) (internal quotation marks omitted). Because this is a factual attack, the "Court may

look outside the four corners of the complaint to determine if jurisdiction exists," and there is

no "presumption of truthfulness afforded to a plaintiff" as would exist in a facial attack (or a

Rule 12(b)(6) motion to dismiss). *Delgado*, 2013 WL 6332748, at *1. That is, the Court is

"free to weigh evidence outside the complaint." *Id.*

It is black-letter law that "Article III of the Constitution limits federal-court

jurisdiction to 'cases' and 'controversies.'" *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663,

669 (2016). That limitation means "federal courts cannot exercise jurisdiction over cases …

where the issue in controversy has become moot." *Fla. Wildlife Fed'n*, 647 F.3d at 1302. A

case becomes moot if, after filing, "an intervening circumstance deprives the plaintiff of a

'personal stake in the outcome of the lawsuit,'" *Campbell-Ewald*, 136 S. Ct. at 669 (quoting

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)), that is, "when the issues

presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome,"

*Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001). Importantly here, and as

discussed more below, named plaintiffs have no "legally cognizable interest" in obtaining

class certification if they have no individual claim: a plaintiff's "suit bec[omes] moot when

her individual claim bec[omes] moot, because she lack[s] any personal interest in

representing others in this action." *Genesis Healthcare*, 569 U.S. at 73.

## III.     Argument

The argument section of this motion proceeds in three parts. Part A describes how the monetary payment to Story was calculated, and it explains why that monetary payment and HPS's updates to its consumer-facing representations gave Story complete relief. Part B explains why, having obtained complete relief, Story's claims are now moot, and he cannot proceed on either an individual or class basis. And Part C addresses several arguments Story is likely to make, explaining why each is wrong.

### A.  Story has obtained complete relief.

HPS processed a payment of $40,000 to Story's credit card account, a Visa ending in -8655. *See* Ex. 1 (Hyde Decl.) ¶¶ 12-13. That amount was calculated as follows:

- The total of all Program Fees Story has paid to HPS for use of MySchoolBucks is $123.78. *Id.* ¶ 10. That is the maximum he could recover as disgorgement.

- Trebling that amount results in maximum NJCFA damages of $371.34.

- Statutory damages under NJTCCWNA are, at most, $100 per violation. Story has made 56 transactions using MySchoolBucks, *id.*, so his maximum statutory damages are $5,600.

- HPS estimated that a high-end hourly rate for Story's attorneys is $450,[2] and that they have expended no more than 40 hours to date on this matter,[3] such that a reasonable estimate of the maximum amount of Story's attorneys' fees through August 1, 2019, is $18,000. And HPS estimated that Story and his attorneys have expended no more

---

[2] *See Baez v. LTD Fin. Servs., L.P.*, 2019 WL 2223773, at *3 (M.D. Fla. May 23, 2019) (in a complex case where a "high-end fee" was appropriate, $450 was a reasonable hourly rate for Brian Warwick and Janet Varnell, Story's lawyers in this case). If this case moves forward and Story moves for an award of attorneys' fees after resolution, HPS reserves its right to challenge that request, including the reasonableness of this hourly rate.

[3] In the *Baez* matter, Varnick & Warwick's time records indicate that they spent about 14.1 hours drafting the complaint and miscellaneous initial filings, plus 6.6 hours reviewing the defendant's answer and miscellaneous initial filings. *See* Pl.'s Renewed Mot. for Attorneys' Fees, Costs, and Incentive Award and Mem. of Law on Support, Exhibit A (Varnell & Warwick Timesheet) at 1-2, *Baez*, 2019 WL 2223773 (No. 6:15-cv-01043-PGB-TBS), ECF No. 173-1 at PageID 3227-28. Those are the only tasks completed to date in this case. Out of an abundance of caution, HPS nearly doubled that figure—from 20.7 hours to 40 hours—to account for any additional work that Story's attorneys could possibly have performed here.

than $411 in costs on this matter, which includes the $401 filing and $10 summons fees in Duval County Circuit Court.

