## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MAX STORY, NANCY MURREY-SETTLE,
ALLEN CALL and JAMES EKE, on
behalf of themselves and all others similarly
situated,

           CASE NO.:  3:19-cv-00724-TJC-JBT
           CIVIL DIVISION

        Plaintiffs,

           **CLASS REPRESENTATION**
v.                **JURY TRIAL DEMANDED**

HEARTLAND PAYMENT SYSTEMS,
LLC, a Foreign Limited Liability Company,

        Defendant.
_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Max Story, Nancy Murrey-Settle, Allen Call, and James Eke ("Plaintiffs") file this class action complaint on behalf of themselves and all others similarly situated, by and through the undersigned attorneys, against Heartland Payment Systems, LLC (hereinafter "Heartland" or "Defendant"), and states as follows:

### I.       INTRODUCTION

1.      This is a class action on behalf of Plaintiffs and a class of all others similarly situated persons against Heartland Payment Systems, LLC, a payment processing and technology provider, who owns and operates MySchoolBucks, a platform used by over 2 million parents at over 30,000 schools nationwide to pay for their children's school meals, after-school programs, bus passes, and athletic fees.

2.      Plaintiffs and the putative class have children attending public schools that have contracted to use Heartland's MySchoolBucks program to pay for their children's school lunches

1

and other expenses. Heartland charges and collects from Plaintiffs and the class a standardized "Program Fee" each time funds are placed into the child's account.

3.     Heartland's standard form MySchoolBucks Terms of Service contract with Plaintiffs and class members dictated that New Jersey law applies.  After the filing of this lawsuit, Heartland attempted to introduce entirely new Terms of Service that include a retroactive arbitration clause with a class action ban and which required parents to waive participation in this lawsuit in order to even sign into their accounts.

4.     Heartland misleads consumers by stating that the MySchoolBucks "Program Fees" are required by the school districts, that the school district determines the amount of those fees and that the Program Fees are being paid to the school districts.  None of this is true.  This conduct violates the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. §56:8-1 *et seq*. and the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, ("TCCWNA") N.J.S.A. §56:12-14 *et seq*. It also constitutes a breach of contract.  Because Heartland's conduct is uniform, this case is well suited for class action treatment.

## II.     JURISDICTION AND VENUE

5.     This Court has jurisdiction and venue over this matter because the amount in controversy exceeds $15,000.00, and two of the named representative Plaintiffs are residents of Duval County, Florida; and Defendant conducts an on-going course of business in Duval County, throughout the State of Florida and the United States.

6.     The parties agreed that the laws of the State of New Jersey govern any dispute pursuant to their MySchoolBucks Terms of Service Agreement.

### III.    PARTIES

7.      Plaintiff, Max Story, is a natural person and is a resident of Duval County, and a citizen of the State of Florida.

8.      Plaintiff, Nancy Murrey-Settle, is a natural person and is a resident of Duval County, and a citizen of the State of Florida.

9.      Plaintiff, Allen Call, is a natural person and resident of Ouachita Parish, and a citizen of the State of Louisiana.

10.     Plaintiff, James Eke, is a natural person and resident of Douglas County, and a citizen of the State of Colorado.

11.     Defendant, Heartland Payment Systems, LLC's last headquarters was in Princeton, New Jersey until it was acquired by Global Payments in April of 2016.  Heartland's principal address is10 Glenlake Parkway, North Tower, Atlanta, Georgia 30328, and it is a corporate citizen of the States of Delaware and Georgia.

### IV.    FACTUAL ALLEGATIONS

12.     Heartland's MySchoolBucks program is the leading K-12 point of sale provider for online payments in the country.  Heartland has been providing this service for the past 16 years.

13.     Initially, Heartland solicits and contracts with various school districts to provide an online source for payments made to the school.  Once the school contracts with Heartland, parents of that school are strongly encouraged to use the Heartland system for all payments made to the school.  Parents link a credit or debit card to Heartland's system to pay for school meals, after-school programs, bus passes, and athletic fees.

14.     Each time funds are transferred into a student account, Heartland charges a MySchoolBucks "Program Fee" to the parent.

