## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MAX STORY, NANCY MURREY-
SETTLE, ALLEN CALL and
JAMES EKE, on behalf of
themselves and all others similarly
situated,

       Plaintiffs,

v.                                 Case No. 3:19-cv-724-J-32JBT

HEARTLAND PAYMENT
SYSTEMS, LLC,

       Defendant.

_____

## O R D E R

In this putative class action lawsuit, plaintiffs are parents whose children attend public schools that use an electronic payment service (MySchoolBucks) provided by defendant Heartland Payment Systems, LLC, to process payments for items such as school lunches, after-school programs, bus passes, and athletic fees.   Heartland often charges a "program fee" when a parent uses the service. The usual fee is $2.49 per transaction, but is sometimes more.   Plaintiffs allege that Heartland's misleading representations about the program fee violate New Jersey consumer fraud statutes and are a breach of contract under New Jersey law, which governs the terms of the MySchoolBucks agreement.

The Court held a hearing on October 25, 2019, the record of which is incorporated by reference. <u>See</u> Transcript, Doc. 52. At the time, the Court took two of the pending motions under advisement. Thereafter, additional plaintiffs joined Max Story, the original plaintiff, and they filed an amended complaint, which Heartland now moves to dismiss.

## I.    Motion for Judgment on the Pleadings[1]

First, as discussed at the hearing, Heartland attempted to short-circuit this case early on by making changes to its terms of service and depositing a sum of money ($40,000) into Story's credit card account, to which it had access through his MySchoolBucks account. Heartland immediately moved for judgment on the pleadings (Doc. 12), arguing the case was moot because Story had received all the relief to which he could possibly be entitled. Story opposed the motion (Docs. 26 & 27) and was able to reverse the charges so he no longer has the money.

Heartland argues that in <u>Campbell-Ewald Co. v. Gomez</u>, 136 S. Ct. 663 (2016), the Supreme Court countenanced Heartland's actions because, though holding that an unaccepted offer of judgment did not moot a complaint, it left open the possibility that a claim might be mooted "if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the

---

[1] The filing of plaintiffs' amended complaint did not moot defendant's motion for judgment on the pleadings, which the Court took under advisement.

plaintiff, and the court then enters judgment for the plaintiff in that amount." Id. at 672.   But that's not what happened here.   In this case, by contrast, no Rule 68 judgment was entered or sought in advance of the deposit or thereafter, Heartland accessed Story's credit card account without his authority or knowledge (or that of his counsel), and he quickly rejected the money, before the motion for judgment on the pleadings was ripe for consideration.   The Court finds these facts do not fit through the window left open in Campbell-Ewald.   The motion for judgment on the pleadings will be denied.

## II.    Motion for Protective Order

At the same time Heartland deposited money into Story's credit card account, it also changed the terms of its service agreement governing the MySchoolBucks program.   Before, the terms provided that disputes would be subject to the jurisdiction of the courts of the state of New Jersey.[2]   Doc. 4, Ex. 1 at 2.   Now, when parents log into the MySchoolBucks website, they see the following pop-up message:

---

[2] No party invoked that provision for this lawsuit.



Doc. 34 at 5.   When users click on "Show Terms of Service" they see the following statement:

> **PLEASE READ SECTIONS 14 ("DISPUTE RESOLUTION") AND 15 ("CLASS ACTION WAIVER") CAREFULLY AS THEY RELATE TO ARBITRATION AND CLASS ACTIONS**

Section 14 states, in relevant part:

> **14. <u>DISPUTE RESOLUTION</u>**
>
> **PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS AND IMPACTS HOW DISPUTES ARE RESOLVED. THIS SECTION IS INTENDED TO APPLY RETROACTIVELY, AND THEREFORE APPLIES TO ALL PAST, CURRENT AND FUTURE CLAIMS.**
>
> **<u>**IMPORTANT</u>: THIS DISPUTE RESOLUTION SECTION, INCLUDING THE ARBITRATION PROVISION AND THE CLASS ACTION WAIVER, APPLIES TO ALL PENDING LITIGATION, INCLUDING, BUT NOT LIMITED TO, THE MATTER OF STORY V. HEARTLAND PAYMENT SYSTEMS, LLC, UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, CIVIL ACTION NO. 3:19-CV-00724.   IN THAT CASE, THE**

**PLAINTIFF SEEKS TO REPRESENT A CLASS OF ALL PERSONS WHO PAID HPS [HEARTLAND PAYMENT SYSTEMS] A PROGRAM FEE SINCE MAY 15, 2013, AND ASSERTS CLAIMS FOR BREACH OF CONTRACT, UNJUST ENRICHMENT, AND VIOLATIONS OF NEW JERSEY'S TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT AND NEW JERSEY'S CONSUMER FRAUD ACT.  HPS DENIES THE ALLEGATIONS.  IF YOU ACCEPT THESE TERMS OF SERVICE AND A CLASS IS CERTIFIED IN THE STORY MATTER, YOU WILL NOT [BE] PERMITTED TO PARTICIPATE IN THE STORY CASE AS A CLASS MEMBER.\*\***

