## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MAX STORY and NANCY MURREY-SETTLE,
on behalf of themselves and all others similarly
situated,

                                     CASE NO.: 3:19-cv-00724-TJC-JBT
                                     CIVIL DIVISION

           Plaintiffs,

                                     **CLASS REPRESENTATION**
v.                                     **JURY TRIAL DEMANDED**

HEARTLAND PAYMENT SYSTEMS,
LLC, a Foreign Limited Liability Company,

           Defendant.

_____/

## SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Max Story and Nancy Murrey-Settle ("Plaintiffs") file this Class

Action Complaint on behalf of themselves and all others similarly situated, by and

through the undersigned attorneys, against Heartland Payment Systems, LLC

(hereinafter "Heartland" or "Defendant"), and state as follows:

### I.    INTRODUCTION

1.    This is a class action on behalf of Plaintiffs and a class of all other

similarly situated parents against Heartland Payment Systems, LLC, a credit card

payment processing company which owns and operates its MySchoolBucks

Program, which is a stored-value account platform used by over 30,000 schools nationally to pay for school meals and other school fees.

2.     Heartland's contractual agreement with parents stated that a "Program Fee" may be required by the school. This statement is false. The "Program Fee" is not a school requirement nor is it a payment for participating in the MySchoolBucks "program." Instead, the "Program Fee" is actually a credit/debit card surcharge imposed and collected by Heartland, the amount of which is dictated by the payment method used to deposit funds into the child's account.

3.     Parents placing funds into their child's MySchoolBucks account using a credit card are charged a $2.49 flat rate Credit Card Surcharge.

4.     Parents placing funds into their child's MySchoolBucks account using a debit card are charged a $1.95 flat rate Debit Card Surcharge.

5.     Because Credit and Debit Card Surcharges are heavily regulated and must be clearly disclosed, Heartland has engaged in an unfair and deceptive practice in violation of New Jersey and Florida law.

## II.     JURISDICTION AND VENUE

6.     The Court has jurisdiction over this action pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d), because there are at least 100 Class members in the proposed Class; the combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs; Plaintiffs are residents of Duval County,

Florida; and Defendant conducts an ongoing course of business in Duval County, throughout the State of Florida and the United States.

### III.   PARTIES

7.    Plaintiff, Max Story, is a natural person and is a resident of Duval County, and a citizen of the State of Florida.

8.    Plaintiff, Nancy Murrey-Settle, is a natural person and is a resident of Duval County, and a citizen of the State of Florida.

9.    Defendant, Heartland Payment Systems, LLC, was headquartered in Princeton, New Jersey until it was acquired by Global Payments in April of 2016. Since 2016, Heartland's principal address has been 10 Glenlake Parkway, North Tower, Atlanta, Georgia 30328. Heartland is a corporate citizen of the States of Delaware and Georgia.

### IV.   FACTUAL ALLEGATIONS

10.    Heartland Payment Systems, Inc. ("Heartland") is a publicly traded, Fortune 500 Company. It is the fifth largest card payment processor in the United States. It provides credit/debit/prepaid card processing, mobile commerce, e-commerce and related business services to more than 275,000 business and educational locations nationwide.

11.    When Heartland acts as a credit card payment processor for businesses other than schools, it charges a very small fee to the "merchant" for its services –

less than 2%. However, when Heartland processes credit cards for schools, it inflates its rates substantially – often above 5%.

12.    Heartland offers schools across the country its "MySchoolBucks Program" which is the leading K-12 point-of-sale software program that schools use to charge students for items sold at the school, primarily school lunch. The online portal allows parents to deposit funds into their child's MySchoolBucks "account," which acts like a stored-value card similar to a prepaid credit card. By using the MySchoolBucks Program, schools do not have to worry about children carrying cash, staff taking cash, or checks bouncing.

13.    Heartland Payment Systems has two separate profit streams generated by its MySchoolBucks Program. First, Heartland charges the school for costs of the program, including, but not limited to, leasing of equipment including scanners, software, programming, pin pads, training, and maintenance fees. These contracts are automatically renewed and cost substantial amounts each year.

14.    For example, Heartland Payment Systems charged Duval County Public Schools the following amounts over the last five years:

2014  $233,758.99

2015  $99,205.86

2016  $115,786.55

2017  $92,883.75

2018  $86,997.00

2019  $82,167.00

Total  $710,799.15

15.     Second, Heartland also charges a Credit/Debit Card Surcharge each time a parent deposits money into a child's MySchoolBucks account. Either the school or the parents pay the Surcharge, at the election of the school.

