## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MAX STORY and NANCY MURREY-SETTLE,
on behalf of themselves and all others similarly
situated,

CASE NO.: 3:19-cv-00724-TJC-JBT
CIVIL DIVISION

Plaintiffs,

**CLASS REPRESENTATION**

v.                                                    **JURY TRIAL DEMANDED**

HEARTLAND PAYMENT SYSTEMS,
LLC, a Foreign Limited Liability Company,

Defendant.
_____

## THIRD AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

Plaintiffs Max Story and Nancy Murrey-Settle ("Plaintiffs") file this Class Action Complaint on behalf of themselves and all others similarly situated, by and through the undersigned attorneys, against Heartland Payment Systems, LLC (hereinafter "Heartland" or "Defendant"), and state as follows:

### I.    INTRODUCTION

1.    This is a class action on behalf of Plaintiffs and a class of all other similarly situated parents against Heartland Payment Systems, LLC, a credit card payment processing company which owns and operates its MySchoolBucks

Program, which is a stored-value account platform used by over 30,000 schools nationally as a means to provide students with stored value cards that can be used to pay for school meals and other school fees.

2.      Heartland's contractual agreement with parents stated that a "Program Fee" may be required by the school. This statement is false. The "Program Fee" is not a school requirement nor is it a payment for participating in the MySchoolBucks "program." Instead, the "Program Fee" is actually a Credit/Debit Card Surcharge imposed and collected by Heartland, the amount of which is dictated by the payment method used to deposit funds into the child's account.

3.      Parents placing funds into their child's MySchoolBucks account using a credit card are charged a Credit Card Surcharge of approximately $2.49 per transaction.

4.      Parents placing funds into their child's MySchoolBucks account using a debit card are charged a Debit Card Surcharge of approximately $1.95 per transaction.

5.      Because Credit and Debit Card Surcharges are heavily regulated and must be clearly disclosed, Heartland has engaged in an unfair and deceptive practice in violation of New Jersey and Florida law.

## II.   JURISDICTION AND VENUE

6.     The Court has jurisdiction over this action pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d), because there are at least 100 Class members in the proposed Class; the combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs; Plaintiffs are residents of Duval County, Florida; and Defendant conducts an ongoing course of business in Duval County, throughout the State of Florida and the United States.

## III.   PARTIES

7.     Plaintiff, Max Story, is a natural person, a resident of Duval County, and a citizen of the State of Florida.

8.     Plaintiff, Nancy Murrey-Settle, is a natural person, a resident of Duval County, and a citizen of the State of Florida.

9.     Defendant, Heartland Payment Systems, LLC, was headquartered in Princeton, New Jersey until it was acquired by Global Payments in April of 2016. Since 2016, Heartland's principal address has been 10 Glenlake Parkway, North Tower, Atlanta, Georgia 30328. Heartland is a corporate citizen of the States of Delaware and Georgia.

## IV.   FACTUAL ALLEGATIONS

10.     Heartland Payment Systems, Inc. ("Heartland") is a publicly traded, Fortune 500 Company. It is the fifth largest credit/debit card payment processor in

the United States. It provides credit/debit/prepaid card processing, mobile commerce, e-commerce, and related business services to more than 275,000 business and educational locations nationwide.

11.     When Heartland acts as a credit card payment processor for businesses other than schools, it charges a very small fee to the "merchant" for its services – less than 2%. However, when Heartland processes credit cards for schools, it inflates its rates substantially – often above 5%.

12.     Heartland offers schools across the country its "MySchoolBucks Program" which is the leading K-12 point-of-sale software program that schools use to charge students for items sold at the school, primarily school lunch. The online portal allows parents to deposit funds into their child's MySchoolBucks "account," which acts like a stored-value card similar to a prepaid credit card. By using the MySchoolBucks Program, schools do not have to worry about children carrying cash, staff taking cash, or checks bouncing.

13.     To carry out its MySchoolBucks Program, Heartland enters into a Merchant Agreement with the school district, which makes the school a "merchant" and therefore bound by all the rules imposed on merchants by the credit card companies such as Visa, Mastercard, American Express, and Discover.

14.     Heartland Payment Systems has two separate profit streams generated by its MySchoolBucks Program. First, Heartland charges the school for costs of the

program, including, but not limited to, leasing of equipment including scanners, software, programming, pin pads, training, and maintenance fees. These contracts are automatically renewed and cost substantial amounts each year.

15.   For example, Heartland Payment Systems charged Duval County Public Schools the following amounts over the last five years:

2014  $233,758.99

2015  $99,205.86

2016  $115,786.55

2017  $92,883.75

2018  $86,997.00

2019  $82,167.00

Total  $710,799.15

16.   Second, Heartland also charges the school/merchant a Credit/Debit Card Surcharge each time a parent deposits money into a child's MySchoolBucks account. This fee is the same type of fee charged to Heartland's other merchants accepting credit cards, such as retail shops and restaurants. Most of the time, the fees are so low that the merchant simply pays the charge as part of its general overhead. Here, the relationship is different because the merchant/school is *not* the entity taking payment. In other words, the school is not the typical merchant who accepts the credit card from the consumer (parent) and swipes it to access payment. Instead,

Heartland, which is normally just the card processor, steps into the shoes of the merchant/school and accepts payments on behalf of the school/merchant. It then forwards those funds (minus its fee for each transaction) to the school. In other words, Heartland is the payment processor AND the agent of the merchant/school who accepts payment on the school's behalf.

17.   The per transaction fee charged by Heartland for this service is substantially higher than the amounts charged to other merchants. While the school can choose to simply pay Heartland for this service, the inflated rates charged by Heartland would add substantially to the school's overhead. As a result, Heartland offers to "pass through" its Credit/Debit Card Surcharge to parents. The Surcharge, however, is always charged, collected and completely retained entirely by Heartland.

18.   Plaintiffs only learned of this scheme after a Freedom of Information Act request was made to several Florida schools using the MySchoolBucks Program. To understand Heartland's scheme, a brief understanding of its contracts with the schools is required. Because Plaintiffs' children all attend Duval County Public Schools, its contracts are illustrative, although Heartland uses form contracts for schools throughout the country.

A.   **HEARTLAND'S SCHOOL CONTRACTS**

19.   Once the school district has agreed to use the MySchoolBucks Program, Heartland enters into a "K-12 Merchant Processing Agreement" with the school.

Attached hereto as **Exhibit A** is the Merchant Processing Agreement with Duval County Public Schools.

