# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

MAX STORY, *et al.*, *on behalf of themselves and all others similarly situated*,

              Plaintiffs,

v.

HEARTLAND PAYMENT SYSTEMS, LLC,

              Defendant.

Civil Action No. 3:19-cv-724-TJC-JBT

REDACTED

UNREDACTED DOCUMENT SERVED ON DEFENDANT UNDER L.R. 1.11(d)

## PLAINTIFFS' MOTION TO CERTIFY CLASS

2919397.1

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND PROPOSED CLASS ........................................................1

BACKGROUND ...............................................................................................2

I.      MySchoolBucks and Program Fees...........................................................2

        A.      Heartland charged class members ███████████ in Program Fees during the class period. ........................................................2

        B.      Heartland's Terms of Service were materially false in several respects. ....................................................................................4

II.     The Credit Card Rules ...............................................................................5

LEGAL STANDARD ........................................................................................8

ARGUMENT ...................................................................................................9

I.      The class is adequately defined and clearly ascertainable. .....................9

II.     The class satisfies the four prerequisites of Rule 23(a)............................9

        A.      The class is sufficiently numerous. .................................................9

        B.      There is at least one common question that will drive resolution of this litigation. .....................................................................10

        C.      Plaintiffs' claims are typical...........................................................10

        D.      Plaintiffs and their counsel are adequate.......................................10

III.    Common questions predominate. ...........................................................11

        A.      Common issues predominate for the NJCFA claim..........................12

              1.     Unlawful conduct..................................................................12

              2.     Ascertainable loss. ...............................................................14

              3.     Causal connection. ...............................................................14

        B.      Common issues predominate for the contract claim...........................16

IV.    A class action is superior to individual lawsuits. ........................................17

V.     Heartland's arguments do not defeat class certification..............................17

        A.      Damages do not defeat class certification........................................17

**TABLE OF CONTENTS**
**(continued)**

Page

| | | |
|---|---|---|
| 1. | Damages are not offset in litigation over improper fees | 17 |
| 2. | Damages are not determined by class members' feelings. | 20 |

B.   The Court's analysis of Plaintiffs' now-superseded complaint does not defeat class certification ... 22

C.   None of Heartland's experts undermine class certification. ... 22

D.   Heartland's post-litigation arbitration clause is irrelevant. ... 24

E.   Heartland's personal jurisdiction arguments are incorrect. ... 24

CONCLUSION ... 25

2919397.1

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ...................................................................................9

*Ault v. Walt Disney World Co.*,
692 F.3d 1212 (11th Cir. 2012) ...........................................................10

*Bosland v. Warnock Dodge*,
964 A.2d 741 (N.J. 2009)............................................................... 13, 14

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013)................................................................11

*Carriuolo v. Gen. Motors. Co.*,
823 F.3d 977 (11th Cir. 2016) ....................................................... 14, 17

*Cuesta v. Classic Wheels, Inc.*,
818 A.2d 448 (N.J. App. 2003)............................................................19

*Ehret v. Uber Techs., Inc.*,
148 F. Supp. 3d 884 (N.D. Cal. 2015) ................................................24

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F. 4th 883 (11th Cir. 2023) ............................................... 9, 20, 21

*Herman v. Seaworld Parks & Ent't, Inc.*,
320 F.R.D. 271 (M.D. Fla. 2017)........................................................24

*Heyert v. Taddese*,
70 A.3d 680 (N.J. App. 2013)............................................... 12, 15, 18

*Hilburn v. N.J. Dept. of Corrections*,
No. 07-6064, 2012 WL 3133890 (D.N.J. July 31, 2012) ...................19

*In re Brinker Data Incident Litig.*,
No. 18-686, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021), *vacated in part on other grounds*, 73 F. 4th 883 (11th Cir. 2023)............................... 9, 17

*In re Checking Account Overdraft Litig.*,
694 F. Supp. 2d 1302 (S.D. Fla. 2010) ..............................................13

2919397.1

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
757 F.3d 599 (7th Cir. 2014)..................................................................20

*In re JUUL Labs, Inc. Mkt. Sales Prac. & Prods. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) ..................................................18

*In re Mercedes-Benz Tele Aid Contract Litig.*,
257 F.R.D. 46 (D.N.J. 2009) ................................................................12

*In re POM Wonderful LLC Mkt. & Sales Prac. Litig.*,
No. 10-2199, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ..............18

*Katz v. Live Nation, Inc.*,
No. 09-3740, 2010 WL 2539686 (D.N.J. June 17, 2010)............. 13, 14

*Kuehn v. Cadle Co., Inc.*,
245 F.R.D. (M.D. Fla. 2007)................................................................10

*Kugler v. Romain*,
279 A.2d 640 (N.J. 1971)......................................................................12

*Kutzin v. Pirnie*,
591 A.2d 932 (N.J. 1991)......................................................................19

*Lyttle v. Trulieve, Inc.*,
No. 19-2313, 2021 WL 3602996 (M.D. Fla. Aug. 13, 2021)..............11

*MacDonald v. Cashcall, Inc.*,
333 F.R.D. 331 (D.N.J. 2019).....................................................  passim

*Makaeff v. Trump Univ., LLC*,
309 F.R.D. 631 (S.D. Cal. 2015) .........................................................18

*Marina Dist. Dev. Co., LLC v. Ivey*,
223 F. Supp. 3d 216 (D.N.J. 2016) ......................................................17