- Prejudgment interest in the amount of $46.17.[4]

Adding those figures together equals a total of $24,554.64. Out of an abundance of caution, HPS substantially increased that figure to $40,000. This amount gives Story more than the full amount of monetary damages he could recover in this lawsuit.

To be sure, Story's complaint purports to seek a few additional categories of monetary relief. But they are improper as a matter of law—he could never win them in this case—so HPS need not pay them to moot his claim.

In his NJCFA count, Story seeks treble **and** punitive damages. Compl. at 15 (prayer for relief ¶ f). But the NJFCA provides only for treble damages, N.J.S.A. § 56:8-19, and punitive damages are not available without an allegation of "common law fraud, a cause of action not pleaded by [Story]'s complaint." *Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.*, 839 A.2d 942, 968 (N.J. Super. Ct. Law Div. 2003) ("although three times the actual damages are made mandatory by the provisions of *N.J.S.A.* 56:8-19, common law punitive damages or damages under the New Jersey Punitive Damages Act, *N.J.S.A.* 2A:15-5.9 to -5.17, are not expressly provided for by the NJCFA and are only allowed in cases of common

---

[4] This amount is calculated as follows: Story has $123.78 in actual damages, plus $371.34 in treble damages and $5,600 in statutory damages, for a total of $6,095.12. The current yearly interest rate for prejudgment interest is a maximum of 3.5%, *see* N.J. Ct. R. 4:42-11, Editor's Note, which equates to yearly interest of $213.33, or $0.58 per day. Story filed this lawsuit on May 15, so 79 days' of interest accrued until August 1, for a total of $46.17. *See* N.J. Ct. R. 4:42-11(b) (prejudgment interest is "simple interest," running "from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later"); *see also, e.g., Devine v. Advanced Comput. Concepts Inc.*, 2009 WL 78158, at *4 (D.N.J. Jan. 9, 2009) (calculating interest on a NJCFA claim).

This amount is well above the maximum that Story could recover under New Jersey law (which he claims applies), given that prejudgment interest is inappropriate on treble damages under NJCFA, *see Belmont Condo. Ass'n. v. Geibel*, 74 A.3d 10, 35 (N.J. App. Div. 2013), and on civil penalties like the NJTCCWNA's $100 statutory damages, *see United Consumer Fin. Servs. Co. v. Carbo*, 982 A.2d 7, 26 (N.J. App. Div. 2009).

law fraud, a cause of action not pleaded by plaintiff's complaint"). Story also seeks *post*-judgment interest in addition to pre-judgment interest. But because HPS has given Story full relief before any judgment, there can be no post-judgment interest.

Beyond monetary relief, Story's complaint also demands "injunctive relief prohibiting [HPS] from future violations of the NJCFA and NJTCCWNA, as set forth herein and requiring [HPS] to comply with these statutes and all applicable regulations." Compl. at 15 (prayer for relief ¶ c). Story's complaint contains two (and only two) allegations about violations of NJCFA and NJTCCWNA. First, he says that the "Program Fee or Membership Fee" paragraph in the MySchoolBucks terms of service "misrepresents that school districts impose; establish the amount of the Fee and suggest that the school districts are receiving the Fee paid by Plaintiff and class members." *Id.* ¶ 36.

And second, he says that one specific question-and-answer in the "FAQ" section of the MySchoolBucks website is misleading because it "advertises that MySchoolBucks is free and that it is only costing parents money because the school districts impose a fee." *Id.* ¶ 37.

Story's complaint repeatedly quotes or refers to these (and only these) two alleged misrepresentations in his NJCFA and NJTCCWNA counts. *See id.* ¶¶ 36, 37 (Count I); *id.* ¶¶ 47, 48 (Count II); *id.* ¶ 58 (Count III, not quoting either passage but describing the alleged misrepresentation as "falsely claiming that Program Fee … was a pass-through cost"); *id.* ¶ 69 (Count IV, same: "representing … that the MySchoolBucks Program Fee was implemented by and that the monies were ultimately being transmitted to a government entity, when in fact, [HPS] required the Program Fee, collected, and retained the fee for itself. The monies from the Program Fee never went to the school districts.").