15.     The standard form Terms of Service in place at the time of filing this lawsuit between Plaintiffs and Heartland governs Plaintiffs' obligation to pay the Program Fee.  That contract and the concomitant explanations published on Heartland's website deceptively implied that the school districts impose and receive the MySchoolBucks Program Fees.  It stated:

> Program Fee or Membership Fee
>
> Your school district may require a program fee or membership fee for your use of the service.
>
> If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transition and any such program fee will be required for each payment you make using the Service.

**Exhibit A**.

16.     Reasonable consumers, such as the Plaintiffs, were misled to believe the school district, a government entity, "requires" the Program Fees and that such fees are retained by the school district.

17.     Heartland used the same standard form Terms of Service contract for all of its MySchoolBucks transactions nationwide.

18.     The Program Fee is a standardized amount that is charged and collected uniformly for each school district nationwide on a per transaction basis. The Program Fees charged to each putative class member are maintained in the payment records of Heartland as required by Federal Laws such as the Electronic Funds Transfer Act.

19.     For a period of time the Program Fee was $1.95 for most users and, overtime, Heartland increased the applicable MySchoolBucks Program Fee to $2.49 and above. For parents who cannot afford to deposit large sums of money on the account, such fees were quite draconian even prior to the increased charges. Thus, if a parent could only afford to transfer $10.00 at a time,

a Program Fee equal to nearly 20% of the deposit was taken.  Where the Program Fee was increased to $2.49, that same parent was required to pay nearly 25% of each deposit to Heartland.

20.     The FTC and courts enforcing various state consumer protection laws have long held that using language in a contract or advertising that deceives consumers into believing a charge or fee is either imposed by or transmitted to a governmental entity when, in fact, it is not, is unlawful. *See Hoffman v. Princess Cruises*, Inc., 2003 WL 157523, at *2 (Cal.App. 2 Dist.,2003)(Based on consumers reading of the advertising materials, they believed the "port charges/government fees" were government taxes or fees imposed by governmental entities at the ports they visited, which were collected by defendant [private entity] and paid to the governmental entities.)

21.     Heartland's MySchoolBucks website advertised that MySchoolBucks as free and that the only reason Plaintiffs had to pay any money is because his school district "required" them to pay such a fee:

Is there a fee for using MySchoolBucks?

Signing up for MySchoolBucks is free. Depending on your school/district and order/item you are purchasing, you may be required to pay a program or membership fee.

MySchoolBucks Frequently Asked Questions.[1]

22.     Although the MySchoolBucks Terms of Service Agreement and website declares that the school district requires the Program Fees, it is actually Heartland who implements, sets the fee amount, collects, and keeps the Program Fees.

23.     Some school districts around the country have even attempted to clarify the misleading nature of the representations surrounding the Program Fees by issuing precise

---

[1] https://www.myschoolbucks.com/ver2/help/gethelp.

statements to the public explaining that it is Defendant, and not the school district who sets and retains the fees.  For example, the Souderton Area School District in Pennsylvania released the following notice in regards to the 2017 MySchoolBucks Program Fee increase:  "Souderton Area School District does not collect or receive this fee. It is the fee charged by the company that administers the credit/debit card payments."[2]

24.    Similarly, Speedway Schools, in Indiana, released the following to parents regarding the Program Fee: "The MySchoolBucks service is supported by a transaction fee charged each time a parent adds money to their child's account. Speedway Schools does not pay for this service and does not receive any of the transaction fees charged by MySchoolBucks."[3]

25.    These notices demonstrate that the language Defendant uses in its MySchoolBucks Terms of Service contract either is anticipated to or actually has deceived consumers into believing that school districts establish the amount of the Program Fee and benefit therefrom.

## V.    FACTS RELATING TO NAMED REPRESENTATIVE PLAINTIFFS

### PLAINTIFF MAX STORY

26.    Plaintiff Max Story is a consumer protection attorney representing low income consumers and his wife is a pediatric mental health therapist who worked for seven years on the campus of Fletcher High School.  They have two children who attend public school in the Duval County, Florida school district and have both served on the board of each of their children's Parent Teacher Associations.