**IF YOU PROCEED WITH A TRANSACTION THROUGH OR USING MYSCHOOLBUCKS AFTER THESE TOS [TERMS OF SERVICE] ARE EFFECTIVE, YOU ARE AGREEING TO THE TERMS OF THIS DISPUTE RESOLUTION SECTION AND ARE BOUND BY THEM.**

> **A. Mandatory Arbitration**:  YOU AND HPS AGREE THAT ANY AND ALL DISPUTES (AS DEFINED BELOW) SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY . . . .[3]

And Section 15 states, in relevant part:

> **15. <u>CLASS ACTION WAIVER</u>**
> **WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A MEMBER IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION . . . .**

Doc. 34, Ex. 1. A.

---

[3] There is an exception for claims brought to small claims court.  Doc. 34, Ex.1.A.

None of the named plaintiffs have agreed to these new terms and none of them are currently using their MySchoolBucks accounts.   Story stated at the hearing that he would like to continue using the service because it is inconvenient to pay with cash, which is the only alternative at his children's school, but he is unwilling to agree to the new terms.

Additionally, Heartland changed the description about the fee at the same time it added the arbitration clause and class action bar.   Before, the Terms of Service stated:

> Your school district may require a program fee or membership fee for your use of the service.   If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

Elsewhere, the website stated:

> Signing up for MySchoolBucks is free.   Depending on your school/district and order/item you are purchasing, you may be required to pay a program or membership fee.

See Doc. 12, Ex. 1.

Now, the website states:

> [Heartland] may charge a Program Fee in connection with the Services and/or transactions processed through the Services. If a Program Fee is charged, it will be displayed onscreen before you complete the payment transaction.   By completing the transaction, you are agreeing to pay the Program Fee to [Heartland].   The school or school district may remit the Program Fee to [Heartland].

Id.

Story moved for a protective order to prohibit Heartland from "misleading or coercing putative class members into waiving their rights in this litigation,"

seeking to "void any purported waivers" already procured and requiring Heartland to issue a curative notice to prospective class members (Doc. 13). Heartland filed a response (Doc. 34), and the Court heard argument on the motion, following which Story filed a reply and additional exhibits (Docs. 58 & 59), and Heartland filed a sur-reply (Doc. 63).

Under "the general policies embodied in Rule 23, which governs class actions in federal court," the Court "has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 99-100 (1981). However, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. at 101. "[T]he mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action . . . ." Id. at 104. In this case, no motion for class certification has yet been filed.[4] Thus, the Court is particularly mindful that any restriction now on Heartland's

---

[4] Local Rule 4.04(b) requires a motion for class certification to be filed within 90 days of filing a complaint. M.D. Fla. Local R. 4.04(b). Story sought and secured an extension of time to file a motion for class certification until class discovery is complete, which the parties anticipated would take approximately 18 months. See Docs. 17, 19.

communications with its customers could later prove to have been unwarranted.   See id. (counseling district courts to proceed cautiously in restraining expression).

"Types of communications that have been recognized to violate Rule 23 include misleading communications to class members regarding the litigation, communications that misrepresent the status or effect of the pending action, communications that coerce prospective class members into excluding themselves from the litigation, and communications that under[mine] cooperation with or confidence in class counsel."   Taaffe v. Robinhood Mkts., Inc., No. 8:20-cv-513-T-36SPF, 2020 WL 1531127, at *3 (M.D. Fla. Mar. 31, 2020) (quotation and citation omitted).   Plaintiffs bear the burden of demonstrating that the communication at issue "threatens the proper functioning of the litigation."   Id. (quotation and citations omitted).

In Chen-Oster v. Goldman, Sachs & Co., No. 10 Civ. 6950 (AT) (RWL), ___ F. Supp. 3d ___, 2020 WL 1467182, at *24-38 (S.D.N.Y. Mar. 26, 2020), the court conducted an extensive review of case law (including from the Eleventh Circuit) to arrive at a list of factors courts generally consider in assessing whether a defendant's efforts to enter into arbitration clauses or releases with putative class members are actually or potentially coercive or deceptive.   Those factors include:

> (1) the relative vulnerability of the putative class members; (2) evidence of actual coercion or conditions conducive to coercion; (3) whether the defendant targeted putative class members in a purposeful effort to narrow the class; (4) whether the arbitration provision was unilaterally imposed on the putative class; and (5) evidence of misleading conduct, language, or omissions, including the extent to which the agreement does or does not mention the existence of the putative class action and related information.

Id. at *25.   These factors are not exclusive and courts consider the totality of the circumstances.   Id. at *33.

As to the first factor, the parents using the MySchoolBucks program are not an especially vulnerable class.   The plaintiffs here, for example, are a lawyer, a school district employee, and an information technology professional, see Doc. 57 at ¶¶26, 32, 39, and all the parents using the MySchoolBucks program are sophisticated enough to set up and use an online payment program that connects to their credit card account.   Cf. O'Connor v. Uber Techs., Inc., No. C-13-3826EMC, 2013 WL 6407583, at *6 (N.D. Cal. Dec. 6, 2013) (noting relative unsophistication of immigrant drivers whose first language was not English, the language of the arbitration agreement); Kater v. Churchill Downs, Inc., 423 F. Supp. 3d 1055, 1061 (W.D. Wash. 2019) (finding message was coercive to putative class members who were "addicted gamblers").