16.     Plaintiffs only learned of this scheme after a Freedom of Information Act request was made to several Florida schools using the MySchoolBucks Program. To understand Heartland's scheme, a brief understanding of its contracts with the schools is required. Because Plaintiffs' children all attend Duval County Public Schools, its contracts are illustrative, although Heartland uses form contracts for schools throughout the country.

## A.     HEARTLAND'S SCHOOL CONTRACTS

17.     Once the school district has agreed to use the MySchoolBucks Program, Heartland enters into a "K-12 Merchant Processing Agreement" with the school. Attached hereto as Exhibit A is the Merchant Processing Agreement with Duval County Public Schools.

18.     Under the Merchant Processing Agreement, the school becomes the "Merchant" and Heartland, the "Processor."

19.    The Merchant Processing Agreement includes a "Fee Schedule" detailing the amounts that Heartland will charge each time a credit card or debit card (ACH) is used to place funds into a student's MySchoolBucks account. The Duval County Fee Schedule states as follows:

| CARD FEE SCHEDULE | | | | | | | |
|---|---|---|---|---|---|---|---|
| Service Requested | Discount Rate | Discount Per Item | Trans Fee Dial | Trans Fee IP | Annual Volume: $ 25,000 | | Average Ticket: $ 45.00 |
| Visa | % | $ 2.49 | | | | | High Ticket: $ 45.00 |
| MasterCard | % | $ 2.49 | $ 0 | $ 0 | ☒ Service Fee (Pass Through/Single Transaction) | | |
| Discover/JCB | % | $ 2.49 | | | ☐ COST PLUS | | |
| TSYS Authorization | % | $ | $ | $ | | | |
| PIN Debit* | | | | | *Plus Applicable Debit Network Fees | | |
| Fee Model: ☐ District Absorbed  ☒ Parent Paid | | | | | | | |

| RECURRING FEES | | | | SETTLEMENT | |
|---|---|---|---|---|---|
| Chargeback Fee: | $0 | Voice Authorization Fee: | $0 | ☐Monthly ☒Daily Net | |

| INTERCHANGE QUALIFICATION | CARD ACCEPTANCE | DEPOSIT METHOD |
|---|---|---|
| ☒ MOTO / Internet ☐ Retail ☐ Small Ticket | ☒ All Cards Accepted | ☒ Standard |

| ACH FEE SCHEDULE | | | | | |
|---|---|---|---|---|---|
| Transaction Fee | $ 1.95 | % | Annual ACH Volume: $ 2,500.00 | Average ACH Amount: $ 21.00 | |
| Monthly Fee | | $ 0 | Average # of ACH Transactions per Month:  40 | | |
| Return Item Fee | | $ 0 | Max ACH Limit:  500.00 | | |

(Exhibit A, Merchant Processing Agreement – Duval County Public Schools).

20.    Accordingly, for an "average ticket" amount of $45, Heartland charges a $2.49 Surcharge per credit card transaction. For each transaction in which a "parent" uses a Debit Card (ACH), a $1.95 Surcharge will be imposed upon the parent.

21.    Critically, the "Fee Model" option under the "Card Fee Schedule" gives the school the option of paying these fees itself by checking the "District Absorbed" box. Here, Duval County chose to have make these Surcharges "Parent Paid." On information and belief, thousands of schools across the country elect to have these Surcharges paid by the parents.

22.    Although there are additional detailed contracts that govern the relationship between the school and Heartland, the Merchant Processing Agreement controls the Credit/Debit Card Surcharges at issue in this case because it is this Agreement that is the source of those Surcharges and it is the only true explanation of the basis for the Surcharges at issue.

23.    Furthermore, Heartland and the school (including Duval County) also enter into a contract titled "Government and Public Education Credit/Debit Card Processing Agreement." Attached hereto as Exhibit B is the Government and Public Education Credit/Debit Card Processing Agreement with Duval County Public Schools. In that Agreement, Heartland and the school (as Merchant) agree to comply with the Rules and regulations of Visa, Mastercard, Discover and American Express: "4.11. Merchant shall at all times comply with the Rules and operating regulations of each of the Card Schemes and American Express as well as all applicable federal, state, and local, rules and regulations."

24.     Accordingly, the rules and regulations imposed by Visa, Mastercard, Discover, and American Express, including all requirements for imposing Credit/Debit Card Surcharges, must be followed by Heartland.

25.     As explained below, those rules have not been followed because before any Surcharge can be imposed, it must be clearly disclosed to the consumer. Because Heartland fails to disclose the true nature of the Credit/Debit Card Surcharge at all, it cannot charge these fees without violating the rules and regulations imposed by the Card Schemes for this specific purpose. *See generally* Exhibit B, Section 4.