20.    Under the Merchant Processing Agreement, the school becomes the "Merchant" and Heartland, the "Processor."

21.    The Merchant Processing Agreement includes a "Card Fee Schedule" detailing the amounts that Heartland will charge the school each time a credit card or debit card (ACH) is used to place funds into a student's MySchoolBucks account. The Duval County Fee Schedule states as follows:

| CARD FEE SCHEDULE | | | | | | |
|---|---|---|---|---|---|---|
| Service Requested | Discount Rate | Discount Per Item | Trans Fee Dial | Trans Fee IP | Annual Volume: $ 25,000 | Average Ticket: $ 45.00 |
| Visa | % | $ 2.49 | | | | High Ticket: $ 45.00 |
| MasterCard | % | $ 2.49 | $ 0 | $ 0 | ☒ Service Fee (Pass Through/Single Transaction) | |
| Discover/JCB | % | $ 2.49 | | | ☐ COST PLUS | |
| TSYS Authorization | % | $ | $ | $ | | |
| PIN Debit* | | | | | *Plus Applicable Debit Network Fees | |
| Fee Model: ☐ District Absorbed  ☒ Parent Paid | | | | | | |

| RECURRING FEES | | | | SETTLEMENT | |
|---|---|---|---|---|---|
| Chargeback Fee: | $0 | Voice Authorization Fee: | $0 | ☐Monthly ☒Daily Net | |

| INTERCHANGE QUALIFICATION | CARD ACCEPTANCE | DEPOSIT METHOD |
|---|---|---|
| ☒ MOTO / Internet ☐ Retail ☐ Small Ticket | ☒ All Cards Accepted | ☒ Standard |

| ACH FEE SCHEDULE | | | | |
|---|---|---|---|---|
| Transaction Fee | $ 1.95 | % | Annual ACH Volume: $ 2,500.00 | Average ACH Amount: $ 21.00 |
| Monthly Fee | | $ 0 | Average # of ACH Transactions per Month: 40 | |
| Return Item Fee | | $ 0 | Max ACH Limit: 500.00 | |

(**Exhibit A**, Merchant Processing Agreement – Duval County Public Schools).

22.    Heartland charges Duval County Schools a $2.49 Surcharge per credit card transaction, regardless of the amount. For example, a payment of as little as $10 into a MySchoolBucks account will incur a charge of $2.49. This amount far exceeds the amounts Heartland charges its other merchants.

23.    For each transaction in which a debit card (ACH) is used, Heartland imposes a $1.95 Surcharge.

24.    Critically, the "Fee Model" option under the "Card Fee Schedule" gives the school the option of paying these fees itself by checking the "District Absorbed" or Heartland's Credit/Debit Card Surcharge can be passed onto the parent by checking the box labeled "Parent Paid." (**Exhibit A**). On information and belief, thousands of schools across the country elect to have Heartland's Surcharges "passed through" to the parents.

25.    Although there are additional detailed contracts that govern the relationship between the school and Heartland, the Merchant Processing Agreement controls the Credit/Debit Card Surcharges at issue in this case. This document is not publicly available.

26.    Heartland and the school (including Duval County) also enter into another standard-form contract titled "Government and Public Education Credit/Debit Card Processing Agreement." Attached hereto as **Exhibit B** is the Government and Public Education Credit/Debit Card Processing Agreement used by

Duval County Public Schools, and other schools across the country. In that Agreement, Heartland and the school (collectively the "Merchant") agree to comply with the rules and regulations of Visa, Mastercard, Discover and American Express ("Credit Card Companies"):

> 4.11. Merchant shall at all times comply with the Rules and operating regulations of each of the Card Schemes and American Express as well as all applicable federal, state, and local, rules and regulations.

27.　Because Heartland takes credit and debit card payments from parents on behalf of its school/merchant, Heartland acts as the agent of the merchant/school and is therefore bound by the Merchant Agreement to follow the rules of the Credit Card Companies.

28.　Accordingly, the rules and regulations imposed by Visa, Mastercard, Discover, and American Express, including all requirements for imposing Credit/Debit Card Surcharges, must be followed by Heartland when acting as the agent of the merchant/school by collecting payments from parents and charging Credit/Debit Card Surcharges.

29.　All of the Credit Card Companies require a prominent disclosure of all Credit/Debit Card Surcharges or Convenience Fees at the point of sale which explains the nature of the fees, the amount of the fee and how it was calculated. The Credit Card Companies also limit how much can be charged for such fees. As

explained below, these rules have not been followed by Heartland acting on behalf of its merchant/school.

30.     Because Heartland's contract states that the Surcharge is actually being imposed by the merchant/school and is simply being "passed through" to the parent, Heartland stands in the shoes of the merchant/school as its agent, and is therefore bound by the rules imposed on merchants by the Credit Card Companies.

31.     Because Heartland fails to disclose the true nature of the Credit/Debit Card Surcharge at all, it cannot charge these Surcharges without violating the rules and regulations imposed by the Credit Card Companies. *See generally* **Exhibit C**, Visa Rules, Section 5.

> **5.6.1.6 US Credit Card Surcharge Maximum Amount – US Region and US Territories**
>
> In the US Region or a US Territory: A US Credit Card Surcharge assessed at the brand level, as specified in *Section 5.6.1.5, US Credit Card Surcharge Requirements – US Region and US Territories*, must not exceed the Merchant's Visa Surcharge Cap.
>
> In the US Region or a US Territory: A US Credit Card Surcharge assessed at the product level, as specified in *Section 5.6.1.5, US Credit Card Surcharge Requirements – US Region and US Territories*, must not exceed the Merchant's Visa Credit Card Surcharge Cap less the Debit Card Cost of Acceptance.
>
> In no case may the US Credit Card Surcharge amount exceed the Maximum Surcharge Cap.
>
> **5.6.1.7 US Credit Card Surcharge Disclosure Requirements – US Region and US Territories**

In the US Region or a US Territory: A Merchant must, at both the point of entry into the Merchant Outlet and the Point-of-Transaction, clearly and prominently disclose any US Credit Card Surcharge that will be assessed.

The disclosure at the Point-of-Transaction must include all of the following:

The exact amount or percentage of the US Credit Card Surcharge

A statement that the US Credit Card Surcharge is being assessed by the Merchant and is only applicable to credit Transactions

A statement that the US Credit Card Surcharge amount is not greater than the applicable Merchant Discount Rate for Visa Credit Card Transactions at the Merchant

Merchants with Acceptance Devices that offer Cardholder choice for debit Transactions in the form of "credit" and "debit" buttons must ensure that:

Debit Card Transactions are not assessed a US Credit Card Surcharge

It is made clear to the Cardholder that surcharges are not permitted on debit Transactions regardless whether a Cardholder selects the "credit" or "debit" button

For an Electronic Commerce Transaction, a Mail/Phone Order Transaction, and an Unattended Transaction, the Cardholder must be provided the opportunity to cancel the Transaction subsequent to the US Credit Card Surcharge disclosure.