*Marquette v. HomeAdvisor, Inc.*,
No. 20-1490, 2021 WL 2942742 (M.D. Fla. Jan. 15, 2021) ..............25

*Mercedes-Benz Credit Corp. v. Lotito*,
746 A.2d 480 (N.J. App. 2000)............................................................19

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441 (7th Cir. 2020)....................................................................24

*N.J. Thoroughbred Horsemen's Ass'n, Inc. v. Alpen House L.L.C.*,
    942 F. Supp. 2d 497 (D.N.J. 2013) .........................................................21

*Rivera v. Equifax Info. Servs., LLC*,
    341 F.R.D. 328 (N.D. Ga. 2022)..............................................................19

*Sacred Heart Health Sys., Inc. v. Humana Military Heathcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010) ...............................................................16

*Siqueiros v. Gen. Motors LLC*,
    No. 16-7244, 2023 WL 3919462 (N.D. Cal. June 8, 2023)......................21

*Skinner v. Switzer*,
    562 U.S. 521 (2011)..................................................................................22

*Story v. Heartland Payment Sys., LLC*,
    461 F. Supp. 3d 1216 (M.D. Fla. 2020)................................... 14, 16, 22

*Tershakovec v. Ford Motor Co., Inc.*,
    79 F. 4th 1299 (11th Cir. 2023) ...............................................................11

*Totaro, Duffy, Cannova & Co., LLC v. Lane, Middleton & Co., LLC*,
    921 A.2d 1100 (N.J. 2007)........................................................................21

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .................................................................................11

*Valley Drug Co. v. Geneva Pharms., Inc.*,
    350 F.3d 1181 (11th Cir. 2003) ...............................................................11

*Vogt v. State Farm Ins. Co.*,
    963 F.3d 753 (8th Cir. 2020)....................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................10

*Zall v. Standard Ins. Co.*,
    58 F. 4th 284 (7th Cir. 2023) ..................................................................22

2919397.1

## TABLE OF AUTHORITIES
### (continued)

Page

**Statutes**

N.J. Stat. § 56 ........................................................................................................... 12

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ 8, 9, 10, 19

2919397.1

## <u>INTRODUCTION AND PROPOSED CLASS</u>

This is a class action on behalf of parents who paid "Program Fees" to Defendant Heartland Payments Systems through its "MySchoolBucks Program." Plaintiffs assert that (1) the Program Fees violate the New Jersey Consumer Fraud Act (NJCFA) because they are impermissible fees under the binding rules issued by the major card networks; and (2) Heartland breached its contracts with the parents because Heartland promised the Program Fees would go to the schools, but kept the Fees for itself.

Heartland disagrees: on its telling, the Fees do not violate the network rules or Heartland's contractual commitments. This is a fundamental dispute between the Parties, to be sure, but it is a binary one. The contracts are materially identical. The conduct was uniform to all class members. The at-issue credit card rules are the same for all. Neither party's liability experts raise *any* individual issues. Heartland violated the New Jersey Consumer Fraud Act (NJCFA) or its contractual commitments for all proposed class members or none.

Damages are common too: under either claim, Plaintiffs seek refund of the improper Fees minus, if necessary, reasonable estimates of the interchange fees Heartland paid to credit companies. To the extent that Heartland may seek a further offset, it has never tried to make that showing (and there is no reason to think any belated attempts to do so would raise significant individual issues).

Accordingly, Plaintiffs respectfully ask the Court to certify NJCFA and breach of contract claims under Rule 23(b)(3) for the following class:

> All natural persons who enrolled in MySchoolBucks, and paid fees to Heartland on credit or debit card transactions between June 18, 2013 and July 31, 2019.

Plaintiffs further ask the Court to appoint Max Story and Nancy Murrey-Settle as class representatives; Jason L. Lichtman, Janet Varnell, Brian Warwick, and Andrew R. Kaufman as class counsel; and Kenneth S. Byrd as lead trial counsel.

## **BACKGROUND**

### I.   **MySchoolBucks and Program Fees**

MySchoolBucks (MSB) is a "stored value program" (similar to a gift card) developed by Heartland and sold to school districts. Ex. 1 (Webster Rpt.) ¶¶16, 29. When a school district participates in MSB, Heartland provides an online portal that allows parents in that school district to enroll in the program and load (and reload) value into an individual account. *Id.* ¶ 34. Students can then use the money in the account to purchase goods (e.g., lunch) from the school. *Id.* ¶ 16.

### A.   **Heartland charged class members ▮▮▮▮▮▮▮ in Program Fees during the class period.**

Heartland charges parents a fee each time they load money into their MSB accounts through the MSB portal.[1] During the class period, the fee rose from $ ▮▮▮

---

[1] The payment model at issue here is one in which Heartland charges the transaction fees to the parents. Ex. 2 (Loch Dep.) at 61:15-19; 46:4-24; Ex. 1 (Webster Rpt.) ¶ 35.

to $████. Ex. 3 (30(b)(6) Dep.) at 224:14-24; 301:24-302:12.[2] Heartland ████ each

transaction, typically at $████████████████. Ex. 4 (Schunk Dep.)

at 181:8-22; Ex. 2 (Loch Dep.) at 237:20-23. ███████████████

████. Ex. 5 (Roberts Dep.) at 23:12-24:25; Ex. 4 (Schunk Dep.) at 108-111.