HPS amended both items on July 31, 2019. HPS changed the quoted question-and-answer from the "FAQ" section of the MySchoolBucks website. Ex. 1 (Hyde Decl.) ¶¶ 5-6. And HPS also updated the MySchoolBucks terms of service, changing the "Program Fee or Membership Fee" paragraph. *Id.* ¶¶ 7-8. The language about which Story (erroneously) complained is no longer presented to customers. *See id.* ¶¶ 5-8. Thus, HPS has voluntarily undertaken the steps that Story says it should be required to do, and his injunctive relief claims are moot.[5]

### B. Because Story has obtained complete relief, his case is moot.

Because HPS has given Story complete relief, he no longer has any "personal stake in the outcome of the lawsuit," *Campbell-Ewald*, 136 S. Ct. at 669, so his case is moot. In *Campbell-Ewald*, the Supreme Court held that "an *unaccepted* settlement offer" under Federal Rule of Civil Procedure 68 does not moot a plaintiff's claim. 136 S. Ct. at 666 (emphasis added). And in reaching its holding, *Campbell-Ewald* noted a trio of cases in which the Supreme Court held that claims were mooted based on ***actual payment*** of all the monetary damages sought by the plaintiffs. *Id.* at 671 (citing *California v. San Pablo & Tulare R.R.*, 149 U.S. 308 (1893); *Little v. Bowers*, 134 U.S. 547 (1890); *San Mateo Cty. v. S. Pac. R.R.*, 116 U.S. 138 (1885)). But *Campbell-Ewald* expressly reserved this question: "whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.* at 672. Here, as discussed more below, actual

---

[5] The amended MySchoolBucks ToS also contain an arbitration clause and class action waiver, which is retroactive and explicitly includes claims in this case. *See id.* ¶ 8 & Exhibit B thereto.

payment has been made to Story, and there is thus no longer any Article III case or controversy.

While *Campbell-Ewald* involved a payment that was rejected, not completed, this case presents a different scenario—a scenario that *Campbell-Ewald* recognized could moot a plaintiff's claims. HPS ***actually gave*** Story all the relief he seeks. It did not make an ***offer*** to settle, but instead it did everything Story demands: it unconditionally delievered to him all the money he seeks, and it changed the customer-facing representations he says are deceptive. Under the question reserved in *Campbell-Ewald*, Story's claims are moot. Indeed, both the majority and several separate opinions in *Campbell-Ewald* opined that a defendant could moot a case if it actually gave a plaintiff everything he demands.

Justice Alito's discussion of this scenario could not be clearer. He wrote that the "most straightforward way" for a defendant to moot a case "is simply to pay over the money." 136 S. Ct. at 684 (Alito, J., dissenting). He posited that a "defendant might hand the plaintiff a certified check or deposit the requisite funds in a bank account in the plaintiff's name." *Id.* (Alito, J., dissenting). This "outright payment," Justice Alito said, was "the surest way for a defendant to make the requisite mootness showing." *Id.* (Alito, J., dissenting).

Chief Justice Roberts, joined by Justices Scalia and Alito, would have held that even an unaccepted Rule 68 offer for full relief moots a case. *See id.* at 677 (Roberts, C.J., dissenting). Under that reasoning, actual payment—as here—necessarily would do the same. *See id.* at 680 (Roberts, C.J., dissenting) ("to the extent there is a question whether Campbell is willing and able to pay, there is an easy answer: have the firm deposit a certified check with the trial court").