27.    In or around September 2015, Mr. Story created a MySchoolBucks account to pay for one of his children's school lunches and other fees. Based on the representations on Heartland's

---

[2] http://www.soudertonsd.org/parents-students/food-services/myschoolbucks-convenience-fee-increase.
[3] https://www.speedwayschools.org/domain/69.

website, Mr. Story believed that the fees were established by and went to the school district. Despite he and his wife being big supporters of and very involved in the public schools, they never were informed that the fees were in fact determined by Heartland and retained by Heartland.

28.     From September 2015 through May 2019, Mr. Story paid 56 Program Fees to Heartland ranging from $1.95 to $2.49.

29.     Despite Heartland's representation that the program was "Free", it was not free as a Program Fee was charged each and every time Mr. Story put funds into his MySchoolBucks account.

30.     Despite Heartland's representation that the School District "required" Mr. Story to pay a Program Fee, the Duval County School District did not require any such fee.

31.     Despite Heartland's representation that the Program Fees paid by Mr. Story were being paid to the School District, the Duval County School District did not receive any of the Program Fees paid by him.

**PLAINTIFF NANCY MURREY-SETTLE**

32.     Plaintiff Nancy Murrey-Settle is an employee of the Duval County School District and was a foster parent to two children in 2012, both of whom attended and still attend Duval County public schools.  As part of the State of Florida's foster parent program, the children receive free lunch.  One of her foster children was in the second grade and Ms. Murrey-Settle wanted to be in a position to provide a treat from the school's cafeteria upon occasion, such as a weekly ice cream, as a reward system to encourage the child's good behavior. As is the case in many school districts who implement the payment processing system, the school would not accept cash payments at the time.  Ms. Murrey-Settle was therefore forced to create a MySchoolBucks account for her foster child thinking that she could place $10.00 into the account for the purpose of

rewarding the little girl.  Ms. Murrey-Settle was distraught to learn of the high Program Fee she was required to pay in order to facilitate this payment.

33.     The following year, Ms. Murrey-Settle adopted the two foster children and they continue to attend public school in Duval County, Florida. Ms. Murrey-Settle routinely placed money into the MySchoolBucks account and was charged Program Fees for a period of approximately four years because it was imperative that her youngest child have access to simple carbohydrates in order to manage a genetic condition.  Once her youngest child reached the sixth grade and was more capable of handling cash responsibly, Ms. Murrey-Settle no longer made deposits into the MySchoolBucks account in order to stop paying the Program Fees.  She believes that she made her last deposit into the MySchoolBucks account sometime in 2016.

34.     Sometime after this lawsuit was originally filed, Heartland began sending Ms. Murrey-Settle emails informing her that there was a balance remaining in her MySchoolBucks account and urging her to sign into her account.  She went to the website to log in and retrieve the funds in the account only to read the "pop-up" notification that she would have to agree to the new Terms of Service in order to access her account, including consent to binding mandatory arbitration of all past and future claims, a class action ban and to specifically waive any right to participate in the instant lawsuit originally filed by Mr. Story.  She did not agree to the new Terms and Conditions.

35.     Ms. Murrey-Settle was later unable to access her account and retrieve the funds that Heartland said were in her account.

36.     Despite Heartland's representation that its program was "Free", it was not free as a Program Fee was charged each and every time Ms. Murrey-Settle put funds into her MySchoolBucks account.

37. Despite Heartland's representation that the School District "required" Ms. Murrey-Settle to pay a Program Fee, the Duval County School District did not require any such fee.

38. Despite Heartland's representation that the Program Fees paid by Ms. Murrey-Settle were being paid to the School District, the Duval County School District actually did not receive any of the Program Fees paid by her.

## PLAINTIFF ALLEN CALL

39. Plaintiff Allen Call is an information technology professional and his wife is a school teacher in the town of West Monroe, Louisiana. They have two school aged children in the Ouachita Parish School District, the oldest which is Autistic.