As to coercion, while it is true that parents cannot use the MySchoolBucks program unless they agree to the new terms, plaintiffs did not put forth any evidence from parents who are unable to pay by another way—indeed, the

named plaintiffs now pay their children's school charges by cash or check. Plaintiffs represented at the hearing that other parents have contacted them who have elected not to sign up either.   There are no threats, and it is not an employment contract so no one's livelihood is at stake.   Cf., e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991) (holding that even in the context of the unequal bargaining power of an employment agreement, arbitration agreements are to be enforced as any other contract); Billingsley v. Citi Trends, Inc., 560 F. App'x 914, 919 (11th Cir. 2014) (affirming need for corrective action to void arbitration agreements in collective action where store managers understood they would be fired if they did not sign).   While the Court recognizes that parents may feel that they do not have a real choice in the matter, it does not rise to the level of coercion described in the cases.

As to the third factor, while there is little doubt this lawsuit prompted Heartland to take action to avoid future lawsuits like this one, the new terms apply to all its customers, including those who were never subject to the old terms and who, therefore, would never be part of this lawsuit.[5]   Cf. Billingsley, 560 F. App'x at 919 (noting that only store managers who were potential opt-in plaintiffs were forced to sign arbitration agreements).

---

[5] While plaintiffs do not concede that the terms as currently stated are clear, that is not part of any plaintiff's claim here so any new users are not before the Court, nor will they be if and when a class is certified.

The arbitration agreements were not unilaterally imposed.  While the users have no real bargaining power with Heartland, each of them must affirmatively agree to the terms, which are boldly stated on the first page of the website.  See Mason v. Midland Funding LLC, No. 18-14019, ___ F. App'x ___, 2020 WL 2466370, at *1 (11th Cir. May 13, 2020) ("Courts have . . . largely approved the use of clickwrap agreements [because] the consumer is on notice that an agreement exists and receives the opportunity to review the terms of that agreement and to consent").

Finally, plaintiffs have not demonstrated that the language regarding the arbitration agreement or this lawsuit is unclear.  The opening page states in bold lettering that by agreeing to the terms, parents cannot join a class action and must arbitrate any claims.  Those who choose to view the terms find additional information about the arbitration agreement and this lawsuit, including the case caption, file number, name of the court, and a brief description of the allegations and counts pled in the original complaint.  While plaintiffs would have preferred that other information be included, what is there is sufficient and is not misleading.

Considering the totality of the circumstances, the Court does not find that Heartland's communications have misled or coerced putative class members

into waiving their rights in this litigation.[6]   Therefore, it cannot enter the protective order plaintiffs seek.   Plaintiffs' further requests that the Court void any purported waivers and require Heartland to issue a curative notice are denied as moot.[7]

### III.   Motion to Dismiss

Heartland filed a Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 62).   Plaintiffs filed a response (Doc. 67), Heartland replied (Doc. 70), and plaintiffs filed a sur-reply (Doc. 72) and supplemental authority (Doc. 73).[8] Story originally filed this suit as a proposed class action in state court alleging violations of New Jersey consumer fraud statutes and common law claims of breach of contract and unjust enrichment under New Jersey law (which governs the parties' MySchoolBucks contracts[9]).   Heartland removed the case, claiming jurisdiction under the Class Action Fairness Act, on the grounds that Story is a citizen of Florida, Heartland is a citizen of Georgia,[10]  the amount in controversy

---

[6] The Court emphasizes that this finding is limited to the facts of this case.   In a case with different facts, the result might well be different.

[7] The Court does not reach Heartland's argument that plaintiffs lack standing to request that the Court void the waivers.

[8] Heartland moved for leave to respond to the notice of supplemental authority.   The Court finds a response to be unnecessary so the motion (Doc. 74) is denied.

[9] MySchoolBucks' contracts are now governed by Georgia law, but none of the plaintiffs are parties to that new contract.

[10] Although Heartland is a limited liability company, its only member is

exceeds $5 million, exclusive of interest and costs, and there are more than 100 members in the putative class.  See 28 U.S.C. §§ 1332(d), 1453.

Following the hearing (which alerted Story to some pleading deficiencies), the Court granted Story leave to amend his complaint.  With the amended complaint, another Florida citizen joined as a plaintiff (Nancy Murrey-Settle), as have two non-Florida citizens:   Allen Call, a citizen of Louisiana, and James Eke, a citizen of Colorado.   All are parents who had MySchoolBucks accounts with Heartland to pay for their children's school-related charges. The amended complaint retains three of the original statutory consumer fraud claims as well as the breach of contract claim.   Although Heartland answered the original complaint, it now moves to dismiss the amended complaint.[11]   Heartland argues under Federal Rule of Civil Procedure 12(b)(2) that the Court cannot exercise personal jurisdiction over Heartland as to the claims brought by Call and Eke (the non-Florida citizen plaintiffs), that each claim is subject to dismissal under Rule 12(b)(6), and that plaintiffs lack standing to request injunctive and declaratory relief.