26.     For example, Visa has very specific rules and regulations for Surcharges. Exhibit C is a copy of Visa's "Merchant Surcharge Q and A," document available on its website: [1]

> Q.     I am a merchant who intends to surcharge. What is the process I need to follow?
>
> •     U.S. merchants that intend to surcharge are required to:
>
> o     Notify Visa and your acquirer at least 30 days in advance of beginning to surcharge. A notification form to Visa can be submitted at www.visa.com/merchantsurcharging.
>
> o     Limit surcharging to credit cards only (debit cards and prepaid cards cannot be surcharged) and limit the amount to your

---

[1] https://usa.visa.com/dam/VCOM/global/support-legal/documents/merchant-surcharging-qa-for-web.pdf. Site last visited June 19, 2020.

merchant discount rate for the applicable credit card surcharge*.

o   Disclose the surcharge as a merchant fee and, for both in-store and online transactions, clearly alert consumers to the practice at the point of entry, the point of sale or transaction, and on every receipt. Merchants should also consider whether they comply with all applicable state and/or federal laws. Currently, several states have laws that prohibit or limit surcharging, including Colorado, Connecticut, Kansas, Maine, Massachusetts, and Oklahoma.

o   More information can be found at www.visa.com/merchantsurcharging.

Q.   Can I assess a surcharge on both credit and debit card purchases?

•   No. The ability to surcharge only applies to credit card purchases, and only under certain conditions. U.S. merchants cannot surcharge debit card or prepaid card purchases.

Q.   Can I assess a surcharge on debit card transactions where the debit cardholder chooses "credit" on the point of sale terminal?

•   No. The ability to surcharge only applies to purchases made with a credit card, and only under certain conditions.

Q.   Are there limits to the amount I can surcharge?

•   Yes. U.S. merchants may assess a surcharge on credit card purchases that does not exceed the merchant discount rate for the applicable credit

> card surcharged*. More information can be
> found at www.visa.com/merchantsurcharging.

*Id.*

27.     Mastercard, Discover and American Express have similar disclosure requirements before any Surcharge can be charged.

## B.     HEARTLAND'S CONTRACT WITH PARENTS

28.     Once the school contracts with Heartland, parents of that school receive notice and are strongly encouraged to use the Heartland system for all payments made   to   the   school.   Parents   are   directed   to   Heartland's   website   – www.myschoolbucks.com - to create an account.

29.     The standard form MySchoolBucks Terms of Service Agreement is a contract only between Heartland and parents, like Plaintiffs. The school is not a party to this Agreement.

30.     The Agreement in place at the time this action was filed, explained the limited service that Heartland was offering, in part, as follows:

> **License and Site Access**
> Heartland Payment Systems, Inc. grants you a limited license to access and make personal use of this Service to pay your child's school for goods and services sold by the school and/or school district (i.e., school meals). You may also be able to use the Service to obtain information about the balance of meal prepayments at your child's school, and to review your child's food purchases at the school cafeteria. …

**Payments to Schools**

You may make payments to your child's school account by using a credit card. Your credit card provider may have imposed a maximum amount which can be placed on your credit card. **Your child's school receives the full payment.** Payments are processed promptly for your child's use. …

**One Time Payments**

You authorize MySchoolBucks to debit the bank account indicated in this web form for the noted amount on today's date. You understand that because this is an electronic transaction, these funds may be withdrawn from your account as soon as the above noted transaction date. You acknowledge that the origination of ACH transactions to your account must comply with the provisions of U.S. law.

…

**Recurring Payments**

You authorize MySchoolBucks to debit the bank account indicated in this web form for the noted amount on the schedule indicated. You understand that this authorization will remain in effect until the scheduled end date, or until you cancel the payment, whichever comes first. If the above noted payment falls on a weekend or holiday, you understand that the payment may be executed on the next business day. You understand that because this is an electronic transaction, these funds may be withdrawn from your account as soon as the above noted transaction date. You acknowledge that the origination of ACH transactions to your account must comply with the provisions of U.S. law. …

…

**Program Fee or Membership Fee**

Your school district may require a program fee or membership fee for your use of the Service.

If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

…

**Applicable Law**
By visiting MySchoolBucks.com, you agree that the laws of the State of New Jersey will govern these Terms of Use, and any dispute relating to the Service provided herein shall be subject to the jurisdiction of the courts of the State of New Jersey.

Exhibit D, MySchoolBucks Terms and Conditions (emphasis added).

31.    Heartland's MySchoolBucks website further clarifies on its Frequently Asked Questions page the Program Fee as follows:

Is there a fee for using MySchoolBucks?

Signing up for MySchoolBucks is free. Depending on your school/district and order/item you are purchasing, you may be required to pay a program or membership fee.