For example, the requirement for clear and prominent disclosure will be satisfied if the disclosure is made consistent with *Table 5-5, Surcharge Disclosure – US Region and US Territories*:

**Table 5-5: Surcharge Disclosure – US Region and US Territories**

| Transaction Type | Point-of-Entry | Point-of-Transaction |
|---|---|---|
| Face-to-Face Transaction | Main entrance(s) of the Merchant Outlet, in a minimum 32-point Arial font, but in any case no smaller or less prominent than surrounding text | Every customer checkout or payment location, in a minimum 16-point Arial font, but in any case no smaller or less prominent than surrounding text |
| Electronic Commerce Transaction | The first page that references credit card brands accepted, in a minimum 10-point Arial font, but in any case no smaller or less prominent than surrounding text | Checkout page, in a minimum 10-point Arial font, but in any case no smaller or less prominent than surrounding text |
| Mail order Transaction | The first page of the catalog that references credit card brands accepted, in a minimum 8-point Arial font, but in any case no smaller or less prominent than surrounding text | Mail order form, in a minimum 10-point Arial font, but in any case no smaller or less prominent than surrounding text |
| Telephone order Transaction | The first page of the catalog that references credit card brands accepted, in a minimum 8-point Arial font, but in any case no smaller or less prominent than surrounding text | Verbal notice from the telephone order clerk, including US Credit Card Surcharge amount |
| Unattended Cardholder-Activated Terminal | Main entrance(s) of the Merchant Outlet (if applicable) (for example: gas [petrol] station store) in a minimum 32-point Arial font, but in any case no smaller or less prominent than surrounding text | On the Unattended Cardholder-Activated Terminal or virtual disclosure on the payment terminal screen, in a minimum 16-point Arial font, but in any case no smaller or less prominent than surrounding text |

### 5.6.2.1 Convenience Fees – AP, CEMEA, and US Regions

In the AP Region, CEMEA Region (Russia), US Region: A Merchant that charges a Convenience Fee must ensure that the fee is assessed as follows:

**Table 5-6: Convenience Fee Requirements**

| Convenience Fee Requirement | AP Region | CEMEA Region (Russia) | US Region |
|---|---|---|---|
| Charged for a bona fide convenience in the form of an alternative payment channel outside the Merchant's customary payment channels and not charged solely for the acceptance of a Card | X | X | X |
| Added only to a Transaction completed in a Card-Absent Environment | X | | X |
| Not charged if the Merchant operates exclusively in a Card-Absent Environment | X | | X |
| Added only to a domestic Unattended Transaction, excluding Transactions at Automated Fuel Dispensers, Telephone Service Transactions, or ATM Cash Disbursements | | X | |
| Charged only by the Merchant that provides goods or services to the Cardholder | X | | X |
| Applicable to all forms of payment accepted in the payment channel | X | X | X |
| Disclosed clearly to the Cardholder:<br>• As a charge for the alternative payment channel convenience<br>• Before the completion of the Transaction. The Cardholder must be given the opportunity to cancel. | X | X | X |
| A flat or fixed amount, regardless of the value of the payment due<br><br>In the AP Region: An ad valorem amount is allowed as required by applicable laws or regulations.<br><br>In the CEMEA Region (Russia): The amount must not exceed:<br>• RUB 35 for Transactions processed with MCC 4814 | X | X | X |

Table 5-6: Convenience Fee Requirements (continued)

| Convenience Fee Requirement | AP Region | CEMEA Region (Russia) | US Region |
|---|---|---|---|
| • RUB 60 for Transactions processed with MCC 4900<br>• RUB 48 for all other Transactions | | | |
| Included as part of the total amount of the Transaction and not collected separately | X | X | X |
| Not charged in addition to a surcharge | X | N/A[1] | X |
| Not charged on a Recurring Transaction or an Installment Transaction | X | X | X |

[1] Surcharging is not allowed.

32.   Mastercard, Discover, and American Express have similar disclosure requirements before any Surcharge can be charged.

33.   MasterCard Rule 5.11.2.3 governs Requirements for disclosing a surcharge:

5.11.2.3 Requirements for Merchant Disclosure of a Surcharge at the POI

1.   A Merchant that chooses to Surcharge, either at the brand level or the product level, must prominently display a clear disclosure of the Merchant's Surcharge policy at the point of store entry or when conducting an e-commerce Transaction, on the first page that references Credit Card brands. The disclosure must include a statement that the Surcharge that the Merchant imposes is not greater than the Merchant's Merchant Discount Rate for Mastercard Credit Card Transactions.

2.   The Merchant must provide a disclosure of the Merchant's Surcharging practices at the POI or point of sale and that disclosure must not disparage the brand, network, Issuer, or payment card product being used. A statement that the Merchant prefers or requests that a cardholder use a form of payment with

lower acceptance costs does not constitute disparagement under this Rule. This disclosure must include:

    a.    The Surcharge percentage that is applied to Mastercard Credit Card Transactions;

    b.    A statement that the Surcharge is being imposed by the Merchant; and

    c.    A statement that the Surcharge is not greater than the applicable Merchant Discount Rate for Mastercard Credit Card Transactions at the Merchant.

3.    A Merchant that chooses to Surcharge must provide clear disclosure of the Surcharge amount on the Transaction receipt.

Mastercard Rule 5.11.2.3, Effective: 27 January 2013 – 6 June 2019.

34.    Because Heartland failed to disclose that its "Program Fee" was actually a Credit/Debit Card Surcharge and/or Convenience Fee, the fees collected by Heartland from parents are strictly prohibited under the rules of all Credit Card Companies. As a result of its failure to follow the rules imposed by the Credit Card Companies, all Surcharges imposed and collected by Heartland are unlawful.

**B.    HEARTLAND'S CONTRACT WITH PARENTS**

35.    Once the school contracts with Heartland to become a merchant, parents of that school receive notice and are strongly encouraged to use the Heartland system for all payments made to the school. Parents are directed to Heartland's website – www.myschoolbucks.com - to create an account.

36.     The standard form MySchoolBucks Terms of Service Agreement is a contract only between Heartland and parents, like Plaintiffs. The school is not a party to this Agreement. Thus, to the extent that Heartland passes on a charge from the school to the parent, it does so as the agent of the school.

37.     The Agreement in place at the time Plaintiffs were charged Program Fees by Heartland explained the limited service that Heartland was offering, in part, as follows:

> **License and Site Access**
> Heartland Payment Systems, Inc. grants you a limited license to access and make personal use of this Service to pay your child's school for goods and services sold by the school and/or school district (i.e., school meals). You may also be able to use the Service to obtain information about the balance of meal prepayments at your child's school, and to review your child's food purchases at the school cafeteria. …
>
> **Payments to Schools**
> You may make payments to your child's school account by using a credit card. Your credit card provider may have imposed a maximum amount which can be placed on your credit card. **Your child's school receives the full payment.** Payments are processed promptly for your child's use. …
>
> **One Time Payments**
> You authorize MySchoolBucks to debit the bank account indicated in this web form for the noted amount on today's date. You understand that because this is an electronic transaction, these funds may be withdrawn from your account as soon as the above noted transaction date. You acknowledge that the origination of ACH transactions to your account must comply with the provisions of U.S. law.

…

**Recurring Payments**
You authorize MySchoolBucks to debit the bank account indicated in this web form for the noted amount on the schedule indicated. You understand that this authorization will remain in effect until the scheduled end date, or until you cancel the payment, whichever comes first. If the above noted payment falls on a weekend or holiday, you understand that the payment may be executed on the next business day. You understand that because this is an electronic transaction, these funds may be withdrawn from your account as soon as the above noted transaction date. You acknowledge that the origination of ACH transactions to your account must comply with the provisions of U.S. law. …

…

**Program Fee or Membership Fee**
Your school district may require a program fee or membership fee for your use of the Service.