Parent-paid fees totaled $████████ during the class period. Ex. 6 (HPS1-85).

Heartland utilized standard Terms of Service Agreements (TOS) to govern

the relationship between itself and parents using MSB. Exs. 7-10 (HPS336, 346,

360, 367). As one of Heartland's experts concedes, the material terms in the TOS

████████████████████. *See* Ex. 11 (Amir Rpt.) ¶13. The TOS

described the transaction fees as "Program Fees" or "Membership Fees":

> **Program Fee or Membership Fee**
> Your school district may require a program fee or membership fee for your use of the Service.
> If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service. ….

Ex. 10 (HPS367) at 371.[3] Further:

> **Payments to Schools**
> You may make payments to your child's school account by using a credit card. Your credit card provider may have imposed a maximum amount which can be placed on your credit card. Your child's school receives the full payment.

---

[2] Heartland charges a ████████████ in ████████ of districts. Such variations implicate only formulaic damages calculations and are not relevant to class certification.
[3] Before 2014, Heartland used the term "Service Fee." Ex. 12 (HPS8730) at 8732, Ex. 13 (HPS341) at 343.

- 3 -

*Id.* at 370.

**B.**  **Heartland's Terms of Service were materially false in several respects.**

Several material statements in the TOS were false. The "school district" did not "require" the Program Fee; ████████. Ex. 2 (Loch Dep.) at 61:15-19. The "credit card provider" did not cap deposits; ████████████████

████████████████. Ex. 4 (Schunk Dep.) at 181:8-22; Ex. 1 (Webster Rpt.)

¶¶ 73-74. And the "school" did not "receive[] the full payment;" ████████

████████████. *Id.* at ¶56.

These misrepresentations were calculated and significant. For example, for years Heartland's representatives routinely told parents ████████████

████████████████████████. Ex. 14 (Orliss Ex. 13) at 4; Ex. 4 (Schunk Dep.) at 308:8-24; Ex.15 (HPS 29864). This problem was so pervasive that ████████████████████████

████████████████████████████.

*Id.* Nevertheless, ████████████████████████

████████████████████████

████████████. Ex. 16 (HPS43853 at 56) (████████████

████████████); Ex. 17 (Loch Ex. 75) at 2 (████████

████████████████████████



)[4]

*Id.*; Ex. 19 (Orliss Dep.) 184:22-185:2; s*ee also* Ex. 20 (Miceli Dep.) at 202:21-204:5

).

As the pressure built, Heartland made other attempts to ███████████ ███████████. For example, ███████████ ███████████ ███████████ Ex. 14 (Orliss Ex. 13) at 1. And, when presented with complaints about the transaction cap, Heartland ███████████ ███████████ ███████ Ex. 21 (HPS5532).

## II.   <u>The Credit Card Rules</u>

The major card networks set forth rules applicable to merchants accepting credit or debit cards. These rules are in place in part to protect consumers from

---

[4] *See also, e.g.*, Ex. 18 (HPS157840) at Row 54 (MSB Inquiry: ███████████ )

2919397.1

predatory fees. Ex. 22 (Webster Rebuttal) ¶36. Under the rules, merchants are permitted to charge only certain types of transaction fees. *Id.* ¶ 7; *see also* Ex. 1 (Webster Rpt.) at App E (MC Rules § 5.11.2 and § Visa Rules 5.5). If Heartland's Program Fees do not qualify as one of the permitted fees, they are impermissible.

In deposition, Heartland's corporate representative claimed that the Program Fee is ███████████████████████████████████ Ex. 3 (30(b)(6) Dep.) at 271:9-15. Internally, Heartland's Director of Payments emphasized that "███████████████████████████████████ ████████████████████████." Ex. 23 (HPS24795) at 24796. This approach was reflective of Heartland's attitude generally: ████████ ████████████████████████████████████ ████████████████████████████████████████ ██████████████████." Ex. 24 (HPS142223).

For this litigation, Heartland's expert maintains that the Program Fee is "████████████████████████████████████." Ex. 25 (Moran Rpt.) ¶ 64.[5] A convenience fee "is a charge passed on to customers for the privilege of paying for a product or service using an alternative payment method that is not

---

[5] Moran's opinion is unclear. At deposition, he disclaimed ██████████████████ ██████████████████████ and instead opined that ████████████████████████████ Ex. 26 (Moran Dep.) at 23:21-26:16; *id.* at 184:16-25 (████████████████████████).

standard for a business." Ex. 1 (Webster Rpt.) ¶¶ 20, 65. But the Program Fees do not comply with many of the requirements applicable to convenience fees; accordingly, they are not permissible under the rules.[6] For example, the Program Fees are inconsistent with the following Visa requirements:

**Not for an alternative payment channel**. The rules permit convenience fees only "for a bona fide convenience in the form of an alternative payment channel outside the Merchant's customary payment channels." Ex. 1 (Webster Rpt.) at App'x E § 5.5.2.1. Here, the MSB portal *is* ███████████████████ ████████████████. *Id.* ¶¶ 46-48; Ex. 22 (Webster Rebuttal) ¶ 9(a); *see also* Ex. 5 (Roberts Dep.) at 53:7-16 ████████████████████████████ █████████████████); Ex. 4 (Schunk Dep.) at 147:18-19 (███████████ ████████████████████████████████); Ex. 29 (HPS3716) at 10 (████████████████████████).