Justice Thomas, in concurrence, examined the historical practice of tenders. Under that body of common law, a defendant could end a case by "offer[ing] to pay the entire claim" and "actually producing the sum at the time of tender in an unconditional manner." *Id.* at 675 (Thomas, J., concurring) (internal quotation marks omitted). Through that historical lens, Justice Thomas explained that Campbell-Ewald's Rule 68 offer was insufficient to moot the plaintiff's case only because the company did not "make payment; it only declared its intent to pay." *Id.* at 676 (Thomas, J., concurring). The natural extension of Justice Thomas's opinion is that if a defendant does in fact "make payment" in the amount of a plaintiff's demand—as here—the case would become moot. *See id.*

At bottom, *Campbell-Ewald* "endorse[s] the proposition that a plaintiff's claim ***is moot*** once he has 'received full redress' from the defendant for the injuries he has asserted. [It] ***thus does not prevent a defendant who actually pays complete relief***—either directly to the plaintiff or to a trusted intermediary—***from seeking dismissal on mootness grounds***." *Id.* at 685 (Alito, J., dissenting) (emphasis added and citations omitted). HPS has done just that.

And several lower-court cases have interpreted *Campbell-Ewald* to mean that that actual payment of full redress is sufficient to moot a plaintiff's claim. *See, e.g.*, *Leyse v. Lifetime Entm't Servs., LLC*, 679 F. App'x 44, 48 (2d Cir. 2017) (affirming judgment for the defendant in putative class action "upon [the defendant]'s depositing with the clerk of court the full amount of damages and costs recoverable by [the named plaintiff]"); *Price v. Berman's Auto., Inc.*, 2016 WL 1089417, at *3 (D. Md. Mar. 21, 2016) (declining to dismiss case because plaintiffs had returned check, but stating that if the defendant "reissues an unconditional cashier's check equal to the amount of the down payment plus interest, it may

re-file its motion and submit to the Court proof of payment and delivery of payment to

Plaintiffs. The Court will then dismiss Plaintiffs' TILA claim as moot."); *Demmler v. ACH*

*Food Cos.*, 2016 WL 4703875, at *7 (D. Mass. June 9, 2016) ("just like [the plaintiff]'s

individual claims, controlling Supreme Court and First Circuit precedent make clear that [the

putative class] claims are likewise no longer viable"); *Gray v. Kern*, 143 F. Supp. 3d 363,

367 (D. Md. 2016), *vacated on other grounds*, 702 F. App'x 132 (4th Cir. 2017) ("the Court

finds that a measure which makes absolutely clear that the defendant will pay the complete

relief the plaintiff can recover and that the plaintiff will be able to receive that relief will

moot the issue in controversy").

     It is true that some cases have rejected mootness challenges since *Campbell-Ewald*.

But those cases generally involve rejected payments or conditional offers to settle—different

scenarios from the one presented here. And, like the Supreme Court, those cases have

suggested that if a plaintiff ***actually receives*** full redress—as here—his case is moot. For

example, in *Chen v. Allstate Insurance Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016), the Ninth

Circuit held that Allstate had not mooted the plaintiff's claim by depositing money in an

escrow account because it had not "unconditionally relinquished its interest in" that money.

*Id.* at 1146. Instead, Allstate "retain[ed] its interest in the funds unless and until the district

court dismisses this entire action as moot." *Id.*

     But the Ninth Circuit recognized that, under *Campbell-Ewald*, a different result

would obtain if the defendant had "actually receive[d]" the funds: "a lawsuit—or an

individual claim—becomes moot when a plaintiff ***actually receives*** all of the relief he or she

could receive on the claim through further litigation." *Id.* at 1144 (emphasis in original). That

is precisely what happened here: Story has "***actually receive[d]*** all of the relief he[] could receive on the claim through further litigation." *Id. Chen* further recognized that if a plaintiff has obtained full relief, "and only the plaintiff's obstinacy or madness prevents her from accepting total victory," a district court has "authority … to enter judgment" even "over the plaintiff's objection." *Id.* at 1146. (quoting *Genesis Healthcare*, 133 S. Ct. at 1536 (Kagan, J., dissenting)). That is just what this Court should do.