40. Sometime during 2012, Mr. Call received notification from the Ouachita Parish School District that parents could no longer send checks to pay for their children's lunch and would thereafter either have to send cash with the child or create a MySchoolBucks account with Heartland. Sending cash with their children, especially a child with Autism, was a very unworkable solution for Mr. Call. As a result, he was forced to create a MySchoolBucks account.

41. Between 2012 and 2019, Mr. Call was charged and paid numerous Program Fees associated with his MySchoolBucks account.

42. Just before the start of the 2019-2020 school year, Mr. Call went to the MySchoolBucks website to log in to his account to deposit funds. Before he could access his account, however, Heartland required him to agree to new Terms of Service. Mr. Call was very distressed to learn that the new Terms of Service required him to consent to binding, mandatory arbitration of all past and future claims, banned him from participating in any class action, and specifically waived his right to participate in the instant lawsuit.

43.     He did not agree to the new Terms of Service.  As a result, Mr. Call was unable to access his account and was also unable to retrieve any funds that remained in his account from last year.

44.     Because Mr. Call chose not to sign onto the Heartland account and waive his claims and rights, he has been forced to send his children with cash to school in order to pay for their lunch and other expenses.

45.     Despite Heartland's representation that its program was "Free", it was not free as a Program Fee was charged each and every time Mr. Call put funds into his MySchoolBucks account.

46.     Despite Heartland's representation that the School District "required" Mr. Call to pay a Program Fee, the Ouachita Parish School District did not require any such fee.

47.     Despite Heartland's representation that the Program Fees paid by Mr. Call were being paid to the School District, the Ouachita Parish School District actually did not receive any of the Program Fees paid by him.

**PLAINTIFF JAMES EKE**

48.     Plaintiff James Eke currently has a child at Sage Canyon Elementary School in the Douglas County School District in the State of Colorado.

49.     Sometime during the 2013-2014 school year, Mr. Eke began participating in Heartland's MySchoolBucks program.

50.     Douglas County School District uses the MySchoolBucks program for everything the school district must obtain from parents. This includes fees for all services/programs that Douglas County School District collects for such as: lunch, field trips, bus passes, choir costs, musical instruments, sports programs, graduation, etc.  Additionally, the MySchoolBucks program

is also utilized to provide information to and from parents including liability waivers, special program forms and permission slips.

51.     Mr. Eke used his MySchoolBucks account to pay all school fees and submit all necessary waivers, signatures, and sign ups that the school required or offered on MySchoolBucks.

52.     Mr. Eke had set up his MySchoolBucks account to automatically withdrawal $30 from his bank account and transfer the $30 into Heartland's MySchoolBucks account whenever his child's MySchoolBucks account reached $5. This was done primarily so his child would consistently have money for school lunch.

53.     Each and every time Mr. Eke's MySchoolBucks account automatically replenished $30 from his bank account, he was charged a Program Fee which Mr. Eke believed was going to Douglas County School District.

54.     Just prior to the beginning of the 2019-2020 school year, Mr. Eke attempted to log onto his MySchoolBucks account to pay his child's $10 annual Instructional Material Fee for the 2019-2020 school year.  A pop-up appeared on his computer screen requiring Mr. Eke to agree to a new Terms of Service with Heartland.

55.     Upon reviewing Heartland's new Terms of Service, Mr. Eke took issue with the mandatory arbitration provision and class action waiver. Of particular concern, was the fact that Heartland was requiring all individuals who wished to continue to use MySchoolBucks to waive any right to participate in the instant lawsuit.

56.     Because Mr. Eke did not want to waive any of his rights in this lawsuit or submit to mandatory arbitration, he chose not to agree to Heartland's the new Terms of Service.

57.     Mr. Eke was not permitted to proceed any further on the MySchoolBucks website as a result of rejecting Heartland's new Terms.

58.     Mr. Eke's child used the small amount of funds remaining in the account during the beginning of the 2019-2020 school year to purchase lunch.

59.     In or around late August 2019, when Mr. Eke's child's MySchoolBucks remaining balance reached zero dollars, Mr. Eke received phone calls from the Douglas County School District declaring that he would need to agree to the Heartland's new Terms of Service and reestablish his MySchoolBucks account in order for his child to receive a school lunch.