---

Global Payments, Inc., a Georgia corporation with its principal place of business in Georgia.  See Doc. 1 at ¶ 4.

[11] Heartland explains that it elected to answer the original complaint for expedience sake as it expected to resolve the case via its motion for judgment on the pleadings.  See Doc. 62 at 5.  Its original answer contained numerous affirmative defenses invoking many of the same challenges raised in this motion.

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists:   the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."   United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted).   Florida's long-arm statute provides means by which a defendant may be subject to either general or specific jurisdiction.   Id. Plaintiffs do not argue that Heartland is subject to general jurisdiction in Florida, nor could the Court find that it is, as there is no showing that Heartland has engaged in "substantial and not isolated activity" in the state.   Fla. Stat. § 48.193(2).   "[O]nly in 'exceptional' cases" will a corporation's contacts with a state other than that of its incorporation or principal place of business be substantial enough to warrant exercising general jurisdiction.   Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1204 (11th Cir. 2015) (examining Florida's long-arm statute) (quoting Daimler AG v. Bauman, 571 U.S. 117, 139 n.19 (2014)).   The Court therefore considers whether Heartland is subject to specific jurisdiction regarding the claims of Call and Eke.[12]

---

[12] Plaintiffs suggest that CAFA's grant of original jurisdiction over class actions would be undermined if the Court could not exercise personal jurisdiction over Heartland as to the entire action, including all plaintiffs and claims.   But nothing in CAFA excuses the requirement that the Court have personal jurisdiction over a defendant vis-à-vis claims of named plaintiffs. See, e.g., Burgess v. Religious Tech. Ctr., Inc., 600 F. App'x 657, 659-61 (11th

However, "[i]n Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'" PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808 (11th Cir. 2010) (quoting Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002)). Thus, the Court first addresses whether plaintiffs' claims are subject to dismissal under Rule 12(b)(6).

## A. Rule 12(b)(6) (Failure to State a Claim)

The Court evaluates a Rule 12(b)(6) motion to dismiss construing the complaint in the light most favorable to the plaintiff, assuming the truth of the well-pled allegations. Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016). Claims raised under the New Jersey Consumer Fraud Act (NJCFA), "must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)." Schechter v. Hyundai Motor Amer., No. 18-13634, 2019 WL 3416902, at *5 (D.N.J. July 29, 2019) (citations omitted); see also Frederico v. Home Depot,

---

Cir. 2015) (affirming dismissal of one defendant in class action removed under CAFA where court could not exercise personal jurisdiction under state's long-arm statute); Howe v. Samsung Elec. Am., Inc., No. 1:16cv386-RH/GRJ, 2018 WL 2212982, at *4 (N.D. Fla. Jan. 5, 2018) ("Rule 23 does not expand a court's personal jurisdiction over a defendant."); Daniel v. Tootsie Roll Indus., LLC, No. 17Civ.7541(NRB), 2018 WL 3650015, at *9 (S.D.N.Y. Aug. 1, 2018) ("CAFA vests federal district courts with subject matter jurisdiction, not personal jurisdiction.").

507 F.3d 188, 200 (3d Cir. 2007) (noting that Rule 9(b) applies to claims alleging violations of the NJCFA).[13]

Count I alleges a violation of section 56:8-2.1 of the NJCFA, which prohibits businesses from operating in a manner which "wrongfully implies" an association with the "Federal Government" or "this State." N.J. Stat. Ann. § 56:8-2.1. Plaintiffs allege that Heartland charges and retains a fee to use the MySchoolBucks program but wrongfully implies an association with a government entity by stating that the school districts "require" parents to pay the program fee.[14] But the named plaintiffs' public school districts are in Florida, Louisiana, and Colorado, not New Jersey. By its plain language, "this State" refers to New Jersey; section 56:8-2.1 of the NJCFA simply isn't violated here. The one case plaintiffs cite to argue otherwise is distinguishable because, while the advertisements there did reference another state, it was in conjunction with New Jersey and the federal government. See Hoffman v. Loiry, No. A-2640-14T3, 2016 WL 3693957 (N.J. Super. Ct. App. Div. July 13, 2016) (holding defendant's advertisements, which included the seal of the President of the United States and the name "NY/NJ Restoration Leadership"

---

[13] Plaintiffs do not concede that Rule 9(b) applies, but cite no authority to the contrary. Even under Rule 8, these claims as pled have problems.

[14] As noted above, the language has since changed.

wrongfully implied his conference was associated with the federal government, New Jersey and New York).   Count I will be dismissed with prejudice.

Count II alleges a violation of section 56:8-2 of the NJCFA, which prohibits "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise," which includes services offered for sale to the public.[15]   N.J. Stat. Ann. §§ 56:8-2, 56:8-1(c).   Plaintiffs allege Heartland's terms of service for the MySchoolBucks program misrepresent that school districts "require" the imposition of a program fee, and Heartland misrepresents on its website that MySchoolBucks is "free."