MySchoolBucks Frequently Asked Questions.[2]

32.    Although Heartland's Terms of Service specifically references credit and debit card payments, it fails to disclose the Credit/Debit Card Surcharges that are imposed as a result of the Merchant Agreement with the school. In fact, Heartland's MySchoolBucks Terms and Conditions falsely states that "Your child's school receives the full payment." (Exhibit D, "Payment to Schools").

---

[2] https://www.myschoolbucks.com/ver2/help/gethelp Site last visited December 4, 2019.

33.     In fact, the only fee even mentioned by Heartland's Agreement with parents is the "Program Fee" or "Membership Fee." The explanation of the "Program Fee" or "Membership Fee" is false and deceptive in three ways.

34.     First, the fees at issue are not charged by the school for participating in the MySchoolBucks "Program." Instead, they are Credit/Debit Card Surcharges imposed by Heartland under its Merchant Agreement with the school. The Surcharges are imposed by the payment processor and based entirely on the method of payment used.

35.     Furthermore, Credit/Debit Card Surcharges must be clearly disclosed so that consumers know what they are being charged for, and can inquire of their card provider or bank regarding the legitimacy of the Surcharges. All credit card companies, including Visa, Mastercard, Discover and American Express have specific rules regulating how Credit Card Surcharges can be imposed. Heartland's Merchant Agreement requires compliance with the Rules established by all Card companies. Because all Card Providers require clear disclosure of any Credit Card Surcharges, Heartland's "Program Fee" or "Membership Fee" explanation fails to meet any of those requirements.

36.     Second, the explanation of the Surcharge is false and deceptive because the school does not "require" the Surcharges at all. The Credit/Debit Card Surcharges are imposed and collected entirely by Heartland under the credit card

and ACH "Fee Schedules" in the Merchant Agreement. In fact, the Merchant Agreement even states that the Surcharges are a "Pass Through" to Heartland. (Exhibit A).

37.     Third, the Credit/Debit Card Surcharges collected under the guise of "Program" or "Membership" fees, does not go to the School. Instead, these amounts are charged and retained exclusively by Heartland. Under the "Payments to Schools" section of the Terms and Conditions (Exhibit D), Heartland states "Your child's school receives the full payment." When this contract language is combined with the "Program/Membership Fee" explanation that the fee is "required" by the school, a reasonable consumer would believe that the school is receiving all of these amounts. In fact, the entire Credit/Debit Card Surcharge is collected and retained by Heartland.

38.     Some school districts around the country have even attempted to clarify the misleading nature of the representations surrounding the "Program Fees" by issuing precise statements to the public explaining that it is Defendant, and not the school district, which sets and retains the fees. For example, the Souderton Area School District in Pennsylvania released the following notice in regards to the 2017 MySchoolBucks Program Fee increase: "Souderton Area School District does not

collect or receive this fee. It is the fee charged by the company that administers the credit/debit card payments."[3]

C.   **FACTS RELATING TO NAMED REPRESENTATIVE PLAINTIFFS**

1.   **Plaintiff Max Story.**

39.   Plaintiff Max Story is a consumer protection attorney representing low-income consumers and his wife is a pediatric mental health therapist who worked for seven years on the campus of Fletcher High School. They have two children who attend Duval County Public Schools and have both served on the board of each of their children's Parent Teacher Associations.

40.   In or around September 2015, Mr. Story created a MySchoolBucks account to pay for one of his children's school lunches and other fees. Based on the representations on Heartland's website, Mr. Story believed that the fees were established by, and went entirely to, the school district. Despite he and his wife being big supporters of and very involved in the public schools, they never were informed that the fees were in fact undisclosed Credit/Debit Card Surcharges imposed and collected entirely by Heartland.

41.   From September 2015 through May 2019, Mr. Story paid 56 "Program Fees" to Heartland.

---

[3] http://www.soudertonsd.org/parents-students/food-services/myschoolbucks-convenience-fee-increase. Site last visited December 4, 2019.

42.     When Mr. Story's deposit to his children's MySchoolBucks accounts was made from his checking account with a debit card, he was charged a "Program Fee" of $1.95 for each transaction regardless of the amount. In reality, this fee was a Debit Card Surcharge imposed by Heartland, but not properly disclosed.

43.     When Mr. Story's deposit to his children's MySchoolBucks accounts was made from his credit card, he was charged a flat fee or "Program Fee" of $2.49 for each transaction, regardless of the amount. In reality, this amount was a Credit Card Surcharge imposed by Heartland but not properly disclosed.

44.     The vast majority of Mr. Story's deposits were for $45. The $2.49 Credit/Debit Card Surcharge represents 5.53% of the deposit being made to his children's MySchoolBucks accounts. Heartland's misrepresentation of the Credit/Debit Card Surcharge as program fees required by and paid to the school had a direct bearing on his decision to pay the fees. Had he been provided with actual disclosure of the Credit/Debit Surcharges, he would have challenged the assessment of and amounts of the fee and would not have paid the program fees.