If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

…

**Applicable Law**
By visiting MySchoolBucks.com, you agree that the laws of the State of New Jersey will govern these Terms of Use, and any dispute relating to the Service provided herein shall be subject to the jurisdiction of the courts of the State of New Jersey.

**Exhibit D**, MySchoolBucks Terms and Conditions (emphasis added).

38.     Heartland's MySchoolBucks website further clarifies on its Frequently Asked Questions page the Program Fee as follows:

> Is there a fee for using MySchoolBucks?
>
> Signing up for MySchoolBucks is free. Depending on your school/district and order/item you are purchasing, you may be required to pay a program or membership fee.

MySchoolBucks Frequently Asked Questions.[1]

39.     Although Heartland's Terms of Service specifically references credit and debit card payments, it fails to disclose the Credit/Debit Card Surcharges that are imposed as a result of the Merchant Agreement with the school. In fact, Heartland's MySchoolBucks Terms and Conditions falsely states that "Your child's school receives the full payment." (**Exhibit D**, "Payment to Schools").

40.     In fact, the only fee even mentioned by Heartland's Agreement with parents is the "Program Fee" or "Membership Fee." The explanation of the "Program Fee" or "Membership Fee" is false and deceptive in three ways.

41.     First, the Program Fee is not accurately explained. The Program Fees are not charged by the school for participating in the MySchoolBucks "Program." Instead, they are Credit/Debit Card Surcharges imposed by Heartland under its Merchant Agreement with the school and "passed through" to the parents under the terms of that contract. The Surcharges are imposed by Heartland and calculated

---

[1] https://www.myschoolbucks.com/ver2/help/gethelp Site last visited December 4, 2019.

based entirely on the method of payment used. If the fees were not linked to the method of payment, they would not differ when a payment is made with a debit card ($1.95) versus a credit card ($2.49). Similarly, they are only charged when the school and Heartland's Merchant Agreement states that the fees are to be "passed through" to the parents.

42.    Furthermore, Credit/Debit Card Surcharges must be clearly disclosed so that consumers know what they are being charged for, and can inquire of their card provider or bank regarding the legitimacy of the Surcharges. All credit card companies, including Visa, Mastercard, Discover and American Express have specific rules regulating how Credit Card Surcharges can be imposed, including limits on the amount and how notice must be provided to both the Credit Card Company and the consumer. Heartland's Merchant Agreement requires compliance with the Rules established by all Credit Card Companies. Because all Card Providers require clear disclosure of any Credit Card Surcharges, Heartland's "Program Fee" or "Membership Fee" explanation fails to meet any of those requirements and is therefore unfair and deceptive.

43.    Second, the explanation of the Surcharge is false and deceptive because the Credit/Debit Card Surcharges are imposed and collected entirely by Heartland under the credit card and ACH "Fee Schedules" in the Merchant Agreement. In fact,

the Merchant Agreement even states that the Surcharges are a "pass through" to Heartland as opposed to a fee imposed by the school.

44.     Third, the Credit/Debit Card Surcharges collected under the guise of "Program" or "Membership" fees, does not go to the school. Instead, these amounts are charged and retained exclusively by Heartland. Under the "Payments to Schools" section of the Terms and Conditions (**Exhibit D**), Heartland states: "Your child's school receives the full payment." When this contract language is combined with the "Program/Membership Fee" explanation that the fee is "required" by the school, a reasonable consumer would believe that the school is receiving all of these amounts. In fact, the entire Credit/Debit Card Surcharge is collected and retained by Heartland.

45.     Some school districts around the country have even attempted to clarify the misleading nature of the representations surrounding the "Program Fees" by issuing precise statements to the public explaining that it is Defendant, and not the school district, which sets and retains the fees. For example, the Souderton Area School District in Pennsylvania released the following notice in regards to the 2017 MySchoolBucks Program Fee increase: "Souderton Area School District does not

collect or receive this fee. It is the fee charged by the company that administers the credit/debit card payments."[2]

## C.   FACTS RELATING TO NAMED REPRESENTATIVE PLAINTIFFS

### Plaintiff Max Story.

46.    Plaintiff Max Story is a consumer protection attorney representing low-income consumers and his wife is a pediatric mental health therapist who worked for seven years on the campus of Fletcher High School. They have two children who attend Duval County Public Schools and have both served on the board of each of their children's parent teacher associations.

47.    In or around September 2015, Mr. Story created a MySchoolBucks account to pay for one of his children's school lunches and other fees. Based on the representations on Heartland's website, Mr. Story believed that the fees were established by, and went entirely to, the school district. Despite he and his wife being big supporters of and very involved in the public schools, they never were informed that the fees were in fact undisclosed Credit/Debit Card Surcharges imposed and collected entirely by Heartland.

48.    From September 2015 through May 2019, Mr. Story paid 56 "Program Fees" to Heartland.

---

[2] http://www.soudertonsd.org/parents-students/food-services/myschoolbucks-convenience-fee-increase. Site last visited December 4, 2019.

49.     When Mr. Story's deposit to his children's MySchoolBucks accounts was made from his checking account with a debit card, he was charged a "Program Fee" of $1.95 for each transaction regardless of the amount. In reality, this fee was a Debit Card Surcharge imposed by Heartland, but not properly disclosed.

50.     When Mr. Story's deposit to his child's MySchoolBucks account was made from his credit card, he was charged a flat fee or "Program Fee" of $2.49 for each transaction, regardless of the amount. In reality, this amount was a Credit Card Surcharge imposed by Heartland but not properly disclosed.

51.     The vast majority of Mr. Story's deposits were for $45. The $2.49 Credit/Debit Card Surcharge represents 5.53% of the deposit being made to his child's MySchoolBucks account.

52.     Despite Heartland's representation that its program was "free," it was not free as a Program Fee was charged each and every time Mr. Story put funds into his MySchoolBucks account.

53.     Despite Heartland's representation that the School District "required" Mr. Story to pay a Program Fee, the Program Fee was actually charged and collected by Heartland.

54.     Despite Heartland's representation that the Program Fees paid by Mr. Story were being paid to the school district, Duval County School District actually did not retain any of the Program Fees paid by Mr. Story.

22

55.     Mr. Story paid Program Fees to Heartland believing them to have been required by and paid to the school district. He was unaware that the fees were actually Credit/Debit Card Surcharges or Convenience Fees charged for using his credit card and debit card to put money into the lunch accounts of his children. Had he known the true nature of the fees, he would not have paid them and would have contacted his bank and Credit Card Company to complain about the fees. He only paid the program fees because he was deceived by Heartland.

**Plaintiff Nancy Murrey-Settle**

56.     Plaintiff Nancy Murrey-Settle is an employee of the Duval County School District and was a foster parent to one child in 2012, who attended and still attends Duval County Public Schools. As part of the State of Florida's foster parent program, the child received free lunch. When Ms. Murrey-Settle's child was in the second grade and Ms. Murrey-Settle wanted to be in a position to provide a treat from the school's cafeteria upon occasion, such as a weekly ice cream, as a reward system to encourage the child's good behavior. As is the case in many school districts who implement the payment processing system, the school would not accept cash payments at the time. Ms. Murrey-Settle was therefore forced to create a MySchoolBucks account for her foster child thinking that she could place $10.00 into the account for the purpose of rewarding the little girl.