**No clear disclosure**. Convenience fees must be "disclosed clearly" as a "charge for the alternative payment channel convenience." Ex. 1 (Webster Rpt.) at App'x E § 5.5.2.1. Here, instead of disclosing the transaction fees as a charge for

---

[6] Consumer reliance and knowledge are not elements of either of Plaintiffs' claims, so evidence of those facts is not relevant to class certification. Out of an abundance of caution, however, Plaintiffs note that there is significant evidence that Heartland's fee practices mislead consumers. *See, e.g.*, Ex. 27 (Miceli Ex. 47) at 146065 ███████████████████████████ ████████████████████████); Ex. 14 (HPS24786) at 24788 (████████ ████████████████████████████████████████).

an alternative payment channel, Heartland labeled the fees "Program Fees" required by the school.[7] This is impermissible. Ex. 22 (Webster Rebuttal) ¶ 9(b).

**Cap on transaction size.** The rules preclude merchants from capping the size of a transaction (and therefore forcing consumers to pay multiple fees). *Id.* ¶ 9(e). Heartland, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ imposed a transaction cap. *Id.*

**Applied to recurring transactions.** The rules prohibit convenience fees from being charged on recurring transactions, Ex. 1 (Webster Rpt.) at App'x E § 5.5.2.1, but Heartland ▆▆▆▆▆. Ex. 22 (Webster Rebuttal) ¶ 9(d).

Plaintiffs' expert Mark Webster explains why the Program Fees also violate the MasterCard rules. *Id.* ¶¶ 10-19.

## <u>LEGAL STANDARD</u>

Plaintiffs must prove that a proposed class meets the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. A class action must also meet one of the three requirements of Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate . . . and that a class action is

---

[7] In 2016, Heartland added a text box that appears if the user happens to hover their pointer over a question mark. Ex. 30 (HPS24820). The text box reads: "The Program Fee includes costs associated with the MySchoolBucks program, including payment processing, information security, and support." Ex. 31 (HPS166626) at 166628. It does not clearly disclose the fee as a charge for the alternative payment channel convenience.

- 8 -

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The "office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'method' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 560 (2013) (quoting Fed. R. Civ. P. 23(b)(3)). Accordingly, "merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F. 4th 883, 888 (11th Cir. 2023) (quoting *Amgen*, 568 U.S. at 466).

## ARGUMENT

### I.   The class is adequately defined and clearly ascertainable.

The class "membership is capable of determination" because class members are all identified in Heartland's own database. *In re Brinker Data Incident Litig.*, No. 18-686, 2021 WL 1405508, at *6 (M.D. Fla. Apr. 14, 2021), *vacated in part on other grounds*, 73 F. 4th 883 (11th Cir. 2023).

### II.   The class satisfies the four prerequisites of Rule 23(a).

#### A.   The class is sufficiently numerous.

Rule 23(a)(1) requires a class be "so numerous that joinder of all members is impracticable." Here, parents from more than ▮▮▮ schools paid Program Fees

within the class period. Ex. 6 (HPS1-85). There should be no dispute about

numerosity. *See Kuehn v. Cadle Co., Inc.*, 245 F.R.D. 545, 548 (M.D. Fla. 2007).

**B.     There is at least one common question that will drive resolution of this litigation.**

A common question is one "capable of classwide resolution" such that a

"determination of its truth or falsity will resolve an issue that is central to the

validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338, 350 (2011). Even "a single common question will do." *Id.* at 359

(citation and alteration omitted). Plaintiffs' claims raise significant common

questions in droves, for example, whether the Program Fees were permitted by the

credit card rules, and whether Heartland had a contractual obligation to remit

Program Fees to the schools.

**C.     Plaintiffs' claims are typical.**

Typicality is satisfied "if the claims or defenses of the class and the class

representative arise from the same event or pattern or practice and are based on the

same legal theory." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir.

2012) (citation omitted). Here, they do and are: Plaintiffs paid Program Fees like

every other class member. Story Decl. at ¶ 7; Murrey-Settle Decl. at ¶¶ 6–8.

**D.     Plaintiffs and their counsel are adequate.**

The adequacy inquiry asks "(1) whether any substantial conflicts of interest

exist between the representatives and the class; and (2) whether the representatives

will adequately prosecute the action." *Lyttle v. Trulieve, Inc.*, No. 19-2313, 2021 WL 3602996, at * (M.D. Fla. Aug. 13, 2021) (citation omitted). Here, there are no conflicts, and the representatives and their counsel will adequately prosecute the action. Lichtman Decl. at ¶¶ 4–16; Varnell Decl. at ¶¶ 2–9; Story Decl. at ¶¶ 13–15 (attesting to no conflicts); Murrey-Settle Decl. at ¶¶ 9–11 (same).

### III.   <u>Common questions predominate.</u>

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted); *see also, e.g.*, *Tershakovec v. Ford Motor Co., Inc.*, 79 F. 4th 1299, 1306 (11th Cir. 2023). Predominance is not "determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). Rather, "[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453 (citation omitted).

### A.    Common issues predominate for the NJCFA claim.

Under the NJCFA, "Plaintiffs must show (1) unlawful conduct by

Defendant[]; (2) an ascertainable loss []; and (3) a causal connection between the

two." *MacDonald v. Cashcall, Inc.*, 333 F.R.D. 331, 350-51 (D.N.J. 2019).