### C. Story's case is moot even though he asserts class claims.

Story may argue that, even though his individual claims are moot, his lawsuit cannot be moot because he has asserted class allegations. Not so. The Supreme Court has recognized for decades that because litigants "do[] not have standing to seek relief based solely on the alleged injuries of others," *Campbell-Ewald*, 136 S. Ct. at 679 n.1 (Roberts, C.J., dissenting), a named plaintiff cannot represent a putative class unless he himself has an individual injury—something Story no longer has. *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class"); *Simon v. E. Ky. Welfare Rights Orgs.*, 426 U.S. 26, 40 n.20 (1976) (that "a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified

members of the class to which they belong and which they purport to represent'" (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).[6]

This principle exists for at least two reasons: one legal and one practical. Legally, Federal Rule of Civil Procedure 23, like any other rule enacted under the Rules Enabling Act, cannot "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Rule 23 creates the class action mechanism, but class actions are merely "a species" of "traditional joinder," which "enable[] a federal court to adjudicate claims of multiple parties at once, instead of in separate suits." *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010). And just "like traditional joinder," the class action procedure "leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Id.* So if a plaintiff would lack standing in a one-on-one suit, his assertion of class allegations cannot change that result because Rule 23's "'requirements must be interpreted in keeping with Article III constraints.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997)).

In *Genesis Healthcare*, the Supreme Court held that named plaintiffs whose individual claims become moot cannot continue litigating on behalf of absent plaintiffs. In that case, after the plaintiff had filed a putative collective action under the FLSA, the defendant made a Rule 68 offer of judgment. *Genesis Healthcare*, 569 U.S. at 69-70. After assuming that the Rule 68 offer mooted the plaintiff's individual claim, the Court held: "[i]n

---

[6] It is true that the *Campbell-Ewald* majority wrote that a named plaintiff "with a live claim of her own" must be given the opportunity to make her case for class certification. 136 S. Ct. at 672. But in *Campbell-Ewald*, as discussed at length above, the named plaintiff continued to have a "live claim" because the defendant's unaccepted Rule 68 offer was ineffective. Where, as here, a plaintiff does ***not*** have a live claim, that *Campbell-Ewald* dicta has no force. *See Demmler*, 2016 WL 4703875, at *8 n.10 (distinguishing *Campbell-Ewald* on this basis).

the absence of any claimant's opting in, [the plaintiff]'s suit became moot when her

individual claim became moot, because she **lacked any personal interest in representing**

**others in this action**." *Id.* at 73 (emphasis added). The Court could hardly have been clearer:

"the mere presence of collective-action allegations in the complaint cannot save the suit from

mootness once the individual claim is satisfied." *Id.*[7]

      Second, practically speaking, if plaintiffs who lack individual injuries could bring

class claims, then uninjured plaintiffs—and their lawyers—"would be tripping over each

other on the way to the courthouse." *N. Shore Gas Co. v. EPA*, 930 F.2d 1239, 1242 (7th Cir.

1991) (Posner, J.). Because class actions "line lawyers' pockets" even though they often lack

"any substance to the underlying allegations," Robert A. Skitol, *The Shifting Sands of*

*Antitrust Policy: Where It Has Been, Where It Is Now, Where It Will Be in Its Third Century*,

9 CORNELL J.L. & PUB. POL'Y 239, 266 (1999), the truth is that in "any realistic sense," most

class actions are not "brought either by or on behalf of the class members," but by "private

attorneys who initiate suit and who are the only ones rewarded." Martin H. Redish, *Class*

*Actions and the Democratic Difficulty: Rethinking the Intersection of Private Litigation and*

*Public Goals*, 2003 U. CHI. LEGAL F. 71, 77. That is, the "promise of substantial attorneys'