60.     After lengthy conversations with Mr. Eke's child's school administrators and Douglas County School District officials, it was determined that Mr. Eke could write checks made out to Douglas County School District who would then indirectly fund his child's MySchoolBucks lunch account.

61.     Mr. Eke suffers other harm for preserving his rights by rejecting MySchoolBucks new Terms of Service.  For example, Mr. Eke is no longer permitted to sign up his child for choir on MySchoolBucks. Mr. Eke's child's choir is registered on a first come-first serve basis.  Being able to access sign up forms on the MySchoolsBucks platform. Mr. Eke is not able to access this provision as a result of his rejection of Heartland's onerous Terms of Service which prejudices him and his child.

62.     Additionally, Mr. Ekes is not able to access school field trip waivers and permission forms.  As a result, his child almost was not permitted to participate in an overnight fieldtrip because Douglas County School District was ill-equipped for the contingency that a parent could not access the MySchoolBucks account as a result of rejecting Heartland's new Terms of Service. Despite Heartland's representation that its program was "Free", it was not free as a Program Fee was charged each and every time Mr. Eke put funds into his MySchoolBucks account.

63.     Despite Heartland's representation that the School District "required" Mr. Eke to pay a Program Fee, the Douglas County School District did not require any such fee.

64.     Despite Heartland's representation that the Program Fees paid by Mr. Eke were being paid to the School District, the Douglas County School District actually did not receive any of the Program Fees paid by him.

## VI.    CLASS REPRESENTATION ALLEGATIONS

65.     Pursuant to Federal Rule of Civil Procedure 23(a), (b) (2) and (b) (3), Plaintiffs bring this action on behalf of themselves and all others similarly situated.

66.     The Class is defined as:

**NATIONAL CLASS:**   All persons in the United States who entered into a MySchoolBucks Terms of Service Agreement with Heartland in a form substantially similar to Exhibit A, and paid a MySchoolBucks Program Fee to Heartland.

67.     The applicable Terms of Service Agreement dictates that New Jersey law applies. The statute of limitations is six years for the New Jersey Consumer Fraud Act ("NJCFA"), the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), and Breach of Contract claims under New Jersey Law.

68.     Plaintiffs can identify and ascertain all other class members from Heartland's business records. These records are computerized and will reflect which customers were charged and paid Heartland's deceptive MySchoolBucks Program Fee within the class period. Thus, Plaintiffs' proposed classes are ascertainable.

69.     Plaintiffs do not know the exact size of the class because this information is in Heartland's exclusive control. However, based on the nature of the commerce involved and the size and scope of Heartland's business, Plaintiffs believe the class members number in the tens of

thousands and that class members are dispersed throughout the United States, including Florida. Therefore, joinder of all class members would be impracticable.

70.     Plaintiffs' claims are typical of other class members' claims because Plaintiffs and all class members were subject to a standard form Terms of Service Agreement and were charged the same unlawful MySchoolBucks Program Fee by Heartland.

71.     Questions of law and fact common to the Class exist and predominate over questions affecting only individual members, including, *inter alia*, the following:

> (a)     Whether Heartland's representations regarding the MySchoolBucks Program and its Program Fee are misleading and deceptive;
>
> (b)     Whether Heartland's Term of Service Agreement section titled "Program Fee or Membership Fee" violates the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*;
>
> (c)     Whether the aforementioned violations of the NJCFA constitutes violations of the New Jersey Truth-in-Consumer Contract Warranty and Notice Act, N.J.S.A. 56:12-14 et seq., specifically N.J.S.A. 56:12-15;
>
> (d)     Whether Heartland's actions have proximately caused injury to Plaintiffs and members of the class and, if so, the proper measure of damages;
>
> (e)     Whether Heartland breached its contracts with consumers by not providing a free service and paying any program fees to the school districts; and
>
> (f)     Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

72.     The named Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class because they possess no interest antagonistic to the class members they

seek to represent, and because the adjudication of their claims will necessarily decide the identical issues for all other class members. Whether the NJCFA and/or the TCCWNA have been violated involves predominating common issues that will be decided for all consumers who entered into similar or identical Terms of Service Agreements. There is nothing peculiar about the Plaintiffs' situations that would make them inadequate class representatives.