To state a claim under this subsection, plaintiffs must plead "(1) an unlawful practice; (2) an ascertainable loss; and (3) a causal connection between the two."   Block v. Seneca Mortg. Servicing, 221 F. Supp. 3d 559, 593 (D.N.J.

---

[15] The statute, originally written for prosecution by the Attorney General, goes on to state that a violation occurs "whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2; D'Agostino v. Maldonado, 78 A.3d 527, 536-37 (N.J. 2013).   However, to bring a private right of action, the statute only authorizes a remedy to a "person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act." N.J. Stat. Ann. § 56.8-19. See D'Agostino, 78 A.3d at 537.

2016) (citations omitted); <u>D'Agostino</u>, 78 A.3d at 536-37 (citations omitted). While Heartland argues that the allegedly false representations are true, on a motion to dismiss, the Court takes the allegations in the light most favorable to plaintiffs; at this stage, they have said enough to allege an unlawful practice.[16] <u>See</u> <u>Weinberg v. Sprint Corp.</u>, 801 A.2d 281, 291 (N.J. 2002) (explaining that the NJCFA is to be interpreted broadly "to accomplish its remedial purposes" (citation omitted)).   Likewise, at this point, the Court finds plaintiffs have stated an ascertainable loss by claiming entitlement to a refund of the program fees Heartland collected—money which plaintiffs allegedly believed they were paying to the school districts.   This seems sufficiently akin to the auto dealer registration fee overcharge the New Jersey Supreme Court deemed to be an ascertainable loss under the statute.   <u>See</u> <u>Bosland v. Warnock Dodge, Inc.</u>, 964 A.2d 741, 750 (N.J. 2009).

But the allegations of a causal connection between the unlawful practice and ascertainable loss are insufficient, merely stating that there is one.   <u>See</u> Doc. 57 at ¶ 97.   Plaintiffs will be granted leave to replead this count so that each of them may attempt to allege facts causally connecting the allegedly

---

[16] The parties cite authorities which seemingly disagree whether materiality is an element of a NJCFA claim based on affirmative misrepresentations, as opposed to only omissions.   The language of the statute supports the latter position.   <u>See</u> <u>Leon v. Rite Aid Corp.</u>, 774 A.2d 674, 678-79 (N.J. Super. Ct. App. Div. 2001).

unlawful practice to their ascertainable loss in compliance with Rule 9(b).[17]
See Annecharico v. Raymour & Flanigan, No. 16-1652(FLW), 2016 WL 7015615,
at *8-9 (D.N.J. Nov. 30, 2016) (rejecting plaintiff's "broad-brush" approach to
pleading causation under the NJCFA because Rule 9(b) requires a plaintiff to
demonstrate "how the alleged wrongdoing had any bearing on plaintiff's
decision to purchase the product or service;" a simple allegation that the loss
would not have occurred but for the fraudulent conduct is not enough).  Cf.
Leon, 774 A.2d at 677-78 (finding causation adequately pled under the NJCFA
where pharmacy's deceptive advertising of "lowest and best price" led plaintiffs
to believe they would receive the lowest price).

Count III (misnumbered as Count IV) alleges a violation of the New
Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"),
which prohibits sellers from offering to consumers written contracts that violate
the consumers' clearly established legal right. N.J. Stat. Ann. § 56:12-14.
Plaintiffs allege that because Heartland misrepresented its program in
violation of the NJCFA, it has also violated the TCCWNA.  Heartland moves
to dismiss on the grounds that it has not violated the NJCFA.  As the Court is
dismissing Count I, this count will rise or fall with Count II, and may be re-pled

---

[17] This seems especially challenging for plaintiff Nancy Murrey-Settle,
who alleges only that she stopped using MySchoolBucks sometime in 2016
because it was too expensive, as opposed to because she was misled as to who
required or retained the fee.

in a second amended complaint.

Count IV (misnumbered as Count V), alleges breach of contact under New Jersey law, which requires plaintiffs to plead that (1) "the parties entered into a valid contract;" (2) "the defendant failed to perform [its] obligations under the contract;" and (3) "the plaintiff[s] sustained damages as a result." <u>Murphy v. Implicito</u>, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007).   Heartland argues that plaintiffs fail to explain how Heartland's alleged misrepresentation as to who requires and retains the fee is a failure to perform an obligation under the Terms of Service governing the parties' contract.   Plaintiffs did not do much to address Heartland's arguments in either their response or sur-reply. Nonetheless, since the Court will permit plaintiffs to replead Count II, it will give them a chance to replead the breach of contract claim if they have a good faith basis to do so.[18]

Finally, Heartland moves to dismiss plaintiffs' prayer for relief seeking a declaration and injunction to prohibit Heartland from violating the NJCFA and TCCWNA (Doc. 57, p. 22 [Prayer for Relief] at c. and d.).   Heartland argues that not only have the terms changed to eliminate any supposed confusion as to