## 2.     <u>Plaintiff Nancy Murrey-Settle</u>

45.     Plaintiff Nancy Murrey-Settle is an employee of the Duval County School District and was a foster parent to one child in 2012, who attended and still attends Duval County public schools. As part of the State of Florida's foster parent program, the child received free lunch. When Ms. Murrey-Settle's child was in the

second grade and Ms. Murrey-Settle wanted to be in a position to provide a treat from the school's cafeteria upon occasion, such as a weekly ice cream, as a reward system to encourage the child's good behavior. As is the case in many school districts who implement the payment processing system, the school would not accept cash payments at the time. Ms. Murrey-Settle was therefore forced to create a MySchoolBucks account for her foster child thinking that she could place $10.00 into the account for the purpose of rewarding the little girl.

46.     Ms. Murrey-Settle was charged a $2.49 "Program Fee" on the $10 deposit into her MySchoolBucks account. In reality, the fee was a Credit Card Surcharge imposed by Heartland but not properly disclosed.

47.     The following year, Ms. Murrey-Settle adopted the foster child and she continues to attend public school in Duval County, Florida. Ms. Murrey-Settle routinely placed money into the MySchoolBucks account and was charged Credit Card Surcharge disguised as a "Program Fee" for each deposit over a period of approximately four years because it was imperative that her child have access to simple carbohydrates in order to manage a genetic condition.

48.     Heartland's misrepresentation of the Credit/Debit Card Surcharge as program fees required by and paid to the school had a direct bearing on her decision to pay the fees. Had she been provided with the actual disclosure of the Credit/Debit

Surcharges, she would have challenged the assessment of and amounts of the fee and would not have paid the "Program Fee."

49.     Once her child reached the sixth grade and was more capable of handling cash responsibly, Ms. Murrey-Settle no longer made deposits into the MySchoolBucks account in order to stop paying the excessively high fees. Ms. Murrey-Settle believes that she made her last deposit into the MySchoolBucks account sometime in 2016.

50.     Sometime after this lawsuit was originally filed, Heartland began sending Ms. Murrey-Settle emails informing her that there was a balance remaining in her MySchoolBucks account and urging her to sign into her account. She went to the website to log in and retrieve the funds in the account only to read the "pop-up" notification that she would have to agree to the new Terms of Service in order to access her account, including consent to binding mandatory arbitration of all past and future claims, a class action ban and to specifically waive any right to participate in the instant lawsuit originally filed by Mr. Story. She did not agree to the new Terms and Conditions.

51.     Ms. Murrey-Settle was later unable to access her account and retrieve the funds that Heartland said were in her account.

**D.     CLASS ALLEGATIONS**

52.     Pursuant to Federal Rule of Civil Procedure 23(a), (b) (2) and (b) (3),

Plaintiffs bring this action on behalf of themselves and all others similarly situated.

The Classes are defined as:

**NATIONAL CLASS:** All persons in the United States who entered
into a MySchoolBucks Terms of Service Agreement with Heartland in
a form substantially similar to Exhibit D, and who paid a
MySchoolBucks Program Fee to Heartland.

53.     Heartland's Terms of Service Agreement dictates that New Jersey law

"governs these Terms of Use." The statute of limitations is six years for the New

Jersey Consumer Fraud Act ("NJCFA"), the New Jersey Truth-in-Consumer

Contract Warranty and Notice Act ("TCCWNA") and for Breach of Contract.

54.     Plaintiffs can identify and ascertain all other class members from

Heartland's business records. These records are computerized and will reflect which

customers were charged and paid Heartland's deceptive and unfair "Program Fee"

which was actually an undisclosed Credit/Debit Card Surcharge. Thus, Plaintiffs'

proposed classes are ascertainable.

55.     Plaintiffs do not know the exact size of the classes because this

information is in Heartland's exclusive control. However, based on the nature of the

commerce involved and the size and scope of Heartland's business, Plaintiffs believe

the class members number in the tens of thousands and that class members are

dispersed throughout the United States, including Florida. Therefore, joinder of all class members would be impracticable.

56.    Plaintiffs' claims are typical of other class members' claims because Plaintiffs and all class members were subject to a standard form Terms of Service Agreement and were charged the same unlawful MySchoolBucks Program Fee by Heartland, which was actually a Credit/Debit Card Surcharge.