57.    Ms. Murrey-Settle was charged a $2.49 "Program Fee" on the $10 deposit into her MySchoolBucks account. In reality, the fee was a Credit Card Surcharge imposed by Heartland but not properly disclosed.

58.    The following year, Ms. Murrey-Settle adopted the foster child and she continues to attend public school in Duval County, Florida. Ms. Murrey-Settle routinely placed money into the MySchoolBucks account and was charged Credit Card Surcharge disguised as a "Program Fee" for each deposit over a period of approximately four years because it was imperative that her child have access to simple carbohydrates in order to manage a genetic condition.

59.    Despite Heartland's representation that its program was "free," it was not free as a Program Fee was charged each and every time Ms. Murrey-Settle put funds into her MySchoolBucks account.

60.    Despite Heartland's representation that the School District "required" Ms. Murrey-Settle to pay a Program Fee, Heartland required the fee.

61.    Despite Heartland's representation that the Program Fees paid by Ms. Murrey-Settle were being paid to the school district, Duval County School District actually did not retain any of the Program Fees paid by Ms. Murrey-Settle.

62.    Ms. Murrey-Settle paid Program Fees to Heartland believing them to have been required and paid to the school district. She was unaware that the fees were actually Credit/Debit Card Surcharges or Convenience Fees charged for using

her credit card and debit card to put money into the lunch accounts of her child. Had she known the true nature of the fees, she would not have paid them and would have contacted her bank and Credit Card Company to complain about the fees. She only paid the program fees because she was deceived by Heartland.

63.   Once her child reached the sixth grade and was more capable of handling cash responsibly, Ms. Murrey-Settle no longer made deposits into the MySchoolBucks account in order to stop paying the excessively high fees. Ms. Murrey-Settle believes that she made her last deposit into the MySchoolBucks account sometime in 2016.

64.   Sometime after this lawsuit was originally filed, Heartland began sending Ms. Murrey-Settle emails informing her that there was a balance remaining in her MySchoolBucks account and urging her to sign in to her account. She went to the website to log in and retrieve the funds in the account only to read the "pop-up" notification that she would have to agree to the new Terms of Service in order to access her account, including consent to binding mandatory arbitration of all past and future claims, a class action ban and to specifically waive any right to participate in the instant lawsuit originally filed by Mr. Story. She did not agree to the new Terms and Conditions.

65.   Ms. Murrey-Settle was later unable to access her account and retrieve the funds that Heartland said were in her account.

## D.    CLASS ALLEGATIONS

66.    Pursuant to Federal Rule of Civil Procedure 23(a), (b) (2) and (b) (3),

Plaintiffs bring this action on behalf of themselves and all others similarly situated.

The Classes are defined as:

**NATIONAL CLASS:**    All persons in the United States (except those persons who reside in the State of New Jersey) who entered into a MySchoolBucks Terms of Service Agreement with Heartland in a form substantially similar to Exhibit D, and who paid a MySchoolBucks Program Fee to Heartland.

**FLORIDA SUBCLASS:** All persons who reside in the State of Florida who entered into a MySchoolBucks Terms of Service Agreement with Heartland in a form substantially similar to Exhibit D, and who paid a MySchoolBucks Program Fee to Heartland.

Collectively the ("Class")

67.    Excluded from the Classes are: (a) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; and (b) the judge to whom this case is assigned and any member of the judge's immediate family.

68.    Heartland's Terms of Service Agreement dictates that New Jersey law "governs these Terms of Use." The statute of limitations is six years for the New Jersey Consumer Fraud Act ("NJCFA"), the New Jersey Truth-in-Consumer Contract Warranty and Notice Act ("TCCWNA") and for Breach of Contract. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim is subject to a four-year statute of limitations.

69.     Plaintiffs can identify and ascertain all other class members from Heartland's business records. These records are computerized and will reflect which customers were charged and paid Heartland's deceptive and unfair "Program Fee" which was actually an undisclosed Credit/Debit Card Surcharge. Thus, Plaintiffs' proposed classes are ascertainable.

70.     **Numerosity:** Plaintiffs do not know the exact size of the classes because this information is in Heartland's exclusive control. However, based on the nature of the commerce involved and the size and scope of Heartland's business, Plaintiffs believe the class members number in the tens of thousands and that class members are dispersed throughout the United States, including Florida. Therefore, joinder of all class members would be impracticable.

71.     **Typicality:** Plaintiffs' claims are typical of other class members' claims because Plaintiffs and all class members were subject to a standard form Terms of Service Agreement and were charged the same unlawful MySchoolBucks Program Fee by Heartland, which was actually a Credit/Debit Card Surcharge.

72.     Before this Amended Complaint was filed, Plaintiffs – through counsel – made Freedom of Information Act requests to various school districts identified through public records as having a contractual arrangement with Heartland similar to Duval County Public Schools. Plaintiffs received documentation and reviewed Merchant Agreements between Heartland and a multitude of school districts in

California, Colorado, Florida, Illinois, Louisiana, New Jersey and New York. It appears from this review that Heartland used standard form Merchant Agreements during the class period that do not materially vary from one school district to another. While the amounts charged to the parents for Credit/Debit Card Surcharges may vary slightly by school, the differences are minor and merely mathematical. Regardless, Heartland uniformly fails to accurately disclose the Credit/Debit Card Surcharges and systematically states that only a Program Fee or Membership Fee may be required by the school. Each of Heartland's Merchant Agreements dictate that the rules imposed by Visa, Mastercard, Discover and American Express must be followed, including any fees charged as Credit/Debit Card Surcharges.

73. **Commonality and Predominance:** Questions of law and fact common to the Class and Subclass exist and predominate over questions affecting only individual members, including, *inter alia*, the following:

   a. Whether Heartland's representations regarding the MySchoolBucks Program Fee are unfair and deceptive because the fees are actually Credit/Debit Card Surcharges;

   b. Whether Heartland's Term of Service Agreement section titled "Program Fee or Membership Fee" deceptively explains its Credit/Debit Card Surcharge in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*;

c.   Whether Heartland violated the Rules imposed by Visa, Mastercard, Discover, American Express or ACH for imposing surcharges for use of a credit or debit card;

d.   Whether the aforementioned violations of the NJCFA and Heartland's failure to comply with the disclosure requirements imposed by Visa, Mastercard, Discover, American Express, or ACH for imposing Credit/Debit Card Surcharges constitutes violations of the New Jersey Truth-in-Consumer Contract Warranty and Notice Act, N.J.S.A. § 56:12-14 *et seq.*, specifically N.J.S.A. §56:12-15;

e.   Whether Heartland violated FDUTPA by charging a Credit/Debit Card Surcharge and/or by failing to disclose that the Program Fee was actually a Credit/Debit Card Surcharge;

f.   Whether the contracts between Heartland and the parents (including Plaintiffs) was breached;

g.   Whether Heartland's actions have proximately caused an ascertainable loss to Plaintiffs and members of the Class and Subclass and, if so, the proper measure of damages; and

h.   Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

74.   **Adequacy:** The named Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class because they possess no interest antagonistic to the class members they seek to represent, and because the adjudication of their claims will necessarily decide the identical issues for all other class members. Whether the NJCF, TCCWNA, and FDUTPA were violated and whether Heartland breached its contract with parents involve predominating common issues that will be decided for all consumers who entered into similar or identical Terms of Service Agreements. There is nothing peculiar about the Plaintiffs' situations that would make them inadequate class representatives.