### 1.    Unlawful conduct.

The first element is common because it concerns only Heartland's conduct.

*See, e.g.*, *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 73 (D.N.J.

2009) ("[T]he issues for trial relating to the first [NJCFA] element . . . turn on the

knowledge and actions of the company rather than those of the individual class

members, and are therefore common to the class.").

Unlawful conduct is not limited to "misrepresentation[s]" or "omissions,"

but "includes any 'unconscionable commercial practice.'" *Cashcall*, 33 F.R.D. at

351 (quoting N.J. Stat. § 56:8-2). The prohibition on unconscionable conduct is

"obviously designed to establish a broad business ethic," and contemplates a

"standard of conduct" of "good faith, honesty in fact and observance of fair

dealing." *Kugler v. Romain*, 279 A.2d 640, 651-52 (N.J. 1971).

Courts regularly recognize that the charging of non-permitted fees and

amounts can constitute an "unconscionable commercial practice" under the

NJCFA. *See Cashcall*, 333 F.R.D. at 350-51 (usurious interest); *Heyert v. Taddese*,

70 A.3d 680, 696 (N.J. App. 2013) (rent in excess of rent control); *Katz v. Live*

- 12 -

*Nation, Inc.*, No. 09-3740, 2010 WL 2539686, at *6 (D.N.J. June 17, 2010)

(concert fees); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302,

1326 (S.D. Fla. 2010) (overdraft fees); *see also Bosland v. Warnock Dodge*, 964

A.2d 741, 749-50 (N.J. 2009) (auto fees, albeit under the regulatory violation

prong rather than the unconscionable practice prong).

Here, Plaintiffs allege that the Fees were an unconscionable commercial

practice because they violated the governing network rules. Heartland disagrees: In

its view, it is not a "merchant" bound by the rules, ███████████████████

██████ Ex. 25 (Moran Rpt.) ¶ 54. *But see* Ex. 1 (Webster Rpt.) ¶¶ 50-64

(explaining why Heartland qualifies as a merchant); Ex. 22 (Webster Rebuttal)

¶¶ 27-34 (same).[8] Alternatively, Heartland says that its conduct should not be

████████████████████████████████████████████████████████

█████████████████████████ Ex. 25 (Moran Rpt.) ¶¶ 20, 57.

These defenses are not material to this motion: whether Heartland is subject to the

rules and what the rules require are binary questions common to the class.

---

[8] This dispute is not dispositive on the ultimate merits. Even if Heartland is not the merchant, Heartland's Fees violate the rules. Ex. 1 (Webster Rpt.) ¶¶ 60-62. Heartland ████████████ ███████████, *id.*, ████████████████████████████████████████, Ex. 26 (Moran Dep.) at 197:25-198:9, ████████████████████████████████████████████ ████████████████████████████," Ex. 25 (Moran Rpt.) ¶ 41.

2919397.1

### 2.     **Ascertainable loss.**

The second element—ascertainable loss—is common to the class, excepting

rote accounting work. *See, e.g.*, *Carriuolo v. Gen. Motors. Co.*, 823 F.3d 977, 988

(11th Cir. 2016) ("[I]ndividualized damages calculations are insufficient to

foreclose the possibility of class certification."). This element requires only that the

alleged loss be "quantifiable or measurable." *Bosland*, 964 A.2d at 750 (citation

omitted); *see also Story v. Heartland Payment Sys., LLC*, 461 F. Supp. 3d 1216,

1227 (M.D. Fla. 2020) (claims of "entitlement to a refund of the program fees

Heartland collected" satisfied "ascertainable loss" element). This question is

common: all paid the allegedly unlawful fees. The amounts paid differ only as a

matter of rote calculation, which does not defeat class certification. *See, e.g.*,

*Carriuolo v. Gen. Motors. Co.*, 823 F.3d 977, 988 (11th Cir. 2016) ("[I]ndividual

damages calculations are insufficient to foreclose the possibility of class

certification.").

### 3.     **Causal connection.**

Plaintiffs' causation theory is simple and common to the class: the network

rules prohibited Heartland from charging Program Fees in the manner it did; as a

result, Plaintiffs paid prohibited, improper, illegal fees. This is exactly the

causation found sufficient in other "improper fee" cases under the NJCFA. *See*

*Katz*, 2010 WL 2539686, at *6 ("[T]he Complaint adequately alleges both

2919397.1

ascertainable loss—the payment of allegedly improper fees—and that this loss was allegedly caused by Defendants as a result of their assessment of improper fees on purchasers of tickets."); *Heyert*, 70 A.3d at 700 ("The landlords' overcharge caused the tenants to lose money every month that they paid the illegal rent."); *Cashcall*, 333 F.R.D. at 352 ("Plaintiffs have therefore shown that they can use common evidence to prove their CFA claims ... the nearly identical, allegedly usurious loan agreements, which caused an out of pocket loss in the form of usurious interest.").