---

[7] Story may argue that a pre–*Campbell-Ewald* Eleventh Circuit case, *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698 (11th Cir. 2014), permits his class claims to go forward even though his individual claims are moot. If he does, he is wrong. The only holding of *Stein* was that an unaccepted Rule 68 offer of judgment does not moot an individual claim *See id.* at 701 ("only question presented" was "whether [a defendant's] [unaccepted] Rule 68 offers render[] [a] case moot"). It is true that *Stein* went on to discuss an "inherently transitory" exception to mootness, *see id.* at 705, but that discussion was dicta because it was "not necessary to the decision," *Auto-Owners Ins. Co. v. Elite Homes, Inc.*, 160 F. Supp. 3d 1307, 1313 (M.D. Fla. 2016) (Corrigan, J.). "And, of course, 'dicta is not binding on anyone for any purpose.'" *Id.* at 1313 (quoting *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010). In any event, the inherently transitory exception does not apply here (as it does, for example, in pretrial detention cases). If the Court reads *Stein* to compel a holding that Story may continue litigating his class claims even though his individual claims are moot, HPS reserves its right to argue that *Stein* is wrongly decided. *See Genesis Healthcare*, 569 U.S. at 76 (characterizing the inherently transitory exception to mootness as being "invariably focused on the fleeting nature of the challenged conduct giving rise to the claim, not on the defendant's litigation strategy").

fees provides the class lawyers with a private economic incentive," which in the end means class actions are "little more than private attorneys acting as bounty hunters." *Id.* And permitting class lawyers to bring class actions on behalf of uninjured plaintiffs would risk supercharging that twisted incentive—a risk that risk is especially acute when, as here, the named plaintiff is ***himself a class action lawyer***.

### D. Story's expected counterarguments are not persuasive.

#### 1. Any (unlikely) deficiency in the amount of attorneys' fees Story has received does not create an Article III case or controversy.

As described above, by paying Story $40,000, HPS has more than compensated him for all the monetary relief he seeks. HPS is confident that it has accurately estimated (truthfully, overestimated) Story's reasonable attorneys' fees. But even if HPS has underestimated—that is, even if HPS has paid Story less than the reasonable attorneys' fees he has actually incurred—that would not keep his case alive. That is because a plaintiff's "interest in attorney's fees is … insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990); *see also, e.g.*, *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 107 (1998) ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself.").

Courts addressing mootness challenges since *Campbell-Ewald* have held that claims for attorneys' fees do not create an Article III case or controversy. In *Demmler v. ACH Food Cos.*, 2016 WL 4703875 (D. Mass. June 9, 2016), for example, a plaintiff resisting a mootness challenge made "reference to the potential receipt of attorneys' fees as a prevailing

1788589.1

17

party as an additional source of this case's viability." *Id.* at *5. The district court, citing *Lewis*, *Campbell-Ewald*, and other cases, held that the plaintiff's alleged interest in attorneys' fees did not stave off mootness. And the facts of *Demmler* were even more favorable to the plaintiff: the defendant there had paid ***no attorneys' fees***; whereas HPS has made a good-faith (overly generous) estimate of Story's attorneys' fees and paid that amount to him unconditionally.

> **2.  HPS has already acquiesced to the injunctive relief Story requests, but in any event, he has always lacked Article III standing to pursue injunctive relief because he alleges only *past* wrongdoing.**

As described above, HPS has already changed the only two representations that Story's complaint alleges are misleading: it changed the MySchoolBucks ToS and FAQ. Thus, HPS has already given Story all the injunctive relief he seeks. Story may argue that his complaint requests some (unspecified) additional types of injunctive relief. Even if that were true, Story has ***never had standing*** to pursue prospective injunctive relief.

"Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1335 (11th Cir. 1994) (citations omitted). Story's complaint contains no allegation of a "real and immediate" threat of future injury. It contains no suggestion that he intends to use MySchoolBucks ever again. Nor does it contain any reason to think that if he does use MySchoolBucks again, he will be confronted with the same representations—representations that HPS has now changed.  Moreover, at the time he filed the Complaint, Story was apparently under no misapprehension about the Program Fees: he affirmatively

alleged that HPS, not the school district, retains those fees. So there is no plausible way he

could be misled by any future representations into thinking the opposite.

Story thus has no standing to seek injunctive relief from HPS.[8]

### 3. Story's demand for a court order declaring HPS's conduct unlawful does not create an Article III case or controversy.