73.     Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation.

74.     A class action is superior to other methods for the fair and efficient adjudication of this controversy because the damages suffered by each individual Class member are relatively modest, compared to the expense and burden of individual litigation. It would be impracticable for each Class member to seek redress individually for the wrongful conduct alleged herein. It would be difficult, if not impossible, to obtain counsel to represent Plaintiffs on an individual basis for such small claims. More importantly, the vast majority of Class members are not aware that Heartland's MySchoolBucks Program Fee violates the NJCFA and TCCWNA and/or breached their contracts. Practically speaking, a class action is the only viable means of adjudicating the individual rights of Plaintiffs and the class. There will be no difficulty in the management of this litigation as a class action as the legal issues affect a standardized pattern of conduct by Defendants and class actions are commonly used in such circumstances.

75.     Heartland also acted and refused to act on grounds generally applicable to the Class, thereby making appropriate declaratory relief and corresponding final injunctive relief with respect to the Class as a whole under Federal Rule of Civil Procedure 23(b)(2). Heartland should be enjoined from misleading consumers by asserting that its Program Fees are "required" by the

school district, and are ultimately paid to the school district, a government entity, when Heartland actually keeps the Program Fee for itself.

**<ins>COUNT I:</ins>**
**Violation of the New Jersey Consumer Fraud Act**
**N.J.S.A. 56:8-2.1 *et seq.***

76.     Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege paragraphs 1 through 75 as if expressly set forth in this Count.

77.     Heartland's Terms of Service dictates that New Jersey law applies.

78.     N.J.S.A. 56:8-2.1 declares that it shall be an unlawful practice for any person or entity to operate in a manner which "wrongfully implies" an association with a governmental agency or entity.

79.     Heartland's standard form MySchoolBucks Terms of Service Agreement improperly implies an association between Heartland and the school districts it contracts with to the extent it states that it is the School District that "requires" parents to pay a Program Fee, and to the extent it suggests that the school district is receiving all or a portion of the  Program Fees paid by Plaintiffs and class members.

80.     The Terms of Service falsely states:

Program Fee or Membership Fee

Your school district may require a program fee or membership fee for your use of the Service. If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

81.     Additionally,   Heartland's   MySchoolBucks   website   misrepresents   that MySchoolBucks is free when it is not:

Is there a fee for using MySchoolBucks?

16

> Signing up for MySchoolBucks is free. Depending on your school/district and order/item you are purchasing, you may be required to pay a program or membership fee.[4]

82.    Since the entire purpose of having a MySchoolBucks account is to pay funds to the school, and no funds can be put onto the account without first paying a Program Fee, MySchoolBucks is never "free."  Stating that the service is "free" to the consumer is plainly false and is used to further deceive Plaintiffs and the class into believing that the Program Fee is required and retained by the School.

83.    In reality, it is Heartland that actually establishes the amount of the Program Fee, charged and retains the Program Fee for itself, despite misleading and deceptive representations to the contrary which constitutes an unconscionable commercial practice, deception, false promise, false pretense and/or misrepresentations in violation of N.J.S.A. 56:8-2.1.

84.    Plaintiffs and class member suffered an ascertainable loss in that they paid the MySchoolBucks Program Fee.

85.    The ascertainable loss suffered by Plaintiffs and class members was caused by Heartland's failure to comply with N.J.S.A. 56:8-2.1.

86.    As a result of these acts, Heartland has violated the NJCFA N.J.S.A. 56:8-2.1. Plaintiffs and class members are entitled to a full refund of each and every MySchoolBucks Program Fee that Heartland charged, collected, and retained through the use of its standard form MySchoolBucks Terms of Service Agreement.

87.    In addition, Plaintiffs and class members are entitled to declaratory and injunctive relief, declaring that Heartland violated N.J.S.A. 56:8-2.1; and prohibiting Heartland from further violations of the New Jersey CFA.