---

[18] Because the factual allegations are lacking in both the breach of contract and the NJCFA claim, the Court is not prepared to address Heartland's economic loss rule argument, but the weight of authority is likely on plaintiffs' side.  <u>See, e.g.</u>, <u>G&F Graphic Servs., Inc. v. Graphic Innovators, Inc.</u>, 18 F. Supp. 3d 583, 588-90 (D.N.J. 2014) (discussing numerous cases holding the economic loss doctrine does not bar a fraud claim under the NJCFA).

how the program works, but, because none of the named plaintiffs are Heartland customers anymore and their complaint does not express any desire to be Heartland customers in the future, they cannot show a threat of future injury; therefore their claim for declaratory and injunctive relief as to Heartland's terms and conditions is moot and/or plaintiffs lack standing to seek that relief.   Plaintiffs argue they faced a Hobson's choice of either agreeing to the new terms or sending cash to school with their children, and they therefore have standing to seek injunctive and declaratory relief to ensure Heartland's terms and conditions are, and remain, fairly stated.

But requiring Heartland to state that it (and not the school district) is requiring and retaining the fee (as its terms and website now do) does not mean the fee doesn't have to be paid.   Plaintiffs and anyone else will still have to pay the fee for using the service.  Thus, regardless of what language is used to explain the fee, there's no Hobson's choice such that might create standing for plaintiffs with regard to Heartland's current or future statements regarding the fees charged for its services.  See Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1328-29 (11th Cir. 2013) (explaining that standing to seek injunctive relief requires a plaintiff to "show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future" (quotation and citation omitted)); Gil v. City of Pensacola, 396 F. Supp. 3d 1059, 1062 (N.D. Fla. 2019) (finding plaintiff lacked standing to pursue declaratory and injunctive relief

regarding website statements because he could not allege a real and immediate threat of future injury (citing <u>Wooden v. Bd. of Regents of Univ. Sys. of Ga.</u>, 247 F.3d 1262, 1284 (11th Cir. 2001)).   In their second amended complaint, plaintiffs must either resolve this dilemma or not request prospective declaratory and injunctive relief.

## B.   Rule 12(b)(2) (Specific Personal Jurisdiction)

Because plaintiffs may be able to sufficiently replead their claim of a violation of the NJCFA with regard to Heartland's alleged misrepresentations (Count II) (which means the derivative TCCWNA claim (Count III (mislabeled as Count IV)) would also remain), and they will possibly be able to replead their breach of contract claim (now Count IV (mislabeled as Count V)), the Court must address whether it can maintain specific personal jurisdiction over Heartland as to the claims of plaintiffs Call and Eke.

"Specific jurisdiction refers to 'jurisdiction over causes of action arising from or related to a defendant's actions within the forum.'" <u>PVC Windoors</u>, 598 F.3d at 808 (quotation and citation omitted).   When analyzing specific jurisdiction, the Court bears in mind that "Florida's long-arm statute is to be strictly construed." <u>Sculptchair Inc. v. Century Arts, Ltd.</u>, 94 F.3d 623, 627 (11th Cir. 1996) (citation omitted).   "Under Florida law, the plaintiff bears the burden of proving personal jurisdiction," which a defendant typically challenges through evidence that the plaintiff must then meet.   <u>Id.</u>

Call and Eke do not claim to be able to exercise specific personal jurisdiction over Heartland in Florida with regard to their causes of action. Rather, they make the legal argument that the Court should allow them to piggy-back onto the specific personal jurisdiction demonstrated by Story and Murrey-Settle, the two Florida plaintiffs,[19] through the doctrine of pendent personal jurisdiction.   Typically, this doctrine permits personal jurisdiction over a defendant as to one individual claim to be expanded to cover other related claims if the claims "arose from the same jurisdiction generating event." Cronin v. Washington Nat. Ins. Co., 980 F.2d 663, 671 (11th Cir. 1993); see also RMS Titanic, Inc. v, Kingsman Creatives, Ltd., 579 F. Appx. 779, 788 (11th Cir. 2014) (examining whether "jurisdiction generating event" of transmitting trade secrets in Florida was event giving rise to other counts of conversion); Baylis v. Marriott Corp., 843 F.2d 658, 663-64 (2d Cir. 1988) ("Pendent jurisdiction traditionally refers to the joinder of a state-law claim by a party already presenting a federal question claim against the same defendant," which is appropriate if both claims "derive from a common nucleus of operative fact.").

What plaintiffs here propose is that the Court expand the doctrine to include additional pendent party plaintiffs, not just pendent claims.   Plaintiffs argue the rationale is essentially the same—if the defendant is going to be in

---

[19] Heartland does not contest that it is subject to specific personal jurisdiction in Florida with regard to Story and Murrey-Settle's claims.

this forum defending claims brought by resident Florida named plaintiffs over which the Court can exercise personal jurisdiction, the Court should be able to exercise personal jurisdiction over similar claims against the same defendant brought by non-resident named plaintiffs.[20]   The Court did not uncover (and the parties did not cite) any Eleventh Circuit authority adopting this theory.