57.    Before this Amended Complaint was filed, Plaintiffs made Freedom of Information Act requests to various school districts identified through public records as having a contractual arrangement with Heartland similar to Duval County Public Schools. Plaintiffs received documentation and reviewed Merchant Agreements between Heartland and a multitude of school districts in Florida and in other states. It appears from this review that Heartland used standard form Merchant Agreements during the class period that do not materially vary from one school district to another. While the amounts charged to the parents for Credit/Debit Card Surcharges vary by school, the differences are merely mathematical. However, Heartland uniformly fails to accurately disclose the Credit/Debit Card Surcharges and systematically stated that only a Program Fee or Membership Fee may be required by the School. Each of Heartland's Merchant Agreements dictate that the rules imposed by Visa, Mastercard, Discover and American Express must be followed, including any fees charged as Credit/Debit Card Surcharges.

58.     Questions of law and fact common to the Class and Subclass exist and predominate over questions affecting only individual members, including, *inter alia*, the following:

a.     Whether Heartland's representations regarding the MySchoolBucks Program Fee are unfair and deceptive because the fees are actually Credit/Debit Card Surcharges;

b.     Whether Heartland's Term of Service Agreement section titled "Program Fee or Membership Fee" deceptively explains its Credit/Debit Card Surcharge in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*.;

c.     Whether Heartland violated the Rules imposed by Visa, Mastercard, Discover, American Express or ACH for imposing surcharges for use of a credit or debit card;

d.     Whether the aforementioned violations of the NJCFA and Heartland's failure to comply with the disclosure requirements imposed by Visa, Mastercard, Discover, American Express, or ACH for imposing Credit/Debit Card Surcharges constitutes violations of the New Jersey Truth-in-Consumer Contract Warranty and Notice Act, N.J.S.A. 56:12-14 *et seq*., specifically N.J.S.A. 56:12-15;

e.     Whether the contracts between Heartland and the parents was breached;

f.     Whether Heartland's actions have proximately caused an ascertainable loss to Plaintiffs and members of the classes and, if so, the proper measure of damages; and

g.     Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

59.    The named Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class because they possess no interest antagonistic to the class members they seek to represent, and because the adjudication of their claims will necessarily decide the identical issues for all other class members. Whether the NJCFA and TCCWNA were violated and whether Heartland breached its contract with parents involve predominating common issues that will be decided for all consumers who entered into similar or identical Terms of Service Agreements. There is nothing peculiar about the Plaintiffs' situations that would make them inadequate class representatives.

60.    Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation.

61.    A class action is superior to other methods for the fair and efficient adjudication of this controversy because the damages suffered by each individual

Class member are relatively modest, compared to the expense and burden of individual litigation. It would be impracticable for each Class member to seek redress individually for the wrongful conduct alleged herein. It would be difficult, if not impossible, to obtain counsel to represent Plaintiffs on an individual basis for such small claims. More importantly, the vast majority of Class members are not aware that Heartland's MySchoolBucks Program Fee violates the NJCFA and/or the TCCWNA and if Heartland breached its contract with parents. Practically speaking, a class action is the only viable means of adjudicating the individual rights of Plaintiffs and the classes. There will be no difficulty in the management of this litigation as a class action as the legal issues affect a standardized pattern of conduct by Defendant and class actions are commonly used in such circumstances.

62. Heartland also acted and refused to act on grounds generally applicable to the classes, thereby making appropriate declaratory relief and corresponding final injunctive relief with respect to the classes as a whole under Federal Rule of Civil Procedure 23(b)(2). Heartland should be enjoined from misleading consumers by asserting that its Program Fees are "required" by the school district, and are ultimately paid to the school district, a government entity, when Heartland actually keeps the Program Fee for itself.

**COUNT I:**
**Violation of the New Jersey Consumer Fraud Act**
**N.J.S.A. 56:8-2.1 *et seq.***

63.    Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege paragraphs 1 through 63 as if expressly set forth in this Count.

64.    N.J.S.A. 56:8-2. declares that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; …

65.    Pursuant to N.J.S.A 56:8-1 (c), the term "merchandise" shall include "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale," including the MySchoolBucks service offered by Heartland.

66.    Heartland engaged in an unfair or deceptive practice by making misleading or false statements regarding fees charged to Plaintiffs and the putative class members, fraudulently omitting required disclosures and charging Surcharges in excess of those permitted by applicable rules and the Merchant Agreements between Heartland and school districts of which parents are intended third-party beneficiaries. More specifically, those violations were:

a.     Heartland enters into uniform Merchant Agreements with various schools throughout the United States. In those Merchant Agreements, Heartland regularly imposes a Credit and/or Debit Card Surcharge to be paid by either the School or parents. Heartland subsequently enters into standard form MySchoolBucks Terms of Service Agreements with parents where it misrepresents the surcharge as a "program fee" required by the school districts:

**Program Fee or Membership Fee**
*Your school district may require a program fee* or membership fee for your use of the Service. If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

Exhibit D, Terms of Service (emphasis added).