75.   Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation.

76.   **Superiority:** A class action is superior to other methods for the fair and efficient adjudication of this controversy because the damages suffered by each individual Class member are relatively modest, compared to the expense and burden of individual litigation. It would be impracticable for each Class member to seek redress individually for the wrongful conduct alleged herein. It would be difficult, if not impossible, to obtain counsel to represent Plaintiffs on an individual basis for such small claims. More importantly, the vast majority of Class members are not aware that Heartland's MySchoolBucks Program Fee violates the NJCFA, FDUTPA and/or the TCCWNA and if Heartland breached its contract with parents. Practically

speaking, a class action is the only viable means of adjudicating the individual rights of Plaintiffs and the Classes. There will be no difficulty in the management of this litigation as a class action as the legal issues affect a standardized pattern of conduct by Defendant and class actions are commonly used in such circumstances. Furthermore, since joinder of all members is impracticable, a class action will allow for an orderly and expeditious administration of the claims of the Class and Subclass and will foster economies of time, effort and expense.

**COUNT I:**
**Violation of the New Jersey Consumer Fraud Act**
**N.J.S.A. §56:8-2.1 *et seq.***
On Behalf of the Class

77.     Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege paragraphs 1 through 76 as if expressly set forth in this Count.

78.     N.J.S.A. §56:8-2. declares that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; …

79.     Plaintiffs are both "persons" and "consumers" pursuant to N.J.S.A. §56:8-1(d), as they and all Class members are natural persons as defined therein.

80.     Defendant is a "person" pursuant to N.J.S.A. §56:8-1(d), as it is a business entity, corporation or company as defined therein.

81.     Defendant's MySchoolBucks service is "merchandise" pursuant to N.J.S.A. §56:8-1(c), as it is a service offered directly or indirectly to the public for sale as defined therein.

82.     Defendant engages in the sale of merchandise pursuant to N.J.S.A. §56:8-1(e), as it offers its MySchoolBucks service directly or indirectly to the public for sale.

83.     Heartland engaged in an unconscionable, unfair, deceptive, fraudulent and/or misleading pattern and practice by making misleading or false statements regarding fees charged to Plaintiffs and the putative Class members, fraudulently omitting required disclosures and charging Surcharges in excess of those permitted by applicable rules and the Merchant Agreements between Heartland and school districts of which parents are intended third-party beneficiaries. More specifically, those violations were:

a.     Heartland enters into uniform Merchant Agreements with various schools throughout the United States. In those Merchant Agreements, Heartland regularly imposes a Credit and/or Debit Card Surcharge to be paid by either the School or parents. Heartland subsequently enters into standard form MySchoolBucks Terms of Service Agreements with

parents where it misrepresents the surcharge as a "program fee" required by the school districts:

**Program Fee or Membership Fee**

*Your school district may require a program fee* or membership fee for your use of the Service. If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

**Exhibit D**, Terms of Service (emphasis added). This language is unfair and deceptive because the Merchant Agreement with the school districts reveals that the true nature of the charge is a Credit/Debit Surcharge and not a program fee imposed or collected by the school.

b.   Under the "Payments to Schools" section of the Terms of Service Agreement, Heartland states "Your child's school receives the full payment." This statement is untrue because the money charged as Program Fees are not given to schools.

c.   Additionally, Heartland's MySchoolBucks website states that MySchoolBucks is "free" and that the school districts impose the Fee:

Is there a fee for using MySchoolBucks?

> Signing up for MySchoolBucks is **free**. Depending on your school/district and order/item you are purchasing, you may be required to pay a program or membership fee.[3]

(Emphasis added).

This statement is false or deceptive because it is not free and Heartland knew that parents would be required to pay Credit/Debit Card Surcharges every time money is placed in the child's account.

d. Heartland made omissions of material facts by failing to disclose the true nature of the program fees as Credit/Debit Card Surcharges, the basis for the imposition of the program fees, where the money went, and how the amount of the fee was determined. Specifically, because the fees are actually a Credit/Debit Card Surcharge resulting from its Merchant Agreement, it should have explained these facts to parents in accordance with the disclosure requirements imposed by the Credit Card Companies.

e. Heartland made further omissions when it failed to comply with the Credit Card Company disclosure requirements for Credit/Debit Card surcharges that are clearly intended to benefit the consumer. Namely, Merchants must clearly and prominently disclose to consumers any

---

[3] https://www.myschoolbucks.com/ver2/help/gethelp Site last visited December 4, 2019.

surcharge that will be assessed, including (i) the exact amount or percentage; (ii) a statement that the surcharge is assessed by the merchant and is applicable only to credit card transactions; and (iii) a statement that the surcharge amount is no greater than the amount paid by the merchant to its payment processor for processing the transaction.

f.  Heartland's Program Fees as imposed on Plaintiffs and the putative Class members were unfair in that their actual status as Credit/Debit Card Surcharges was never disclosed to the consumer and because the amount of the charge exceeded the rules of the Credit Card Companies because surcharges must be no more than the cost of credit and have a cap far below the amounts set by Heartland.

84.  The scheme perpetrated by Heartland in the way it assessed its Program Fees was deceptive and unfair, and its explanation for the program fees it charged was false and/or misleading because Heartland failed to disclose that the fees are actually Credit/Debit Card Surcharges. Defendant's conduct lacks honesty in fact, fair dealing and good faith and has the capacity to mislead consumers acting reasonably.

85.  Further, Heartland's omission of required disclosures was unlawful and injurious to Plaintiffs. Full and fair disclosure of the nature of the fees, the cost of the fees and who was charging and receiving the fees are all necessary information

for a consumer in deciding whether to accept and pay the Credit/Debit Card Surcharge. Consumers like Plaintiffs did not understand the extent to which they could reject or challenge the Surcharge, did not have a practicable option to comparison shop under the circumstances, and also were unaware of who or how to protest or question the legitimacy or the amount of the Surcharge. Had Plaintiffs known the true nature of the Program Fees as Credit/Debit Card Surcharges, they would not have paid the fee and/or would have challenged the fee with their credit card companies.

86.     Such practices contravene the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq*.

87.     N.J.S.A. § 56:8-2.11 provides that "Any person violating the provisions of the CFA shall be liable for a refund of all monies acquired by means of any practice declared herein to be unlawful."