Based on its expert submissions, Heartland appears set to argue that, to show causation, Plaintiffs must establish that the unlawful conduct affected whether parents chose to use the MSB platform. This argument—"that Plaintiffs must show not only that defendants acted in a uniform manner, but also that plaintiffs responded in a sufficiently uniform fashion"—"misunderstands Plaintiffs' theories under the CFA." *Cashcall*, 333 F.R.D. at 352. How "class members reacted to the truth, if knowable" is relevant only where an NJCFA claim is "based on a misrepresentation or omission." *Id.* Where, as here, Plaintiffs' claims are "not premised on a misrepresentation or omission, but rather on the affirmative act of charging [improper fees]," how class members responded is "inapposite." *Id.*

**B.** __Common issues predominate for the contract claim.__

To prevail on their contract claim, Plaintiffs must show "(1) the parties entered into a valid contract; (2) the defendant failed to perform its obligations under the contract; and (3) the plaintiffs sustained damages as a result." *Story*, 461 F. Supp. 3d at 1228 (citation omitted).

The first two elements are common to the class. The TOS did not vary materially over time. *See* Ex. 11 (Amir Rpt.) ¶ 13 (███████████████████ ████████████████████████████████████████████████ ████████████████████████████). The TOS were valid contracts, or not, and required Heartland to remit the Program Fees to the schools, or it did not. *See Sacred Heart Health Sys., Inc. v. Humana Military Heathcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) (explaining that breach-of-contract claims are generally certified where the relevant terms are identical or materially similar). As with the NJCFA claim, Heartland's conduct was the same as to all class members.

Common questions predominate for damages, too. There are three remedies available for breach of contract in New Jersey: "restitution, compensatory damages, and performance." *Totaro*, 921 A.2d at 1107 (citation omitted). While "[c]ompensatory damages put the innocent party into the position he or she would have achieved had the contract been completed," "[r]estitution returns the innocent party to the condition he or she occupied before the contract was executed." *Id.*

Here, Plaintiffs seek restitution: refund of the Program Fees. *See, e.g.*, *Marina Dist. Dev. Co., LLC v. Ivey*, 223 F. Supp. 3d 216, 218-19 (D.N.J. 2016) (applying restitution of gambling winnings where defendant breached a contractual obligation to play casino game in compliance with regulations, and the plaintiff's alternative theory of "expectation damages" was "too speculative"). The measure is consistent with Plaintiffs' theory of liability and is applicable class-wide.

## IV.  A class action is superior to individual lawsuits.

Rule 23(b)(3) provides four factors pertinent to superiority. *Brinker*, 2021 WL 1405508, at *13. In addition, superiority is easier to find where claims are low-value. *See Carriuolo*, 823 F.3d at 989. Here, a class action is superior because "significant litigation has proceeded, and allowing class members to bring claims as one class will provide an efficient method of adjudication while continuing to move along this [four]-year-old case." *Brinker*, 2021 WL 1405508, at *13.

## V.  Heartland's arguments do not defeat class certification.

Heartland has indicated that it intends to make several arguments in opposition to class certification. None alter the above analysis.

### A.  Damages do not defeat class certification.

#### 1.  Damages are not offset in litigation over improper fees.

Heartland's primary argument against class certification appears to be that a refund of the improper fees would be a " ███████████████████████████████ ████████████████████████████. Ex. 32 (Chakraborty Rpt.) ¶ 23.

- 17 -

Heartland is wrong: in wrongful-fee cases like this one, courts do not ask how much the plaintiffs benefited from services connected to the wrongful fee.

The facts here are similar to those of *Cashcall*, 333 F.R.D. at 350-52. The NJCFA plaintiffs in that case argued that defendants had charged them an improper (usurious) fee in connection with servicing their loans. *Id*. The Court found that those plaintiffs were entitled to seek the full wrongful fee and did not need to discount their recovery by the value they received from defendant's servicing of their loans. *Cashcall*, 333 F.R.D. at 350-52 ("Plaintiff can demonstrate that the affirmative act of charging usurious interest caused an ascertainable loss in the form of interest payments"). The same was true for NJCFA plaintiffs alleging they paid an improper fee in connection with their rent: those plaintiffs did not need to account for the fact that they received nicer apartments, *Heyert*, 70 A.3d at 699 ("[T]he tenants' loss was the difference between the amount they actually paid in rent and the amount allowed by the rent control ordinance.").[9]

---

[9] Heartland may rely on cases denying class certification where a plaintiff's "full refund model" failed to account for the value of the product received. *E.g.*, *In re POM Wonderful LLC Mkt. & Sales Prac. Litig.*, No. 10-2199, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014). Those cases involved allegations that something was wrong with the product, not, as here, allegations that the transaction itself was invalid. *See, e.g.*, *In re JUUL Labs, Inc. Mkt. Sales Prac. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 976 (N.D. Cal. 2022) ("allegedly inherently unfair or illegal sales"); *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 638 (S.D. Cal. 2015) (Refunds are appropriate where "the fraud was in the selling … not in the value of the thing sold"). Those were, moreover, California-law cases. As confirmed by cases like *Cashcall*, refunds are the right measure here under New Jersey law.