Finally, Story may argue that this case is not moot because he has demanded a

declaration from the Court that HPS's conduct was unlawful. *See* Compl. at 15 (prayer for

relief ¶ d) ("Declare that Heartland violated the [NJCFA] and the [NJTCCWNA].***). This is

not enough to create an Article III "case" or "controversy" because federal courts "are not in

the business of pronouncing that past actions which have no demonstrable continuing effect

were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

 The Supreme Court squarely rejected an identical argument in *Alvarez v. Smith*, 558

U.S. 87 (2009). There, the plaintiffs sued the City of Chicago, arguing that a police seizure of

their property violated due process because the City had not afforded them a timely post-

seizure hearing. *Id.* at 92. During the case, the City returned the plaintiffs' property. Resisting

a mootness challenge, the plaintiffs argued that they still had an interest in a court order

declaring that the City's hearing procedures were unlawful, which the City denied. *See id.* at

93 ("The parties, of course, continue to dispute the lawfulness of the State's hearing

procedures."). The Supreme Court concluded that was not enough: "a dispute solely about

---

[8] The "capable of repetition" while "evading review" exception to mootness does not apply here. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (describing this doctrine as "appl[ying] only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality"). HPS would have no reason to amend the challenged representations ***back*** to those that Story contends are misleading, and it has no intention of doing so. Ex. 1 (Hyde Decl.) ¶ 9.

the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words 'Cases' and 'Controversies.'" *Id.*

The same is true here. HPS denies that its conduct was in any way wrongful, and Story presumably disagrees. But that "abstract[]" dispute, unconnected to "any concrete actual or threatened harm" to Story, is insufficient to create an Article III case or controversy.[9]

## IV.   Conclusion

For the reasons set forth above, this action should be dismissed as moot.

Dated August 1, 2019.

Respectfully submitted,

**ORR|COOK**

*/s/Michael Fox Orr*

**Michael Fox Orr, Esquire**
Florida Bar No.: 14594
morr@orrcook.com
nmitchell@orrcook.com
edocket@orrcook.com
**Kathleen H. Crowley, Esquire**
Florida Bar No.: 93587
kcrowley@orrcook.com
50 N. Laura St., Ste. 1675
Jacksonville, Florida 32202
Telephone: (904) 358-8300
Facsimile: (904) 358-8303

*Attorneys for Heartland Payment Systems, LLC*

---

[9] Relatedly, Story is also not entitled to a formal judgment in his favor, as opposed to merely a dismissal for lack of standing. In *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013), the Supreme Court held that "the lack of a judgment" does not "keep alive an otherwise-moot claim." *Demmler*, 2016 WL 4703875, at *5 (characterizing *Already*); *see also Campbell-Ewald*, 136 S. Ct. at 685 n.3 (Alito, J., dissenting) ("*Already* … affirmed an order of dismissal—not judgment for the plaintiff—where the plaintiff had received full relief from the defendant.").

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2019, I electronically filed the foregoing document using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other manner for those counsel or parties who are not authorized to receive electronically.

ORR|COOK

*/s/Michael Fox Orr*
_____
**Michael Fox Orr, Esquire**
Florida Bar No.: 14594
morr@orrcook.com
nmitchell@orrcook.com
edocket@orrcook.com
**Kathleen H. Crowley, Esquire**
Florida Bar No.: 93587
kcrowley@orrcook.com
50 N. Laura St., Ste. 1675
Jacksonville, Florida 32202
Telephone: (904) 358-8300
Facsimile: (904) 358-8303

*Attorneys for Heartland Payment Systems, LLC*

## SERVICE LIST

**MAX STORY VS. HEARTLAND PAYMENT SYSTEMS, LLC**
**CIVIL ACTION NO.: 3:19-cv-00724-J-34JBT**

**UNITED STATE DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**Janet R. Varnell, Esquire**
**Brian W. Warwick, Esquire**
Varnell & Warwick, P.A.,
P.O. Box 1870
Lady Lake, FL 32158
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com
*Counsel for Plaintiff*

1788589.1