---

[4] https://www.myschoolbucks.com/ver2/help/gethelp.

88.     Plaintiffs and class members are entitled to treble damages pursuant to N.J.S.A. 56:8-19.

89.     In accordance with N.J.S.A. §56.8-19 and N.J.S.A. §56.12-17, Plaintiffs and class members are entitled to attorney's fees and litigation costs.

<u>**COUNT II**</u>
**Violation of the New Jersey Consumer Fraud Act**
**N.J.S.A. 56:8-2.1 *et seq.***

90.     Plaintiffs, on behalf of themselves and all others similarly situated, repeats and realleges paragraphs 1 through 75 as if expressly set forth in this Count.

91.     N.J.S.A. 56:8-2. declares that:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

92.     Pursuant to N.J.S.A 56:8-1 (c), the term "merchandise" shall include "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale," including the MySchoolBucks service offered by Heartland.

93.     Heartland's standard form MySchoolBucks Terms of Service Agreement misrepresents that school districts "require" and establish the imposition of and the amount of the MySchoolBucks Program Fee paid by Plaintiffs and class members as follows:

Program Fee or Membership Fee

> Your school district may require a program fee or membership fee for your use of the Service. If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

94.     Additionally, Heartland advertises on the MySchoolBucks website that MySchoolBucks is "free" and that the school districts impose the Fee:

> Is there a fee for using MySchoolBucks?
> Signing up for MySchoolBucks is free. Depending on your school/district and order/item you are purchasing, you may be required to pay a program or membership fee.[5]

95.     In reality, no school district "requires" a Program Fee to be paid.  Heartland is the entity that implements, establishes the amount of the Program Fee and retains the Program Fee for itself from Plaintiffs and class members, despite representations to the contrary which constitutes an unconscionable commercial practice, deception, fraud false promise, false pretense and/or misrepresentations in violation of N.J.S.A. 56:8-2.

96.     Plaintiffs and class members suffered an ascertainable loss in that they were subject to the misleading and deceptive representations and paid the MySchoolBucks Program Fee to Heartland.

97.     The ascertainable loss suffered by Plaintiffs and class members was caused by Heartland's failure to comply with N.J.S.A. 56:8-2.

98.     As a result of these acts, Heartland has violated the NJCFA N.J.S.A. 56:8-2. Plaintiffs and class members are entitled to a full refund of each and every MySchoolBucks Program Fee that Heartland has charged, collected, and retained through the use of their standard form MySchoolBucks Terms of Service contract and their website advertisement.

---

[5] https://www.myschoolbucks.com/ver2/help/gethelp.

99.     In addition, Plaintiffs and class members are entitled to declaratory and injunctive relief, declaring that Heartland violated N.J.S.A. 56:8-2; and prohibiting Heartland from further violations of the NJCFA.

100.     Plaintiffs and class members are entitled to treble damages pursuant to N.J.S.A. 56:8-19.

101.     In accordance with N.J.S.A. §56.8-19 and N.J.S.A. §56.12-17, Plaintiffs and class members are entitled to attorney's fees and litigation costs.

<u>**COUNT IV**</u>
**Violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, ("TCCWNA") N.J.S.A. §56:12-14 *et seq*.**

102.     Plaintiffs, on behalf of themselves and all others similarly situated, repeats and realleges paragraphs 1 through 75 as if expressly set forth in this Count.

103.     The New Jersey Truth in Consumer Contract, Warranty and Notice Act § 56:12-14 *et seq.,* prohibits sellers from "offer[ing] to any consumer or prospective consumer or enter[ing] into any written consumer contract or giv[ing] or display[ing] any written consumer warranty, notice or sign" that "violates any clearly established legal right of a consumer." N.J.S.A. 56:12-15.

104.     Heartland violated the TCCWNA by representing to Plaintiffs and Class members that the MySchoolBucks Program Fee was "required" by and that the monies were ultimately transmitted to a government entity (the school district), when in fact, Heartland required the Program Fee, collected, and retained all Program Fees for itself. The Program Fees never went to the school districts.