While plaintiffs point to a few district court opinions which have permitted pendent party personal jurisdiction, the Court finds their reasoning inapplicable or unpersuasive.   See, e.g., In re: Packaged Seafood Prods. Antitrust Lit., 338 F. Supp. 3d 1118, 1171-73 (S.D. Cal. 2018) (finding court could exercise pendent personal jurisdiction with respect to state law claims of non-residents in MDL action because their claims arose out of the same common nucleus of operative facts as the federal question antitrust claims, which provided nationwide personal jurisdiction); Sloan v. General Motors, LLC, 287 F. Supp. 3d 840, 859 (N.D. Cal. 2018) (holding court could exercise personal jurisdiction over defendant as to state law claims of non-resident plaintiffs which overlapped with and arose out of the federal claims already before the court); Allen v. ConAgra Foods, Inc., No. 3:13-cv-01279-WHO, 2018 WL

---

[20] Plaintiffs also argue that since they have voluntarily brought their claims to this Florida forum, it's not up to Heartland to challenge that choice. That argument misses the mark—the question is whether the Court can require Heartland to answer to plaintiffs' claims here, not whether plaintiffs can be here.

6460451, at *7-8 (N.D. Cal. Dec. 10, 2018) (relying on <u>Sloan</u> to exercise personal jurisdiction over non-resident plaintiffs' state law claims even though no federal question existed), <u>opinion reversed on reconsideration</u>, 2019 WL 5191009, at *1-3 (Oct. 15, 2019) (finding no basis to exercise personal jurisdiction where "subsequent developments" undermined original basis for doing so, stating "there must be a basis to assert personal jurisdiction over the named plaintiffs to a case").[21]   Other cases upon which plaintiffs rely address whether the personal jurisdiction analysis applies to claims of <u>unnamed</u> class or putative class members, which is not the issue here.[22]

---

[21] In <u>Allen</u>, those "subsequent developments" included the denial of plaintiffs' motion to certify a nationwide class, illustrating that the original decision to exercise personal jurisdiction over the non-resident plaintiffs' claims was supported by the likelihood of class certification. 2019 WL 5191009, at *1-3.   That justification seems to run counter to Eleventh Circuit teachings that, until a class is certified, its members are not within the power of the Court. <u>See, e.g.</u>, <u>In re Checking Acct. Overdraft Litig.</u>, 780 F.3d 1031, 1037 (11th Cir. 2015); <u>In re Bayshore Ford Trucks Sales, Inc.</u>, 471 F.3d 1233, 1245 (11th Cir. 2006).   Here, moreover, no motion for class certification is pending.

[22] <u>See, e.g.</u>, <u>Mussat v. IQVIA</u>, 953 F.3d 441, 447 (7th Cir. 2020) (holding the unnamed class members did not need to demonstrate personal jurisdiction); <u>Molock v. Whole Foods Mkt. Grp., Inc.</u>, 952 F.3d 293, 297-98 (D.C. Cir. 2020) (holding it is premature to raise issue of personal jurisdiction as to unnamed putative class members claims before a class is certified); <u>In re Takata Airbag Prod. Liab. Litig.</u>, 396 F. Supp. 3d 1101, 1134-37 (S.D. Fla. 2019) (denying motion to dismiss claims of non-resident putative class members in MDL where jurisdiction was based on federal question); <u>Goodman v. Sun Tan City, LLC</u>, No. 18-81281-CIV-ROSENBERG/REINHART, 2018 WL 6978695 (S.D. Fla. Dec. 14. 2018) (recommending denial of motion to strike class allegations for lack of personal jurisdiction where named plaintiff was resident of forum and her federal statutory claim arose there); <u>Becker v. HBN Media, Inc.</u>, 314 F. Supp. 3d 1342, 1345 (S.D. Fla. 2018) (denying motion to dismiss non-resident putative

Even in a class action, there is "no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue: the named representatives must be able to demonstrate either general or specific personal jurisdiction . . . ." Mussat, 953 F.3d at 447 (emphasis added) (holding that, by contrast with named representatives, unnamed class members were not required to demonstrate personal jurisdiction). "[I]mposing personal jurisdiction [on defendant] for all of the claims [of non-resident plaintiffs], [just] because specific jurisdiction may lie as to [the resident] plaintiff's claims[,] would run afoul of the traditional notions of fair play and substantial justice that form the bedrock of any court's personal jurisdiction analysis." Demaria v. Nissan No. Am., Inc., No. 15 C 3321, 2016 WL 374145, at *8 (N.D. Ill. Feb. 1, 2016) (dismissing for lack of personal jurisdiction non-resident named plaintiffs

---

class members in case where court exercised federal question jurisdiction); Tickling Keys, Inc. v. Transam. Fin. Advisors, Inc., 305 F. Supp. 3d 1342, 1350 (M.D. Fla. 2018) (same); Sanchez v. Launch Tech. Workforce Sols., LLC, 297 F. Supp. 3d 1360, 1369 (N.D. Ga. 2018) (same).