This language is unfair and deceptive because the Merchant Agreement with the school districts reveals the true nature of the charge is a Credit/Debit Surcharge and not a program fee collected by the school.

b.     Under the "Payments to Schools" section of the Terms of Service Agreement, Heartland states "Your child's school receives the full payment." This statement is untrue because the money charged as Program Fees are not given to schools.

c.     Additionally, Heartland's MySchoolBucks website states that MySchoolBucks is "free" and that the school districts impose the Fee:

Is there a fee for using MySchoolBucks?

Signing up for MySchoolBucks is **free**. Depending on your school/district and order/item you are purchasing, you may be required to pay a program or membership fee.[4]

(Emphasis added). This statement is false or deceptive because it is not free and Heartland knew that parents would be required to pay Credit/Debit Card Surcharges every time money is placed on the child's account.

d.     Heartland omitted material facts by failing to disclose the true nature of the fees, the basis for the imposition of the fees, where the money went, and the amount of the fees. Specifically, because the fees are actually a Credit/Debit Card Surcharge resulting from its Merchant Agreement, it should have explained these facts to parents.

e.     Heartland made further omissions when it failed to comply with the credit card company disclosure requirements for these

---

[4] https://www.myschoolbucks.com/ver2/help/gethelp Site last visited December 4, 2019.

surcharges that are clearly intended to benefit the consumer. Namely, Merchants must clearly and prominently disclose to consumers any surcharge that will be assessed, including (i) the exact amount or percentage; (ii) a statement that the surcharge is assessed by the merchant and is applicable only to credit card transactions; and (iii) a statement that the surcharge amount is no greater than the amount paid by the merchant to its payment processor for processing the transaction.

f.   Heartland's charges to Plaintiffs and the putative Class members were unfair in that the surcharges exceeded the rules of the card network associations because these charges must be calculated at the brand or product level according to certain complex network rules, but in all cases, they must be less than the maximum permitted cap, which is currently 4%. In the case of Plaintiffs, the credit card surcharges exceeded that cap.

67.   The scheme perpetrated by Heartland in the manner of assessing these fees was deceptive and unfair, and its statements regarding the fees it charged were either false or misleading. Further, Heartland's omission of required disclosures was unlawful and injurious to Plaintiff. Full and fair disclosure of the nature of the fees, the cost of the fees and who was charging and receiving the fees are all necessary

information for a consumer in deciding whether to accept and pay the Surcharge. Consumers did not understand the extent to which they can reject the Surcharge, did not have a practicable option to comparison shop under the circumstances, and also were unaware of who or how to protest or question the legitimacy or the amount of the Surcharge.

68.     Plaintiffs and Class members suffered an ascertainable loss in that Heartland caused them to pay money pursuant to false or deceptive statements and omissions of material fact regarding the Credit/Debit Card Surcharges. The amount of this ascertainable loss is equal to the entire Surcharge because it was not properly disclosed. Plaintiffs and putative class members are due to receive their actual damages equal to the ascertainable loss.

69.     Alternatively, Plaintiffs and Class members suffered an ascertainable loss in that Heartland caused them to pay money in excess of the allowable Credit/Debit Card Surcharges allowed under the rules of the Credit Card companies and which are set forth in its own Merchant Agreements.

70.     This misrepresentation of the Credit/Debit Card Surcharge as a "Program Fee" required by and paid to the school had a direct bearing on Plaintiffs' decision to pay the fees. Had Plaintiffs been provided with actual disclosure of the Credit/Debit Surcharges, they would have challenged the assessment of and amounts of the fee and would not have paid the "Program Fee."

71.    In addition, Plaintiffs and Class members are entitled to declaratory and injunctive relief, declaring that Heartland violated N.J.S.A. 56:8-2; and prohibiting Heartland from further violations of the NJCFA.

72.    Plaintiffs and Class members are entitled to treble damages pursuant to N.J.S.A. § 56:8-19.

73.    In accordance with N.J.S.A. § 56.8-19 and N.J.S.A. § 56.12-17, Plaintiffs and Class members are entitled to attorney's fees and litigation costs.

<u>**COUNT II**</u>
**Violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, ("TCCWNA") N.J.S.A. §56:12-14 *et seq*.**

74.    Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege paragraphs 1 through 63 as if expressly set forth in this Count.

75.    The New Jersey Truth in Consumer Contract, Warranty and Notice Act (TCCWNA) § 56:12-14 *et seq.,* prohibits sellers from "offer[ing] to any consumer or prospective consumer or enter[ing] into any written consumer contract or giv[ing] or display[ing] any written consumer warranty, notice or sign" that "violates any clearly established legal right of a consumer." N.J.S.A. § 56:12-1.