88.     As a result of Defendant's aforementioned violations, Plaintiff Story suffered an ascertainable loss of an amount no less than 56 payments of the $1.95 debit card fee or the $2.49 credit card fee.

89.     As a result of Defendant's aforementioned violations, Plaintiff Murrey-Settle suffered an ascertainable loss of an amount no less than paying the $2.49 credit card fee over the course of around four years on each of her approximately $10 deposits.

90.    As a result of Defendant's aforementioned violations, Plaintiffs and putative Class members are due to receive their actual damages equal to the ascertainable loss of all program fees paid to Heartland during the class period.

91.    Alternatively, Plaintiffs and Class members suffered an ascertainable loss in that Heartland caused them to pay money in excess of the allowable Credit/Debit Card Surcharges allowed under the Rules of the Credit Card Companies. The Credit Card Companies all limit Surcharges to the merchant's cost of credit. Because Heartland charges far in excess of the cost of accepting Credit/Debit Card payments, it violates these limits to the detriment of Plaintiffs and the putative class.

92.    This misrepresentation of the Credit/Debit Card Surcharge as a "Program Fee" required by and paid to the school had a direct bearing on Plaintiffs' decision to pay the fees. Had Plaintiffs been provided with actual disclosure of the Credit/Debit Surcharges, they would have challenged the assessment of and amounts of the fee and would not have paid the "Program Fee."

93.    As a direct and proximate result of Heartland's violations of the N.J.S.A. § 56:8-2, as set forth in the preceding paragraphs, Plaintiffs suffered a concrete and ascertainable loss in the amounts of each $2.49 and $1.95 Surcharge imposed upon them by Heartland each time the placed funds into their children's MySchoolBucks account, as set forth above.

37

94.     But for Heartland's unconscionable acts and misrepresentations in violation of the CFA, Plaintiffs would not have suffered any damage. Said another way, Plaintiffs' damages are the direct and proximate result of Defendant's violations of the CFA, in that their loss flowed directly from Heartland's acts.

95.     Plaintiffs and Class members are entitled to treble damages pursuant to N.J.S.A. § 56:8-19.

96.     In accordance with N.J.S.A. § 56.8-19 and N.J.S.A. § 56.12-17, Plaintiffs and Class members are entitled to attorney's fees and litigation costs.

**<u>COUNT II:</u>**
**Violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, ("TCCWNA") N.J.S.A. § 56:12-14 *et seq*.**
On Behalf of the Class

97.     Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege paragraphs 1 through 76 as if expressly set forth in this Count.

98.     The New Jersey Truth in Consumer Contract, Warranty and Notice Act (TCCWNA) § 56:12-14 *et seq.,* prohibits sellers from "offer[ing] to any consumer or prospective consumer or enter[ing] into any written consumer contract or giv[ing] or display[ing] any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal Law . . . ." N.J.S.A. § 56:12-15.

99.    Plaintiffs and all members of the Class are "consumers" within the meaning of TCCWNA.

100.   Heartland is a "seller" within the meaning of TCCWNA.

101.   Heartland's MySchoolBucks Terms of Service Agreement is a written agreement between Heartland and Plaintiffs which is both a "consumer contract" and a notice within the meaning of TCCWNA.

102.   Heartland gave, displayed, offered and/or entered into the MySchoolBucks Terms of Service Agreement with Plaintiffs as well as with all members of the Class.

103.   Heartland's contract with parents contains a provision that violates clearly established legal rights of consumers by mischaracterizing the Credit/Debit Card Surcharges as "Program Fees" in its Terms of Service because the Merchant Agreements with schools clearly require compliance with rules promulgated by the Credit Card Companies providing for registration, disclosures and limitations on the amount charged.

104.   Namely, Merchants accepting credit card payments must clearly and prominently disclose to consumers any Credit/Debit Card Surcharge that will be assessed, including (i) the exact amount or percentage; (ii) a statement that the surcharge is assessed by the merchant and is applicable only to credit card transactions; and (iii) a statement that the surcharge amount is no greater than the

amount paid by the merchant to its payment processor for processing the transaction. *See, e.g.,* 5.6.1.6 VISA Rules, US Credit Card Surcharge Maximum Amount – US Region and US Territories; 5.6.1.7 VISA Rules, US Credit Card Surcharge Disclosure Requirements – US Region and US Territories; 5.6.2.1 VISA Rules, Convenience Fees – AP, CEMEA, and US Regions.; Mastercard Rule 5.11.2.3 Charges to Cardholders, Requirements for Merchant Disclosure of a Surcharge at the POI.

105.   Both Visa and Mastercard prohibit ANY Surcharge to be imposed on debit cards. *Id*.

106.   Heartland's charges to Plaintiffs and the putative Class members further violates the TCCWNA because the Credit/Debit Card Surcharges exceeded the rules of the card network associations. Specifically, all Surcharges must be clearly disclosed and explained. Second, the amount of the surcharge is limited to the cost of credit but can never exceed 4%. In the case of Plaintiffs, the credit card surcharges exceeded both the cost of credit and the applicable cap. *See, e.g.,* 5.6.1.6 VISA Rules, US Credit Card Surcharge Maximum Amount – US Region and US Territories; 5.6.1.7 VISA Rules, US Credit Card Surcharge Disclosure Requirements – US Region and US Territories; 5.6.2.1 VISA Rules, Convenience Fees – AP, CEMEA, and US Regions.

107.   Plaintiffs have a clearly established right to receive a clear and accurate disclosure of both the nature and the amount of any surcharge imposed because credit and/or debit cards were used by Heartland to make these payments. Specifically, Plaintiffs have a clearly established right to receive an accurate disclosure of the exact amount or percentage charged, a statement that the surcharge is assessed by the merchant and is applicable only to credit card transactions, and a statement that the surcharge amount is no greater than the amount paid by the merchant to its payment processor for processing the transaction.

108.   The inaccurate and misleading Program Fee disclosure provisions in Heartland's Terms of Service constitute a violation of TCCWNA in that they deprive Plaintiffs of the clearly established right to receive a clear and accurate disclosure of the true nature and amount of any surcharge imposed.

109.   In addition, Heartland's inclusion of the inaccurate and misleading Program Fee disclosure provisions in the Terms of Service constitute a violation of TCCWNA in that Heartland has a clearly established responsibility to provide clear and accurate disclosure of the true nature and amount of any surcharge imposed.

110.   Plaintiffs, and all members of the Class, suffered harm as a result of the inclusion of prohibited language by Heartland in the Terms of Service, and therefore they are "aggrieved consumers" within the meaning of N.J.S.A. § 56:12-17.

111.   Specifically, Plaintiff Story is an aggrieved consumer because he incurred monetary damages in loss of an amount no less than 56 payments of the $1.95 debit card fee and $2.49 credit card fee, as a consequence of Heartland's inclusion of prohibited provisions in the Terms of Service and other writings offered to and entered into by Plaintiffs.

112.   Specifically, Plaintiff Murrey-Settle is an aggrieved consumer because she incurred monetary damages in an amount of no less than paying the $2.49 credit card fee over the course of around four years on each of her $10 deposits, as a consequence of Heartland's inclusion of prohibited provisions in the Terms of Service and other writings offered to and entered into by Plaintiffs.