Even if any offset were appropriate, it would be Heartland's burden to prove one. *See Mercedes-Benz Credit Corp. v. Lotito*, 746 A.2d 480, 490 (N.J. App. 2000) ("[The plaintiff] should be viewed as having satisfied that burden by proving what he had paid. The burden of proving the claimed offset for the value of use fairly belongs on the party in breach in these circumstances."); *Hilburn v. N.J. Dept. of Corrections*, No. 07-6064, 2012 WL 3133890, at *27 (D.N.J. July 31, 2012) ("The defendant typically bears the burden of proving that an offset to damages is appropriate.").[10]

In any event, there is no reason to think that such calculations would present significant individual issues. *See, e.g.*, *Rivera v. Equifax Info. Servs., LLC*, 341 F.R.D. 328, 345 (N.D. Ga. 2022) ("[C]ourts should not allow … speculation and surmise to tip the decisional scales against class certification.") (internal quotation marks omitted). Any "value" provided by MSB is a matter of objective, economic calculation. For example, if Heartland demonstrated that damages should be offset by the "interchange fees" that Heartland paid to credit card companies, it would take only basic, class-wide accounting to prove such offsets.[11] *See, e.g., Green-*

---

[10] *See also Kutzin v. Pirnie*, 591 A.2d 932, 941 (N.J. 1991) (assigning to liable party the burden of proving off-setting benefit conferred on plaintiff, and explaining that "one who charges an unjust enrichment has the burden of proving it"); *Cuesta v. Classic Wheels, Inc.*, 818 A.2d 448, 454 (N.J. App. 2003) (A defendant "is in the business of selling" a product and so "is in a far better position to submit evidence on the value of the use of" it.). (citation omitted).

[11] Indeed, Heartland has already produced most if not all of the necessary interchange fee information. *See, e.g.*, Ex. 33 (Starr 5/17/23 Ltr.) at 2.

*Cooper*, 73 F. 4th at 893-94 (affirming class certification where plaintiff provided "a common methodology for calculating damages … based on averages"); *cf.* Doc. 178 (stipulation that Heartland will produce additional damages information after class certification, and that experts "may create or update calculations").

### 2.  Damages are not determined by class members' feelings.

Heartland's damages expert (Dr. Chakraborty) argues that damages must account ████████████████████████████████████████████, Ex. 32 (Chakraborty Rpt.) ¶ 23, such as ████████████████████ ████████, *see* Ex. 34 (Chakraborty Dep.) at 102:21-104:12; Ex. 32 (Chakraborty Rpt.) § V.B.2. Dr. Chakraborty analogies, for example, to █████████ ████████████████████████████████████████████ ████████████████. Ex. 34 (Chakraborty Dep.) at 102:21-104:12.[12]

Dr. Chakraborty is wrong. Economic damages in consumer litigation have nothing to do with a plaintiffs' feelings. *See, e.g.*, *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 601-02 (7th Cir. 2014) (Easterbrook, J.) (rejecting the proposition that "the inevitable differences in consumers' experiences with [a product] prevent class certification"). Courts have rejected the contrary argument repeatedly; i.e., that economic damages "depend[] on … each

---

[12] She further claims that ████████████████████████████████████ ██████████████████████" Ex. 34 (Chakraborty Dep.) at 51:2-19.

- 20 -

consumer's subjective expectations." *Siqueiros v. Gen. Motors LLC*, No. 16-7244, 2023 WL 3919462, at \*34 (N.D. Cal. June 8, 2023). Indeed, Plaintiffs are not familiar with *any* New Jersey case measuring economic damages (as opposed to claims for, e.g., emotional distress) with reference to one's subjective happiness or denying recovery because a plaintiff failed to account for intangible benefits.

*Vogt v. State Farm Ins. Co.* is instructive. 963 F.3d 753 (8th Cir. 2020). There, the Eighth Circuit affirmed a class damages verdict arising from improper fees charged on whole life insurance policies. *Id.* The defendant argued that the damages model was insufficient to support the class judgment because it failed to account for beneficiaries who passed away and so received their full benefits despite the improper fees. *Id.* at 770. The court disagreed:

> [W]e see no reason to limit damages merely because death benefits have been paid for a policyholder; that policyholder still suffered a depleted account value during his lifetime due to State Farm's overcharges of COI fees. Vogt's damages models, which measure the lost account value for all policyholders during the period in which they held the policies, provide the most reasonable basis for measuring the harm that was incurred during the life of the policyholders.

*Id.* The same reasoning applies here.[13]

---

[13] Under New Jersey law, Plaintiffs need only calculate a "fair and reasonable estimate" of damages; accounting for even every possible *tangible* benefit is not required, much less intangible ones. *Totaro, Duffy, Cannova & Co., LLC v. Lane, Middleton & Co., LLC*, 921 A.2d 1100, 1108 (N.J. 2007) (citation omitted); *see also, e.g.*, *N.J. Thoroughbred Horsemen's Ass'n, Inc. v. Alpen House L.L.C.*, 942 F. Supp. 2d 497, 508 (D.N.J. 2013) ("[T]he fact that a plaintiff may not be able to fix its damages with precision will not preclude recovery of damages.") (citation omitted). And Rule 23 requires nothing more. *See Green-Cooper*, 73 F. 4th at 893 (Rule 23 requires only that a damages model be consistent with the class-wide liability theory).