105.     The TCCWNA's damages provision also provides that "any person who violates the provisions of this Act shall be liable to the aggrieved consumer for a civil penalty of not less

20

than $100, or actual damages or both, at the election of the consumer, together with reasonable attorney fees and costs." N.J.S.A § 56:12-17

106.    The New Jersey Consumer Fraud Act N.J.S.A. §56:8-2.1 and §56:8-2 were clearly established laws at the time Heartland contracted with Plaintiffs and class members for the MySchoolBucks program.

**COUNT V**
**Breach of Contract**

107.    Plaintiffs, on behalf of themselves and all others similarly situated, repeats and realleges paragraphs 1 through 75 as if expressly set forth in this Count.

108.    Plaintiffs and Class members contracted with Heartland for the use of the MySchoolBucks program. Exhibit A. Terms of Service (Updated on May 3, 2016).

109.    Plaintiffs and Class members performed all conditions precedent to filing this action.

110.    The Paragraph titled "Program Fee or Membership Fee) of the standardized MySchoolBucks program Terms of Service contract between Plaintiffs and Class members declares:

> Your school district may require a program fee or membership fee for your use of the Service. If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

111.    Because Heartland represented that the school districts require and would ultimately retain the MySchoolBucks Program Fee, when, in fact, Heartland implemented the fee, determined the amount of the fee and retained the monies for itself, Heartland has materially breached the MySchoolBucks Terms of Service with Plaintiffs and Class members.

112.    As a direct and proximate result of Heartland's material breach, Plaintiffs and Class members have been harmed by paying the MySchoolBucks Program Fee under the representation that the school districts require the fee and retained the monies from the fee, when, in fact, it is Heartland who ultimately charges and retains the fee.

113.    Plaintiffs and the class have retained the undersigned attorneys to represent them in this action and are required to pay them a reasonable fee for their services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter an Order:

a.    Certifying this action as a class action as provided by Rule 23(a) and (b) of the Federal Rules of Civil Procedure, appointing Plaintiffs as class representative, and appointing the undersigned to act as Class Counsel;

b.    Declare that Heartland is financially responsible for notifying all Class members;

c.    For injunctive relief prohibiting Heartland from future violations of the Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq* and Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14 *et seq*, as set forth herein and requiring Heartland to comply with these statutes and all applicable regulations;

d.    Declare that Heartland violated the Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*, and the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14 *et seq.*

e.    Awarding disgorgement of all the MySchoolBucks Program Fees Heartland has collected and retained pursuant to the MySchoolBucks Terms of Service;

f.    Awarding actual damages, punitive damages, treble damages pursuant to N.J.S.A.§ 56:8-19, and statutory damages pursuant to N.J.S.A. §56: 12-17 and all other applicable statutes;

g.      Awarding reasonable attorneys' fees and costs of suit in connection with this action pursuant to N.J.S.A. § 56:8-19 and N.J.S.A. §56:12-17;

h.      Awarding pre-judgment and post-judgment interest; and

i.      For such other and further relief as Plaintiffs and class members may be entitled or as the Court deems equitable and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted this 4th day of December, 2019.

VARNELL & WARWICK, P.A.
s/ Janet R. Varnell
Janet R. Varnell, FBN:  0071072
Brian W. Warwick, FBN:  0605573
P.O. Box 1870
Lady Lake, FL  32158
Telephone: (352) 753-8600
Facsimile:  (352) 504-3301
*jvarnell@varnellandwarwick.com*
*bwarwick@varnellandwarwick.com*
*kstroly@varnellandwarwick.com*

Jennifer Bennett (Admitted Pro Hac Vice)
**PUBLIC JUSTICE, P.C.**
475 14th Street, Suite 610
Oakland, CA  94612
(510) 622-8150
*jbennett@publicjustice.net*

Stephanie Glaberson (Admitted Pro Hac Vice)
**PUBLIC JUSTICE, P.C.**
1620 L Street NW, Suite 630
Washington, DC  20036
(202) 797-8600
*sglaberson@publicjustice.net*

***Attorneys for Plaintiffs***

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 4th day of December, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Janet R. Varnell
**JANET R. VARNELL**