While the application of Bristol-Myers Squibb Co. v. Superior Court of California, 137 S. Ct. 1773 (2017), features prominently in each of these opinions (and many others cited by Heartland), and the parties have argued why Bristol-Myers does (or does not) answer the question here, the Court can decide this motion without weighing in on the application of Bristol-Myers to a nationwide class action based on diversity where the defendant is not subject to general personal jurisdiction in the forum. Thus, while decisions analyzing Bristol-Myers and its impact are interesting, for now, that is all they are. The Court makes no prediction as to Bristol-Myers' application or the outcome if plaintiffs move for class certification.

in putative class action whose claims had no connection to defendant's forum activities).[23]   See also Lee v. Branch Banking & Tr. Co., No. 18-21876-Civ-Scola, 2018 WL 5633995, at *4 (S.D. Fla. Oct. 31, 2018) (dismissing claims of non-resident named plaintiffs in putative class where they could not demonstrate general or specific personal jurisdiction over the defendant); Chernus v. Logitech, Inc., No. 17-673(FLW), 2018 WL 1981481, at *3-6 (D.N.J. Apr. 27, 2018) (dismissing claims of non-resident named plaintiffs and stressing that "even in the context of a class action, it is the named plaintiff's claim that must arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification" (internal quotation and citations omitted)).

Heartland is a Georgia defendant over whom a Florida federal district court can exercise specific personal jurisdiction regarding the New Jersey statutory and state law claims of Florida plaintiffs who purchased and used Heartland's services in Florida.   Plaintiffs argue the Colorado and Louisiana plaintiffs' claims, which arose through events exclusively occurring in Colorado and Louisiana, are the same as the Florida plaintiffs' claims—enough so that

---

[23] Admittedly, in Demaria, an additional factor not present here is that the law to be applied varied with each plaintiff's claim (although each plaintiff also had federal statutory claims).   2016 WL 374145, at *1.   But this one factor does not tip the balance because it is still true that the non-resident named plaintiffs' claims have nothing to do with Florida, nor do those plaintiffs.

this case is destined to soon become a class action.   But Heartland is already contesting that, raising significant factual arguments regarding differences in its arrangements with school districts, differences in the information school districts share with parents about the program, and differences among plaintiffs' perceptions of the program.

While making no predictions as to who will have the better argument concerning class certification, the Court finds Call and Eke, named non-resident plaintiffs, have not met their burden of demonstrating that the Court can exercise personal jurisdiction over Heartland, a non-resident defendant, in this diversity suit as to their claims, which do not arise in Florida.[24]   See Lee, 2018 WL 5633995, at *4; Chernus, 2018 WL 1981481, at *3-6; Demaria, 2016 WL 374145, at *8.   Though dismissing Call and Eke for lack of personal jurisdiction, the dismissal is without prejudice to their joining as members of a national class in the event the Court certifies one and they qualify as members. See Lee, 2018 WL 5633995, at *4, n.1 (dismissing claims of non-resident named plaintiffs without prejudice to recovering as part of the class, if certified).

---

[24] Plaintiffs' policy concern about the piecemeal litigation caused by requiring named plaintiffs to file separate actions in separate states would be avoided by filing a case in a forum which can exercise general jurisdiction over a defendant.

Accordingly, it is hereby

**ORDERED**:

1.      Heartland's Motion for Judgment on the Pleadings (Doc. 12) is **denied**.

2.      Plaintiff's Motion for Protective Order, etc., (Doc. 13) is **denied**.

3.      Heartland's Motion to Dismiss (Doc. 62) is **granted as follows:**

      (a)      the claims of plaintiffs Allen Call and James Eke are dismissed for lack of personal jurisdiction over Heartland;

      (b)      Count I (claim of NJCFA government entity) is dismissed with prejudice;

      (c)      Counts II (claim of NJCFA misrepresentation), III (TCCWNA derivative claim), and IV (breach of contract) are dismissed without prejudice to filing a second amended complaint;

      (d)      plaintiffs' claim seeking prospective declaratory and injunctive relief as to Heartland's terms of service or website language is dismissed without prejudice to reassertion in the second amended complaint, if they have a good faith basis to do so.

4,      Plaintiffs shall file a second amended complaint consistent with this Order no later than **June 19, 2020**.[25]   Heartland shall file its answer to

---

[25] Plaintiffs may not add new parties or claims.

plaintiffs' second amended complaint no later than **July 10, 2020**.[26]

5.     The Court will issue a Phase One Case Management and Scheduling Order by separate order.

6.     In the Court's October 29, 2019 order (Doc. 51 at 2), the Court advised the parties that the footnotes in their future filings must be in at least 12 point font.   Both parties have ignored the Court's order (see, e.g., footnotes in Docs. 67 and 70).   Future filings which fail to conform to the Court's order will be struck without further notice.

**DONE AND ORDERED** in Jacksonville, Florida this 20th day of May, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:
Counsel of record

---

[26] The Court is not precluding Heartland from filing a further motion to dismiss if it has a good faith basis to do so.