76.    Heartland's contract with parents violates clearly established legal rights of consumers by mischaracterizing the Credit/Debit Card Surcharges as "program fees" in its Terms of Service because the Merchant Agreements with schools clearly

require compliance with rules promulgated by the Credit Card companies providing for registration, disclosures and limitations on the amount charged.

77.    Namely, Merchants must clearly and prominently disclose to consumers any surcharge that will be assessed, including (i) the exact amount or percentage; (ii) a statement that the surcharge is assessed by the merchant and is applicable only to credit card transactions; and (iii) a statement that the surcharge amount is no greater than the amount paid by the merchant to its payment processor for processing the transaction.

78.    Heartland's charges to Plaintiffs and the putative Class members further violates the TCCWNA because the Credit/Debit Card Surcharges exceeded the rules of the card network associations which must be calculated at the brand or product level according to certain complex network rules, but in all cases, they must be less than the maximum permitted cap, which is currently 4%. In the case of Plaintiffs, the credit card surcharges exceeded that cap.

79.    Plaintiffs and putative Class members are entitled to damages pursuant to the TCCWNA provision which provides that "any person who violates the provisions of this Act shall be liable to the aggrieved consumer for a civil penalty of not less than $100, or actual damages or both, at the election of the consumer, together with reasonable attorney fees and costs." N.J.S.A § 56:12-17.

## COUNT III
### Breach of Contract

80.     Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege paragraphs 1 through 63 as if expressly set forth in this Count.

81.     Plaintiffs and Class members contracted with Heartland for the use of the MySchoolBucks program. Exhibit D, Terms of Service (Updated on May 3, 2016).

82.     Plaintiffs and Class members performed all conditions precedent to filing this action.

83.     The Paragraph titled "Program Fee or Membership Fee of the standardized MySchoolBucks program Terms of Service contract between Plaintiffs and Class members stated that a school district may require a program fee and that the school would receive "the full payment:"

> Your school district may require a program fee or membership fee for your use of the Service. If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

The Agreement further stated:

> **Payments to Schools**
> You may make payments to your child's school account using a credit card. Your credit card provider may have imposed a maximum amount which can be placed on your credit card. **Your child's school receives the full payment.** Payments are processed promptly for your child's use. …

(Emphasis added).

84.   Because Heartland represented that the school districts require and would ultimately retain the MySchoolBucks Program Fee, when, in fact, the schools did not require the fee, and Heartland did not pay the Program Fee to the school as promised, Heartland has materially breached the MySchoolBucks Terms of Service with Plaintiffs and putative Class members.

85.   As a direct and proximate result of Heartland's material breach, Plaintiffs and putative Class members are entitled to a refund of the amount paid as "Program Fees."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter an Order:

A.   Certifying this action as a class action as provided by Rule 23(a) and (b) of the Federal Rules of Civil Procedure, appointing Plaintiffs as class representatives, and appointing the undersigned to act as Class Counsel;

B.   Declare that Heartland is financially responsible for notifying all Class members;

C.   For injunctive relief prohibiting Heartland from future violations of the Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*, Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14 *et seq.*, and requiring Heartland to comply with these statutes and all applicable rules and regulations;

D.      Awarding disgorgement of all the MySchoolBucks Program Fees Heartland collected and retained from Plaintiffs and Class members;

E.      Awarding actual damages, punitive damages, treble damages pursuant to N.J.S.A.§ 56:8-19, and actual and statutory damages pursuant to N.J.S.A. § 56: 12-17;

F.      Awarding reasonable attorneys' fees and costs of suit in connection with this action pursuant to N.J.S.A. § 56:8-19, N.J.S.A. § 56:12-17;

G.      Declaring that Heartland is in breach of its contracts with Plaintiffs and Class members and awarding compensatory damages;

H.      Awarding pre-judgment and post-judgment interest; and

I.      For such other and further relief as Plaintiffs and Class members may be entitled or as the Court deems equitable and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted this 26th day of January, 2021.

**VARNELL & WARWICK, P.A.**
s/ Brian W. Warwick
Brian W. Warwick, FBN: 0605573
Janet R. Varnell, FBN: 0071072
1101 E. Cumberland Ave., Suite 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*jvarnell@varnellandwarwick.com*
*bwarwick@varnellandwarwick.com*

*kstroly@varnellandwarwick.com*

Stephanie Glaberson (Admitted *Pro Hac Vice*)
**PUBLIC JUSTICE, P.C.**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
*sglaberson@publicjustice.net*

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of January, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Brian W. Warwick
**BRIAN W. WARWICK**