113.   Alternatively, Plaintiffs are aggrieved consumers in that the misleading and violative language of Heartland's surcharge disclosures deterred Plaintiffs from seeking other less expensive methods to pay for school fees. Specifically, had they not been deterred by Heartland's inclusion of language stating that "your school district may require a program fee or membership fee for your use of the [MySchoolBucks payment service]" and "your child's school receives the full payment," Plaintiffs would have sought and utilized alternate methods to pay for school fees.

114.   As a result of Heartland's violations of TCCWNA as alleged herein, Plaintiffs and putative Class members are entitled to damages pursuant to N.J.S.A. §

56:12-17 which include actual damages and statutory damages of not less than $100 per violation, together with reasonable attorney fees and costs.

## COUNT III:
### Breach of Contract
On Behalf of the Class

115.   Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege paragraphs 1 through 76 as if expressly set forth in this Count.

116.   Plaintiffs assert this Breach of Contract Claim in the alternative to the Consumer Protection Statutory violations asserted in Counts I, II, and III.

117.   Plaintiffs and Class members contracted with Heartland for the use of the MySchoolBucks program. **Exhibit D**, Terms of Service (May 3, 2016 version).

118.   Plaintiffs and Class members gave consideration and performed all conditions precedent to filing this action.

119.   The Paragraph titled "Program Fee or Membership Fee" of the standardized MySchoolBucks program Terms of Service contract between Plaintiffs and Class members stated that a school district may require a program fee and that the school would receive "the full payment:"

> Your school district may require a program fee or membership fee for your use of the Service. If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

The Agreement further stated:

**Payments to Schools**
You may make payments to your child's school account using a credit card. Your credit card provider may have imposed a maximum amount which can be placed on your credit card. **Your child's school receives the full payment.** Payments are processed promptly for your child's use. …

(Emphasis added).

120.   Because Heartland contracted to send the "full payment" to the school including the MySchoolBucks Program Fee, it breached its contract by not paying the Program Fee to the school as promised. Heartland has materially breached the MySchoolBucks Terms of Service with Plaintiffs and putative Class members.

121.   As a direct and proximate result of Heartland's material breach, Plaintiffs and putative Class members are entitled to a refund of the amount paid as "Program Fees."

122.   Plaintiff and Class members suffered actual damages in the amount of Program Fees paid as a direct and proximate result of Defendant's breach.

## COUNT IV:
## Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)
On Behalf of the Florida Subclass Only

123.   Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege paragraphs 1 through 76 as if expressly set forth in this Count.

124.   Heartland's Terms of Service Agreement dictates that New Jersey law "governs these Terms of Use." Therefore, to the extent that claims arise outside the

Terms of Use Agreement, they are not governed by New Jersey Law. This Count arises outside the Terms of Use Agreement.

125.   Florida law declares that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fl. Stat. § 501.204(1).

126.   Chapter 501 of the Florida Statutes governs Consumer Protection generally. Fla. Stat. § 501.0117, prohibits sellers of goods and services from imposing a surcharge on Florida buyers for using a credit card. Specifically, Fla. Stat. § 501.0117(1) states:

> A seller or lessor in a sales or lease transaction may not impose a surcharge on the buyer or lessee for electing to use a credit card in lieu of payment by cash, check, or similar means, if the seller or lessor accepts payment by credit card. A surcharge is any additional amount imposed at the time of a sale or lease transaction by the seller or lessor that increases the charge to the buyer or lessee for the privilege of using a credit card to make payment.

127.   Persons imposing surcharges in violation of this provision are guilty of a second-degree misdemeanor. Fla. Stat. § 501.0117(2).

128.   Heartland engaged in unfair, unconscionable or deceptive acts and practices by charging Plaintiffs and members of the Florida Subclass Credit/Debit Card Surcharges in violation of Fla. Stat. § 501.0117.

129.   Heartland also engaged in unfair, unconscionable or deceptive acts and practices by deceptively labeling its Credit/Debit Card Surcharge as a "Program Fee" so as to avoid the protections provided to Florida consumers by Fla. Stat. § 501.0117. By labeling the Surcharge as a "Program Fee," Florida consumers like Plaintiffs and members of the Florida Subclass were unable to determine that the fee was actually related to their credit card payments and therefore prohibited in Florida as a Surcharge.

130.   Plaintiffs Story and Murrey-Settle would not have paid the Credit/Debit Card Surcharges imposed by Heartland if they had been properly labeled as Surcharges.

131.   Because Credit/Debit Card surcharges are prohibited by Fla. Stat. § 501.0117, and Heartland deceptively labeled its Surcharges as Program Fees, Plaintiffs and members of the Florida Subclass have suffered actual damages in the amount of all "Program Fees" paid during the class period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter an Order:

A.   Certifying this action as a class action as provided by Rule 23(a) and (b) of the Federal Rules of Civil Procedure, appointing Plaintiffs as class representatives, and appointing the undersigned to act as Class Counsel;

B.      Declare that Heartland is financially responsible for notifying all Class members;

C.      For injunctive relief prohibiting Heartland from future violations of the Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*, Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14 *et seq.*, and FDUTPA, and requiring Heartland to comply with these statutes and all applicable rules and regulations;

D.      Awarding disgorgement of all the MySchoolBucks Program Fees Heartland collected and retained from Plaintiffs and Class members;

E.      Awarding actual damages, punitive damages, treble damages pursuant to N.J.S.A.§ 56:8-19, and actual and statutory damages pursuant to N.J.S.A. § 56: 12-17;

F.      Awarding reasonable attorneys' fees and costs of suit in connection with this action pursuant to N.J.S.A. § 56:8-19, N.J.S.A. § 56:12-17; and Fla. Stat. §501.2105;

G.      Declaring that Heartland is in breach of its contracts with Plaintiffs and Class members and awarding compensatory damages;

H.      Awarding pre-judgment and post-judgment interest; and

I.      For such other and further relief as Plaintiffs and Class members may be entitled or as the Court deems equitable and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted this 5th day of February, 2021.

**VARNELL & WARWICK, P.A.**
s/ Brian W. Warwick
Brian W. Warwick, FBN:  0605573
Janet R. Varnell, FBN:  0071072
Matthew T. Peterson, FBN: 1020720
Erika Willis, FBN: 100021
1101 E. Cumberland Ave., Suite 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile:  (352) 504-3301
*bwarwick@varnellandwarwick.com*
*jvarnell@varnellandwarwick.com*
*mpeterson@varnellandwarwick.com*
*ewillis@varnellandwarwick.com*
*awallace@varnellandwarwick.com*
*kstroly@varnellandwarwick.com*

Stephanie Glaberson (Admitted *Pro Hac Vice*)
**PUBLIC JUSTICE, P.C.**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
*sglaberson@publicjustice.net*

**Attorneys for Plaintiffs**

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 5th day of February, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Brian W. Warwick

**BRIAN W. WARWICK**