**B.** __The Court's analysis of Plaintiffs' now-superseded complaint does not defeat class certification.__

Heartland may oppose class certification by citing this Court's discussion of causation in *Story*, 461 F. Supp. 3d at 1227-28, concerning a complaint that has since been superseded, *see, e.g.*, Doc. 117 at ¶ 31. The Court's analysis there was based on an understanding of Plaintiffs' claim as based on affirmative misrepresentations. *Id.* Now, with discovery, Plaintiffs have sharpened their legal theory to ground on Heartland's "unconscionable commercial practice[s]." *See Cashcall*, 33 F.R.D. at 351 ("[T]he CFA does not require proof that . . . the unlawful practice played a substantial part in his or her decisionmaking."). Out of an abundance of caution, however, Plaintiffs note that "a complaint need not pin plaintiff's claim for relief to a precise legal theory," *Skinner v. Switzer*, 562 U.S. 521, 530 (2011); *see also Zall v. Standard Ins. Co.*, 58 F. 4th 284, 295 (7th Cir. 2023) (holding that when "a complaint does present legal theories, those theories may later be altered or refined").

**C.** __None of Heartland's experts undermine class certification.__

Heartland served reports from three experts. None offer opinions that weigh against class certification. **Patrick Moran** opines that Heartland is not a "merchant" within the meaning of the credit card rules and ██████████████ ████████████████████████████████████." Ex. 25 (Moran Rpt.) ¶ 20. These opinions support merit defenses that are common to the class.

**Maureen Chakraborty** opines that Plaintiffs cannot prove damages because they must show that class members "███████████████████████ ████████████████████████████████ and ███ ████████████████████████████████." Ex. 32 (Chakraborty Rpt.) §§ V.B.1 &. 2. As discussed above, this is simply wrong: Dr. Chakraborty assumed incorrectly that Plaintiffs' NJCFA claims were about only "███████████████████." Ex. 34 (Chakraborty Dep.) at 8:24-9:21, 121:7-22, 158:4-18. Given that this assumption "misunderstand[s] Plaintiffs' theories under the CFA," her opinions are irrelevant. *Cashcall*, 333 F.R.D. at 352.

Finally, **Professor On Amir** conducted a consumer survey ████████ ████████████████████████████████████████ ████████████████████████████████████ ███████████████████." Ex. 11 (Amir Rpt.) ¶ 14. This survey is evidence common to the class. It is also █████████████████████ ███, *see* Ex. 35 (Chorn Rebuttal)—and completely untethered from the issues in the case because it says nothing at all about Heartland's compliance with the credit card rules. The question On Amir claims to answer is how "███████████████

██████████," the very question New Jersey courts explain is entirely irrelevant to Plaintiffs' claims. *Cashcall*, 333 F.R.D. at 352.[14]

### D.     Heartland's post-litigation arbitration clause is irrelevant.

Heartland may argue that its belatedly-imposed arbitration bars class certification. It does not. Whether Heartland may enforce its clause is a common issue, and determining whether any given class member electronically accepted a version of the TOS that include the clause is easily ascertained from Heartland's records (which show that ~█% did not). Ex. 36 (HPS3696). Courts regularly certify classes where the defendant argues some class members are subject to arbitration. *See, e.g.*, *Herman v. Seaworld Parks & Ent't, Inc.*, 320 F.R.D. 271, 288-89 (M.D. Fla. 2017) (arbitration "not properly before the Court").

### E.     Heartland's personal jurisdiction arguments are incorrect.

Heartland has suggested that the Court lacks personal jurisdiction regarding the claims of non-Florida class members. This is incorrect. As then-Judge Barrett explained, absent class members need not establish personal jurisdiction. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447-49 (7th Cir. 2020). While the Eleventh Circuit has not yet addressed this issue, every other circuit to have done so, as well as many district court decisions in this Circuit, has reached the same result. *See, e.g.*,

---

[14] *Cashcall* considered only a claim under the NJCFA, but there is no reason to think this logic does not apply with equal force to a claim for breach of contract.

*Marquette v. HomeAdvisor, Inc.*, No. 20-1490, 2021 WL 2942742, at *4 (M.D. Fla. Jan. 15, 2021) (collecting cases).

## CONCLUSION

Plaintiffs request that the Court (1) certify the class; (2) appoint proposed class counsel and representatives and (3) direct the parties to submit a class notice plan within 30 days of its order.

January 4, 2024          */s/ Jason L. Lichtman*

                     Jason L. Lichtman
                     LIEFF CABRASER HEIMANN &
                     BERNSTEIN LLP
                     250 Hudson Street, 8th Floor
                     New York, NY 10013-1413
                     Telephone: 212.355.9500
                     Facsimile: 212.355.9592
                     jlichtman@lchb.com

                     Reilly T. Stoler
                     Jacob H. Polin
                     LIEFF CABRASER HEIMANN &
                     BERNSTEIN LLP
                     275 Battery Street, 29th Floor
                     San Francisco, CA 94111-3339
                     Telephone: 415.956.1000
                     Facsimile: 415.956.1008
                     rstoler@lchb.com
                     jpolin@lchb.com

2919397.1

Kenneth S. Byrd
Andrew R. Kaufman
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
222 2nd Ave. South, Suite 1640
Nashville, Tennessee 37201-2379
Telephone: 615.313.9000
Facsimile: 615.313.9965
kbyrd@lchb.com
akaufman@lchb.com

Brian W. Warwick, FBN: 0605573
Janet R. Varnell, FBN: 0071072
VARNELL & WARWICK, P.A.
1101 E. Cumberland Ave., Suite 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

*Attorneys for Plaintiffs*

2919397.1

## <u>CERTIFICATE OF SERVICE</u>

On January 4, 2024, I caused to be electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will deliver the document to all counsel of record.

*/s/ Jacob H. Polin*

2919397.1