## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MAX STORY, *et al.*, on behalf of
themselves and all others similarly
situated,

      Plaintiffs,

      v.

HEARTLAND PAYMENT SYSTEMS,
LLC,

      Defendant.

**Civil Action No. 3:19-cv-00724-
TJC-JBT**

## DEFENDANT HEARTLAND PAYMENT SYSTEMS, LLC'S
## MOTION FOR SUMMARY JUDGMENT, STATEMENT OF
## <u>UNDISPUTED FACTS, AND MEMORANDUM OF LAW</u>

# TABLE OF CONTENTS

STATEMENT OF UNDISPUTED FACTS ............................................................ 1

I.    THE MYSCHOOLBUCKS PROGRAM ..................................................... 1

II.    PLAINTIFFS AND THEIR CLAIMS .......................................................... 2

MEMORANDUM OF LAW .......................................................................... 4

I.    SUMMARY JUDGMENT STANDARD ................................................... 6

II.    PLAINTIFFS' NJCFA CLAIM SHOULD BE DISMISSED. ..................... 6

    A.    Plaintiffs Cannot Assert Claims Under the NJCFA. ............................ 6

    B.    Alternatively, Plaintiffs Cannot Establish Unlawful Conduct ............. 10

        1.    Plaintiffs' Reliance on Credit Card Brand Rules Is
Misplaced. ............................................................................. 11

        2.    Plaintiffs' Theory Is Nothing More than a Breach of
Contract. ................................................................................ 13

        3.    Card Brand Rules Governing Fees Apply Only to
Merchants. ............................................................................. 14

    C.    Plaintiffs Fail to Demonstrate That They Suffered Ascertainable
Loss Caused by Heartland's Alleged Violations. ............................. 15

        1.    Plaintiffs Cannot Show Causation. ........................................ 16

        2.    Plaintiffs Cannot Show Ascertainable Loss. ........................... 20

            a.    Out-of-Pocket Loss Theory .......................................... 20

            b.    Loss in Value or Benefit of the Bargain ........................ 21

III.    PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS. ..................... 22

    A.    Heartland Did Not Breach Any Promise in the TOS. ........................ 22

    B.    Plaintiffs Have No Evidence of Causation. ...................................... 23

    C.    Plaintiffs Have No Evidence of Any Cognizable Injury. ................... 24

    D.    Plaintiffs Are Not Entitled to Restitution. ........................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Annecharico v. Raymour & Flanigan,*
   2016 WL 7015615 (D.N.J. Nov. 30, 2016) ........................................... 16, 20, 21

*Ardino v. Retrofitness, LLC,*
   2019 WL 2181906 (N.J. Super. Ct. May 21, 2019)......................................... 18

*Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am.,*
   2010 WL 317472 (S.D. Ga. Jan. 25, 2010).......................................................... 9

*Barrett Fin. of N. Jersey, LLC v. Creative Fin. Grp. of N.J.,*
   2019 WL 2067552 (D.N.J. May 10, 2019) ....................................................... 23

*Billings v. Am. Express Co.,*
   2011 WL 5599648 (D.N.J. Nov. 16, 2011) ...................................................... 13

*Bosland v. Warnock Dodge, Inc.*
   197 N.J. 543 (2009) ......................................................................................... 12

*Brockland v. Roundy's Illinois, LLC*
   2022 WL 17082542 (N.D. Ill. Nov. 18, 2022) ............................................ 13, 14

*Buck v. Am. Gen. Life Ins. Co.,*
   2021 WL 733809 (D.N.J. Feb. 25, 2021) ........................................................ 24

*Callen v. Daimler AG,*
   2020 WL 10090879 (N.D. Ga. June 17, 2020) .................................................. 8

*Ciser v. Nestle Waters N. Am. Inc.,*
   596 F. App'x 157 (3d Cir. 2015) ..................................................................... 12

*Cooper Lighting, LLC v. Cordelia Lighting, Inc.,*
   2017 WL 11629195 (N.D. Ga. Nov. 13, 2017).................................................. 9

*Corp. Incentives, Inc. v. Unified Safe Guard, LLC,*
   2021 WL 2043092 (D.N.J. May 21, 2021) ....................................................... 13

*Cox v. Sears Roebuck & Co.,*
   138 N.J. 2 (1994) ............................................................................................ 11

*Dias v. GeoVera Specialty Ins. Co.*,
  543 F. Supp. 3d 1282 (M.D. Fla. 2021) ........................................................... 6

*Doe v. Hobart & William Smith Colleges*,
  546 F. Supp. 3d 250 (W.D.N.Y. 2021) ........................................................... 10

*Hardy ex rel. Dowdell v. Abdul-Matin*,
  198 N.J. 95 (2009) ........................................................................................ 23

*Dugan v. TGI Fridays, Inc.*,
  231 N.J. 24 (2017) .......................................................................................... 6

*Dunn v. Citigroup Glob. Markets, Inc.*,
  2011 WL 13227804 (S.D. Fla. Mar. 10, 2011) ................................................. 8

*Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*,
  945 F. Supp. 2d 543 (D.N.J. 2013) ................................................................ 11

*Goldfarb v. Solimine*,
  245 N.J. 326 (2021) ...................................................................................... 22

*Gonzalez v. Wilshire Credit Corp.*,
  207 N.J. 557 (2011) ...................................................................................... 12

*Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*,
  341 F.3d 1292 (11th Cir. 2003) ................................................................... 6, 7

*Gumba v. LeafFilter N. of New Jersey, LLC*,
  2024 WL 378698 (D.N.J. Feb. 1, 2024) ..................................................... 20, 21

*Heyert v. Taddese*,
  70 A.3d 680 (N.J. App. 2013) ...................................................................... 12

*Hunt Const. Grp., Inc. v. Hun Sch. of Princeton*,
  2009 WL 1312591 (D.N.J. May 11, 2009) ..................................................... 13

*James River Ins. Co. v. Ultratec Special Effects, Inc.*,
  449 F. Supp. 3d 1157 (N.D. Ala. 2020) ......................................................... 10

*Katz v. Live Nation, Inc.*,
  2010 WL 2539686 (D.N.J. June 17, 2010) ..................................................... 12

*Linan-Faye Const. Co. v. Hous. Auth. of City of Camden*,
  995 F. Supp. 520 (D.N.J. 1998) .................................................................... 25

*MacDonald v. Cashcall, Inc.*,
  333 F.R.D. 331 (D.N.J. 2019) ................................................................. 11, 12

*Mann v. TD Bank, N.A.*,
  2010 WL 4226526 (D.N.J. Oct. 20, 2010) ......................................... 21

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) .................................................................. 20

*Melton v. Century Arms, Inc.*,
  243 F. Supp. 3d 1290 (S.D. Fla. 2017) ............................................... 7

*Merchants Ins. Co. of N.H. v. 3R Painting & Contracting Co.*,
  2009 WL 3030126 (D.N.J. Sept. 16, 2009) ....................................... 23

*Mladenov v. Wegmans Food Markets, Inc.*,
  124 F. Supp. 3d 360 (D.N.J. 2015) .................................................. 20, 21

*Montich v. Miele USA, Inc.*,
  849 F. Supp. 2d 439 (D.N.J. 2012) ..................................................... 9

*In re NationsRent Rental Fee Litig.*,
  2009 WL 636188 (S.D. Fla. Feb. 24, 2009) ........................................ 7

*New Jersey Citizen Action v. Schering-Plough Corp.*,
  842 A.2d 174 (N.J. App. Div. 2003) ................................................... 20

*Pierre-Charles v. Consumer Portfolio Servs., Inc.*,
  2018 WL 3425737 (D.N.J. July 16, 2018) ......................................... 11

*Portillo v. Nat'l Freight, Inc.*,
  323 F. Supp. 3d 646 (D.N.J. 2018) ..................................................... 7

*Pyott-Boone Elecs. Inc. v. IRR Tr. for Donald L. Fetterolf*,
  918 F. Supp. 2d 532 (W.D. Va. 2013) ................................................. 7

*Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc.*,
  133 F. 3d 1405 (11th Cir. 1998) .......................................................... 7

*Riverside Apartments of Cocoa, LLC v. Landmark Am. Ins. Co.*,
  505 F. Supp. 3d 1293 (M.D. Fla. 2020) ............................................ 10

*Shea v. Willard*,
  205 A.2d 74 (N.J. App. Div. 1964) ..................................................... 25

*Spade v. Select Comfort Corp.*,
    232 N.J. 504 (2018) ..................................................................... 22

*Stephens v. Tolbert*,
    471 F.3d 1173 (11th Cir. 2006)...................................................... 10

*In re Takata Airbag Prod. Liab. Litig.*,
    255 F. Supp. 3d 1241 (S.D. Fla. 2017)............................................ 8

*Thiedemann v. Mercedes-Benz USA, LLC*,
    183 N.J. 234 (2005) ..................................................................... 10

*In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*,
    2018 WL 497071 (D.N.J. Jan. 22, 2018)......................................... 19

*United States v. Four Parcels of Real Prop. in Greene &*
    *Tuscaloosa Ctys. in State of Ala.*,
    941 F.2d 1428 (11th Cir. 1991)...................................................... 17

*Visa U.S.A. Inc. v. First Data Corp.*,
    2006 WL 1310448 (N.D. Cal. May 12, 2006) ...............................5, 15

*Waldemar v. Golden*,
    2018 WL 6326206 (M.D. Fla. Dec. 4, 2018) ..................................... 7

*White v. Samsung Elecs. Am., Inc.*,
    2019 WL 8886485 (D.N.J. Aug. 21, 2019)...................................... 21

*Williams v. Mallet*,
    2023 WL 8769726 (S.D. Fla. Dec. 19, 2023)................................... 15

*Zebersky v. Bed Bath & Beyond, Inc.*,
    2006 WL 3454993 (D.N.J. Nov. 29, 2006) ..................................... 15

**Statutes**

Florida Deceptive and Unfair Trade Practices Act ......................... 7, 9, 10

Illinois Consumer Fraud Act ......................................................... 13, 14

New Jersey Consumer Fraud Act.................................................. *passim*

New Jersey Truth-in-Consumer Contract, Warranty and Notice Act .................2, 22

Federal Rule of Civil Procedure 56............................................... 1, 6, 17

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 3.01, Heartland Payment Systems, LLC ("Heartland") moves this Court for summary judgment on all remaining counts in the Third Amended Complaint (Dkt. 117, "Complaint").

## STATEMENT OF UNDISPUTED FACTS

## I.  THE MYSCHOOLBUCKS PROGRAM

MySchoolBucks ("MSB") is an optional, web-based, software-as-a-service payment platform offered by Heartland to facilitate cashless transactions for school-related purchases. Ex. A, Roberts Dep. 9:7-10:20. Among other things, MSB allows parents to make secure payments online or in-person, view their child's purchase history, and check student account balances. Ex. B, IPS proposal at -157–60. MSB also enables school districts to manage payments from a single platform, which can be integrated with district information systems, enabling accurate accounting and reconciliation. *Id.* To cover the costs of operating MSB and turn a reasonable profit, Heartland collects a "Program Fee" with each online transaction made through the MSB portal. Ex. A 18:23-17; Ex. C, Heartland 3rd Interrog. Resps. at No. 13; Ex. D, Loch Dep. 97:14-98:5. Parents also have the option of paying with cash or check, and Heartland does not charge any fees for those deposits. Ex. D 99:12-101:18.

Parents who use MSB agree to be bound by the Terms of Service ("TOS"). *See* Ex. E, 2015 TOS. From January 2015 to July 31, 2019, the TOS's "applicable law" clause provided that New Jersey law "govern[s] these [TOS]." *See* Exs. E-F, Jan. 2015 TOS & May 2018 TOS, at 8. MSB is available to parents only if their school district has decided to contract with Heartland. *See* Ex. A 9:12-21, 49:15-51:2. Historically,

school districts used cash and check to collect payments; many now use products like MSB to provide parents with a cashless option and reduce "cash handling." Ex. G, Orliss Dep. 42:5-43:6; Ex. H, Schunk Dep. 134:11-25; *see also* Ex. I, DCPS email at 1 (email from Murrey-Settle's school principal explaining why district chose to use MSB). Each district that uses MSB must enter into a merchant processing agreement ("MPA") with Heartland. *See* Ex. D 122:12-17. The MPA designates the district as the "merchant" for transactions processed through the MSB portal. *See, e.g.*, Dkt. 117-1 at 1 (Duval County Public Schools MPA); Ex. J, Samsula Academy MPA at 1, 3.

## II.   PLAINTIFFS AND THEIR CLAIMS

Plaintiffs are Florida residents who used MSB to pay for their children's school cafeteria purchases at Duval County Public Schools. *See* Dkt. 202-1 ¶¶ 2-4; Dkt. 202-2 ¶¶ 2-3. Plaintiff Max Story, a consumer protection attorney, began using MSB in 2015 and ceased using it in 2019, at which point he switched to cash. Ex. K, Story Dep. 34:10-35:23, 123:3-15; Ex. L, Story Payment History at 3. Plaintiff Nancy Murrey-Settle, a former employee of Duval County Public Schools, made only three deposits using MSB—two for $45 and one for $30—and paid a total of $5.85 in Program Fees. Ex. M, Murrey-Settle Dep. 47:2-20; Ex. N, Murrey-Settle Payment History at 3. Murrey-Settle stopped using MSB in 2016, at which point she began using cash. Ex. M 141:11-21, 143:2-18; Ex. N at 3; Compl. ¶ 63. Both Plaintiffs used Visa cards to make their MSB deposits. *See* Ex. L at 4; Ex. N at 4.

Plaintiffs assert claims under (1) the New Jersey Consumer Fraud Act ("NJCFA"), (2) the New Jersey Truth-in-Consumer Contract, Warranty and Notice

Act ("TCCWNA"), and (3) for breach of contract. *See* Compl. ¶¶ 77-122. Plaintiffs seek class certification only for their NJCFA and contract claims. *See* Dkt. 202 at 2.

Plaintiffs' NJCFA claim has long been premised on allegations that Heartland's TOS and website contained misrepresentations that misled Plaintiffs about the "true" nature of Program Fees. *See, e.g.*, Compl. ¶¶ 55, 62. Plaintiffs have abandoned that theory and now argue that "the Program Fees violate the [NJCFA] because" they are not permitted under the "rules issued by the major card networks." Dkt. 202 at 1. These "rules" are from credit card companies like Visa and Mastercard. They do not have the force of law; rather, they are private contractual agreements between the card companies and their network participants. *See* Ex. O, Moran Rpt. ¶¶ 18(a), 32; Ex. P, Webster Dep. 279:2-24. Nor do the rules grant rights to any third parties. In fact, Visa expressly states that the "Visa Rules do not . . . confer any rights, privileges, or claims of any kind as to any third parties."[1]

Each credit card company is the arbiter of its own rules and has discretion to determine if its rules have been violated. Ex. O ¶¶ 18(a), 32-33, 57. ███████████ ██████████████████████████████████████. Ex. Q, 30(b)(6) Dep. 279:5-25 (███████████████████████████████████████████); Ex. G 133:5-12 (███████████████████████████████████████████); Ex. O ¶ 60. To the contrary, the card brands are ███████████████████████████. *See* Ex. A 32:18-33:2, 61:3-62:17 (███████████████████████████); Ex. Q

---

[1] Visa Core Rules and Visa Product and Service Rules ("2023 Visa Rules"), April 15, 2023, *available at* https://usa.visa.com/content/dam/VCOM/download/about-visa/visa-rules-public.pdf, at p. 66.

259:1-262:16, 274:5-275:2 (similar, ████████████████████████████).

## MEMORANDUM OF LAW

The undisputed facts show that Plaintiffs have no viable claim. The Complaint alleges that Plaintiffs "only paid the program fees because [they] w[ere] deceived" by misrepresentations in the TOS—namely, statements that school districts, rather than Heartland, required the Program Fees. Compl. ¶¶ 55, 62. Discovery debunked those allegations. Indeed, Story testified that he used MSB for years and first saw the alleged misrepresentations shortly before contacting counsel about this lawsuit. Ex. K 130:18-131:18. After discovery disproved the Complaint's allegations, Plaintiffs called a last-second audible, asserting for the first time at class certification that their case is not based on misrepresentations at all, but on alleged violations of card brand rules.

Plaintiffs' attempt to replace alleged misrepresentations with alleged rule violations fails. Plaintiffs are Florida residents who cannot invoke the NJCFA, and in any event, no court has ever even suggested that alleged violations of card brand rules can support an NJCFA claim. Moreover, Plaintiffs' new theory is entirely divorced from Plaintiffs' actual experiences. Plaintiffs know nothing about the rules that are (now) at the center of this lawsuit. Ex. M 97:1-6 (no familiarity with credit card rules); Ex. K 57:4-17, 84:5-12 (testifying he "didn't know" about the "very tedious" Visa and Mastercard rules until counsel "walked me through that"). Plaintiffs' decisions to use MSB had nothing to do with any of the alleged rule violations. And Plaintiffs cannot articulate, let alone prove, how any of the alleged violations affected them in any way. The Court should grant summary judgment for the following reasons:

*First*, Plaintiffs' NJCFA claims fail at the outset because they are legally precluded from suing under that statute. Plaintiffs are Florida residents who used MSB in Florida to make payments at Florida schools. Every aspect of Plaintiffs' relationship with Heartland is centered in Florida. Thus, Plaintiffs must sue under Florida law, not New Jersey law, for any claim other than their TOS-based contract claim.

*Second*, Heartland's purported violation of contractual rules issued by private companies—that do not confer any rights to third parties—does not rise to the level of "unconscionability" required to establish "unlawful conduct" under the NJCFA. Plaintiffs have not identified a single case in which a court has endorsed this novel theory of liability. This Court should not be the first.

*Third*, Plaintiffs cannot show how Heartland's purported violation of card brand rules caused them "ascertainable loss." The claimed violations have no connection to Plaintiffs' decision to use MSB and pay Program Fees. And Plaintiffs' request for a full refund is not cognizable as "ascertainable loss." The only injury theories Plaintiffs can pursue under the NJCFA are an "out-of-pocket" loss theory—which permits a refund only if the product was "worthless"—or a "loss-in-value" theory, which is viable only if Plaintiffs got less than they were promised. Plaintiffs cannot make either showing.

*Fourth*, Plaintiffs' breach of contract claim must be dismissed. Heartland did not breach a "promise" in the TOS to send the "full payment" to school districts because no such promise exists. The plain language of the contract confirms that "payment" is separate from "Program Fee"—and Heartland indisputably sent Plaintiffs' schools the

deposits they made. Even if Heartland had breached a promise to send money to schools, such a breach could not have caused Plaintiffs any harm.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of establishing the nonexistence of a triable issue of fact … [then] the burden shifts to the nonmovant to show sufficient evidence of a dispute regarding an issue" on which it bears the burden of proof. *Dias v. GeoVera Specialty Ins. Co.*, 543 F. Supp. 3d 1282, 1288 (M.D. Fla. 2021).

## II. PLAINTIFFS' NJCFA CLAIM SHOULD BE DISMISSED.

Under the NJCFA, Plaintiffs must prove: (1) unlawful conduct, (2) causation, and (3) ascertainable loss. *See Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 52 (2017). Plaintiffs, who are Florida residents, cannot assert an NJCFA claim as a matter of law. Nor can they show a disputed material fact as to any of the required elements.

### A. Plaintiffs Cannot Assert Claims Under the NJCFA.

Plaintiffs are Florida residents who cannot seek recovery under the NJCFA. The applicable law clause in the TOS from January 2015 to July 2019 states "that the laws of … New Jersey *will govern these Terms of Use*." Exs. E-F at 8 (emphasis added). Such narrow language means only that the contract "is to be construed in accordance with the laws of the State of [New Jersey]." *See Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300-01 (11th Cir. 2003) (similar choice-of-law clause called for application of Delaware law to construe the agreement but not to substantive

claims). Only if the clause "refer[red] to related tort claims or to any and all claims or disputes arising out of . . . the relationship of the parties" could it even arguably allow Plaintiffs to sue under a New Jersey statute. *Id.*[2]

The Court must therefore apply the forum state's choice-of-law rules. Florida uses the "most significant relationship" test to decide which laws apply to "deceptive trade practice" claims. *Green Leaf*, 341 F.3d at 1301*; In re NationsRent Rental Fee Litig.*, 2009 WL 636188, at *5 (S.D. Fla. Feb. 24, 2009).[3] That test requires application of the "law of the state which . . . has the most significant relationship to the occurrence and the parties." *Greenleaf*, 341 F.3d at 1301. Relevant contacts include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the [parties'] relationship . . . is centered." *Id.*

The "most significant relationship" test mandates the application of Florida law. The first factor is "generally the most important"; "absent special circumstances, the state where the injury occurred" is "decisive." *Melton v. Century Arms, Inc.*, 243 F.

---

[2] Plaintiffs criticize Heartland's reliance on *Green Leaf*—which is binding precedent—by arguing that New Jersey law must determine the scope of the TOS' "applicable law" clause. Dkt. 232 at 7. That is incorrect. The majority of courts, including the Eleventh Circuit, hold "that the scope of a choice-of-law provision is a threshold issue of enforceability to be decided under forum law." *Pyott-Boone Elecs. Inc. v. IRR Tr. for Donald L. Fetterolf*, 918 F. Supp. 2d 532, 542-43 (W.D. Va. 2013) (collecting cases, including *Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998)). Nor does it matter, as New Jersey courts also hold that a narrow choice-of-law clause does not govern tort/statutory claims. *See Portillo v. Nat'l Freight, Inc.*, 323 F. Supp. 3d 646, 653-55 (D.N.J. 2018) (applying New Jersey law to find that similarly narrow clause did not cover statutory claim). *See also Waldemar v. Golden*, 2018 WL 6326206, at *3 (M.D. Fla. Dec. 4, 2018) ("narrow" choice-of-law clause governed only "the contractual term at issue" while Florida law applied to tort and statutory claims).
[3] Plaintiffs cannot dispute that the NJCFA conflicts with Florida law given this Court's dismissal of their claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *See* Dkt. 138.

Supp. 3d 1290, 1299 (S.D. Fla. 2017). Here, Plaintiffs' alleged injuries occurred in Florida. This not only counsels against applying the NJCFA, but merits dismissal of the NJCFA claims altogether. *See Callen v. Daimler AG*, 2020 WL 10090879, at *24 (N.D. Ga. June 17, 2020) (dismissing NJCFA claim where loss occurred outside New Jersey). The second factor—"where the conduct causing the injury occurred"—also favors Florida. The injurious conduct was Heartland charging (and Plaintiffs paying) fees; this plainly occurred in Florida. *See* Dkt. 202 at 12-14 (arguing Plaintiffs were injured because Heartland charged "non-permitted fees" and "Plaintiffs paid" them).

The third factor looks to the parties' "residence, ..., place of incorporation and place of business." Here, Plaintiffs' residence is Florida. *See* Dkts. 202-1 ¶ 2 & 202-2 ¶ 2. While Heartland's executive offices were located in New Jersey from 2013-2015, *see* Ex. R, 2013 10-K at 4, Ex. S, 2015 10-K at 5, it moved its headquarters to Georgia when it was acquired by Global Payments in 2016, *see* Ex. T, 2016 Form 8-K at 1, and it has always been incorporated in Delaware, Dkt. 140 ¶ 9. Most of Plaintiffs' MSB transactions took place in 2016 or later, *see* Exs. L & N, *after* Heartland had relocated to Georgia. And in any event, this factor carries far less weight than "the state where the injury occurred," which is "the most important" factor. *In re Takata Airbag Prod. Liab. Litig.*, 255 F. Supp. 3d 1241, 1256 (S.D. Fla. 2017).

The final factor—where the relationship between the parties is centered—also weighs in favor of Florida law. Plaintiffs are Florida residents who used MSB in Florida to make payments at Florida school districts. In short, "the relevant ties to Florida are overwhelming." *Dunn v. Citigroup Glob. Markets, Inc.*, 2011 WL 13227804,

at *4 (S.D. Fla. Mar. 10, 2011). Neither the TOS nor Florida's choice-of-law rules permit application of the NJCFA, and the Court should grant summary judgment on this basis alone. *See Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 449-51 (D.N.J. 2012) (dismissing NJCFA claim where plaintiff purchased product in California).

Plaintiffs contend Heartland has waived this argument by taking an inconsistent position three years ago. *See* Dkt. 232 at 5-7. That is incorrect. Heartland previously argued Plaintiffs' FDUTPA claim was precluded by the TOS' applicable law clause because the claim was premised on alleged misrepresentations *from* the TOS—i.e., it "directly relate[d]" to Heartland's "obligations, duties, and performance under the" TOS. *See* Dkt. 118 at 21-22 (identifying statements from TOS on which Plaintiffs based their claim).[4] The same was then true of Plaintiffs' NJCFA claim—as pled, it too was explicitly premised on statements from the TOS. *See, e.g.*, Compl. ¶¶ 53-55, 83(a)-(c). Plaintiffs now disavow those allegations, arguing that their "claims are 'not premised on a misrepresentation . . . , [but] on the affirmative act of charging [improper fees].'" Dkt. 202 at 15. Because a party cannot waive a defense that "was not available to [it]" at the time, Heartland's choice-of-law argument is not waived. *See Cooper Lighting, LLC v. Cordelia Lighting, Inc.*, 2017 WL 11629195, at *2 (N.D. Ga. Nov. 13, 2017); *Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am.*, 2010 WL 317472, at *3 (S.D. Ga. Jan. 25, 2010) (venue defense not waived where it only recently became applicable).

---

[4] Notably, Plaintiffs took the opposite position: they argued that the TOS' choice-of-law clause applied only to "claims under the contract but [did] not preclud[e] tort claims" because the TOS "does not say that any and all claims or disputes . . . [are] governed by New Jersey law." Dkt. 119 at 16.

Courts have "broad discretion" to decide whether to consider an argument or deem it waived. *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006). No waiver occurs where (1) the argument is not untimely, *see James River Ins. Co. v. Ultratec Special Effects, Inc.*, 449 F. Supp. 3d 1157, 1166 n.12 (N.D. Ala. 2020) (issue raised at summary judgment), (2) there is no gamesmanship, *see Riverside Apartments of Cocoa, LLC v. Landmark Am. Ins. Co.*, 505 F. Supp. 3d 1293, 1303 (M.D. Fla. 2020), or (3) the party did not gain a litigation advantage—e.g., this Court did not dismiss the FDUTPA claim based on choice of law, *see* Dkt. 138 at 4-5, *Doe v. Hobart & William Smith Colleges*, 546 F. Supp. 3d 250, 268 (W.D.N.Y. 2021) (party not estopped where Court did not accept prior position). Here, Heartland has raised a choice-of-law defense in response to Plaintiffs' last-minute change in theory. And Plaintiffs argue that their departure from the Complaint does "not matter" because "[l]egal theories may be amended." Dkt. 232 at 2. If Plaintiffs are allowed to "amend" their theory, then Heartland is allowed to raise defenses in response. It would be inequitable to hold otherwise.

### B. Alternatively, Plaintiffs Cannot Establish Unlawful Conduct.

The NJCFA recognizes "three general categories of unlawful acts: (1) affirmative acts; (2) knowing omissions; and (3) regulatory violations." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 245 (2005). "Affirmative acts" consist of "unconscionable commercial practices, fraud, deception . . . , and misrepresentation." *Id.* Plaintiffs' theory is that Heartland committed an unlawful "affirmative act" by charging the Program Fee in ways that allegedly violated an agreement between Heartland and an unrelated party (namely, the Visa rules). Plaintiffs are wrong.

10

# 1. Plaintiffs' Reliance on Credit Card Brand Rules Is Misplaced.

Plaintiffs' attempt to base NJCFA liability on purported violations of Visa rules is unprecedented. Heartland is not aware of a single case recognizing a violation of card brand rules as a basis for an NJCFA claim, and Plaintiffs have not cited any. To be sure, violations of "specific regulations promulgated under the [NJCFA]" are a category of "unlawful conduct." *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18-19 (1994). And some cases have deemed violations of certain state statutes (but not others) to be unlawful "affirmative acts." *MacDonald v. Cashcall, Inc.*, 333 F.R.D. 331, 351 (D.N.J. 2019); *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 564 (D.N.J. 2013) (violation of the Construction Code "not actionable under the CFA"). But card brand rules are not statutes or regulations—they are contractual obligations. *See* Ex. O ¶¶ 18(a), 32; Ex. P 279:2-24. And violating them is not actionable under the NJCFA. *See Pierre-Charles v. Consumer Portfolio Servs., Inc.*, 2018 WL 3425737, at *4 (D.N.J. July 16, 2018) ("[T]he CFA does not create strict liability for violations of … statutes, regulations, or rules not promulgated under the CFA.").

Plaintiffs do not cite any case accepting a theory of "unlawful conduct" resembling theirs. At best, Plaintiffs' cases suggest that "the charging of non-permitted fees and amounts can constitute an 'unconscionable commercial practice' under the NJCFA." Dkt. 202 at 12. But the fees in those cases were "non-permitted" for reasons recognized as supporting an NJCFA claim—not because they allegedly violated contractual rules issued by a third party. The "non-permitted" fees in Plaintiffs' cited cases: (1) were excessive; (2) violated actual law; (3) were hidden or deceptive; and/or

(4) were paid in exchange for a service or good that the defendant never provided. *See Cashcall*, 333 F.R.D. at 350-51 (excessive fee violated usury statute); *Heyert v. Taddese*, 70 A.3d 680, 695-97 (N.J. App. 2013) (excessive rent violated rent ordinance); *Bosland v. Warnock Dodge, Inc.* 197 N.J. 543, 556-60 (2009) (fees violated state regulation); *Katz v. Live Nation, Inc.*, 2010 WL 2539686, at *6 (D.N.J. June 17, 2010) (undisclosed fees, fees charged for service not provided, fees charged for non-existent parking spots).

These cases do not substantiate Plaintiffs' theory. Plaintiffs do not allege the Program Fee was excessive or hidden. They do not allege any violation of law. They disclaim any allegation of misrepresentation/omission. Dkt. 202 at 15. And they do not dispute that they received valuable services in exchange for the Program Fee. Ex. U, Story 2nd RFAs at 4-5 (using MSB was "more convenient than using cash"); Ex. M 123:3-25 (discussing use of MSB); *id.* 165:15-166:5, 167:1-12 (discussing ability to check purchase history on MSB). Plaintiffs have not presented a single authority holding that violations of card rules, alone, can support an NJCFA claim. In fact, the law instructs that "the CFA requires some element of deceptive conduct … to be actionable as an unconscionable practice." *Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 162 (3d Cir. 2015) (fully disclosed late fees not unconscionable).

Deeming Heartland's conduct "unconscionable" would be particularly inapt here because Plaintiffs are not unsophisticated or vulnerable. *Cf. Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 583 (2011) (noting that plaintiff facing foreclosure could not speak English and had only a 6th-grade education). To the contrary, Story is an attorney who specializes in consumer law, Ex. K 35:12-23; Murrey-Settle holds a

Master's degree, Ex. M 43:17-24; and this Court has already recognized that the parents who use MSB are not "an especially vulnerable class," Dkt. 75 at 9.

### 2. Plaintiffs' Theory Is Nothing More than a Breach of Contract.

The law is clear that a "breach of contract, alone, is insufficient to give rise to an NJCFA claim." *Corp. Incentives, Inc. v. Unified Safe Guard, LLC*, 2021 WL 2043092, at *2 (D.N.J. May 21, 2021); *see also Hunt Const. Grp., Inc. v. Hun Sch. of Princeton*, 2009 WL 1312591, at *5 (D.N.J. May 11, 2009) ("[N]either a claim for breach of contract nor fraud in the fulfillment of the contract is actionable" under the NJCFA); *Billings v. Am. Express Co.*, 2011 WL 5599648, at *10 (D.N.J. Nov. 16, 2011) (similar).

Here, Plaintiffs' allegations that Heartland violated the Visa rules amount to nothing more than a breach of a contract (to which Plaintiffs are neither a party nor a third-party beneficiary). Both parties' experts agree that the card rules "are contractual agreements"—not laws. Ex. P 279:2-24; Ex. O ¶¶ 18(a), 57. Because the rules are simply contracts, Plaintiffs' theory—that "the Program Fees violate the [NJCFA] because they are impermissible fees under the binding rules issued by the major card networks," Dkt. 202 at 1—is an attempt to base an NJCFA claim on an alleged breach of contract. There is nothing more to Plaintiffs' allegations.

This is not the first time that Plaintiffs' counsel has tried (and failed) to bootstrap an alleged Visa rule violation into a consumer fraud claim. In *Brockland v. Roundy's Illinois, LLC*, the same counsel made the same argument, claiming that the defendant's "cash-back fees" were a "deceptive act" under the Illinois Consumer Fraud Act ("ICFA") because "the Visa Rules … prohibit [such] surcharges." 2022 WL 17082542

at *1-2 (N.D. Ill. Nov. 18, 2022). The court rightly rejected that theory, explaining that it raised only "a question about whether defendant breached its contract with Visa by failing to comply with the Visa Rules, which is not actionable under the ICFA." *Id.* at *2. This Court should do the same. It bears repeating that Visa itself says its rules "govern the relationship between Visa and its [network participants]" and "do not constitute a contract, promise, or representation or confer any rights, privileges, or claims of any kind as to any third parties." 2023 Visa Rules, *supra* n.1, at 66. Plaintiffs have no right to recover for Heartland's alleged rule—i.e., contract—violations.

This is especially true where, as here, neither Visa nor Mastercard considers Heartland to be in noncompliance with any rules. As noted, ███████████████████ ████████████████████████████████. *Supra* at 3-4. Plaintiffs also subpoenaed both entities for documents relating to (i) "complaints about . . . [MSB]," (ii) the "possibility that [MSB] violates any of Your . . . agreements," and (iii) any "enforcement proceedings" involving MSB. *See* Exs. V-W. No responsive documents were produced.

### 3. Card Brand Rules Governing Fees Apply Only to Merchants.

Plaintiffs' NJCFA claim fails for an additional, independent reason: because the rules at issue—Visa's convenience fees rules—apply only to a "Merchant that charges a Convenience Fee." 2023 Visa Rules, *supra* n.1, at 66, 378. It is undisputed that Heartland is not a "merchant," and Plaintiffs' attempt to argue otherwise fails.

The definition of "merchant" is "a retailer, or any other [entity] that, pursuant to a Merchant Agreement agrees to accept Cards when properly presented." Ex. X, Webster Rpt. ¶ 50. The MPAs between Heartland and school districts, including

Duval County Public Schools, designate the school district as the "merchant." Dkt. 117-1 at 1-2 (MPA for Duval County). Thus, applying Plaintiffs' own definition of "merchant" to the undisputed fact that MSB's MPA identifies the school district as the "merchant" leads to the conclusion that Heartland is not a "merchant"—and therefore is not subject to card brand rules on convenience fees. *Cf. Visa U.S.A. Inc. v. First Data Corp.*, 2006 WL 1310448, at *4 (N.D. Cal. May 12, 2006) (noting Visa's position that certain rules are "directed [only] to merchants"). This conclusion is bolstered by the record evidence, including that (1) each school district has its own "Merchant ID" ("MID"), (2) MSB transactions are charged to the districts' MID, and (3) districts decide whether to charge the fee to parents (or absorb it themselves). Ex. O ¶¶ 52-55. Heartland's role, meanwhile, is that of a payment processor. Ex. Q 176:16-19.[5]

### C. Plaintiffs Fail to Demonstrate That They Suffered Ascertainable Loss Caused by Heartland's Alleged Violations.

Even if violations of private, third-party agreements could rise to the level of unlawful conduct, Plaintiffs cannot show that these violations caused them an "ascertainable loss." The NJCFA requires a "causal nexus" between the alleged violation and any claimed injury—i.e., "proof that the prohibited act … in fact … misled, deceived …, or persuaded the plaintiff to purchase defendant's product," resulting in an "ascertainable loss." *Zebersky v. Bed Bath & Beyond, Inc.*, 2006 WL 3454993, at *2-3 (D.N.J. Nov. 29, 2006). Plaintiffs cannot show causation or loss.

---

[5] Additionally, Plaintiffs' novel theory of NJCFA liability is not properly pled, as Heartland has explained. *See* Dkt. 212; Dkt. 226 at 5-6. The Court should grant summary judgment on this ground, too. *See Williams v. Mallet*, 2023 WL 8769726, at *11 (S.D. Fla. Dec. 19, 2023) ("[A] plaintiff cannot survive summary judgment" based on "an argument or theory he never asserted in his complaint").

### 1. <u>Plaintiffs Cannot Show Causation.</u>

Plaintiffs have no evidence that Heartland's alleged violations of card brand rules "had any bearing on [their] decision to purchase the product." *Annecharico v. Raymour & Flanigan*, 2016 WL 7015615, at *8 (D.N.J. Nov. 30, 2016). Neither Plaintiff knew anything about the card brand rules during the time they used MSB, *see* Ex. M 97:1-6; Ex. K 84:5-12, and none of the allegedly violative conduct had an impact on Plaintiffs' decisions to use MSB. Murrey-Settle said that she used MSB because she believed she was "forced to," based on inaccurate information she received from the school district, not Heartland. Ex. M 122:13-123:2. Story testified he did not know why he decided to use MSB, stating that it "was just supplied by the [d]istrict." Ex. K 122:4-25. Plaintiffs' failure to establish causation becomes even clearer when viewed in the context of the four specific violations of the Visa rules identified in their Class Certification Motion. *See* Dkt. 202 at 7-8.

*Cap on Transaction Size.* Plaintiffs claim Heartland violates Visa's prohibition on "capping the size of a transaction" by imposing a $120 limit on MSB deposits. Dkt. 202 at 8. This violation did not cause Plaintiffs harm because neither Plaintiff ever wanted or attempted to make a deposit larger than $120. *See* Ex. N (Murrey-Settle made only three deposits of $30-45 each); Ex. L (the vast majority of Story's deposits were for $45, and only one of his 56 deposits was for $120). In fact, neither Plaintiff was even aware of the cap's existence. Ex. M 216:8-217:10 (testifying she never "attempted to make a deposit larger than $45" and was not aware of any "maximum limit"); Ex. K 168:1-18 (testifying he could not recall a cap on deposit size).

***Recurring Transactions.*** Plaintiffs next contend that Heartland violated the Visa rules by collecting Program Fees on recurring transactions. Dkt. 202 at 8. Murrey-Settle never signed up for AutoPay or otherwise paid Program Fees on a recurring basis. *See* Exs. Y-AA (email receipts with no Autopay notation). This alleged violation thus has no connection to her claimed injuries. Story signed up for AutoPay, *see* Ex. BB, Oct. 2017 Receipt, but there is no evidence that his use of AutoPay caused him to pay more in Program Fees than he would have paid had he transacted manually. In other words, Story would not have *avoided* paying Program Fees on his deposits had he not enrolled in AutoPay. To the contrary, the Fee amount—$1.95 or $2.49—is the same regardless of whether AutoPay is used. *Compare id. with* Ex. AA (showing same fee amount); *see* Ex. H 223:20-224:6. Accordingly, this claimed violation did not cause Plaintiffs any loss. *See United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (movant may satisfy Rule 56 by pointing to an "absence of evidence to support the nonmoving party's case").

***No Clear Disclosure.*** Plaintiffs claim that the Program Fee was not "disclosed clearly," in violation of the Visa rules.[6] Dkt. 202 at 7. They assert that Heartland: (1) improperly "labeled the fees 'Program Fees,'" rather than "[c]onvenience fees" that were "charge[d] for an alternative payment channel"; and (2) suggested that the Fees were "required by the school," instead of disclosing that they were required by Heartland. *Id.* at 7-8. There is no evidence of causation for either claimed violation.

---

[6] Plaintiffs were aware that they were paying fees on their MSB deposits. *See* Ex. K 173:20-174:3 (Story conceding he was aware of the fees); Ex. M 227:21-228:8 (same for Murrey-Settle).

Plaintiffs cannot show that Heartland's use of the term "Program Fee," rather than "convenience fee," caused them injury. Murrey-Settle did not even know what the fees she paid were called. Ex. M 12:3-8, 24:6-15. Nor could she articulate any differences between the various types of credit card fees or rank the fees according to her willingness to pay them. *Id.* 10:22-11:4, 18:11-21:4, 22:8-16 ("I don't know the difference between those fees."). Story also could not identify any differences between the various types of fees. Ex. K 105:2-10, 106:5-107:23, 110:7-111:14. And he testified that regardless of whether a fee was called a "surcharge," "convenience fee," "service fee," or something else, he considered them all to be merely "another way for companies to make money." *Id.* 103:15-104:2, 106:5-107:23. Story specifically testified that a "convenience fee"—the term Plaintiffs claim should have been used—is "[j]ust another way for companies to add profit to their bottom line." *Id.* 106:5-8. The evidence simply does not show a "causal nexus" between any purported rule violation relating to Heartland's use of "Program Fee," rather than "convenience fee," and any alleged injury. *See Ardino v. Retrofitness, LLC*, 2019 WL 2181906, at *10 (N.J. Super. Ct. May 21, 2019) (omission of statutorily required language not actionable where no plaintiff "suffered an ascertainable loss as a result of such omission").

Plaintiffs' second claimed disclosure violation—description of the fees as "Program Fees required by the school"—also lacks a causal nexus. Initially, Plaintiffs cannot argue that this disclosure misled them (or that they would have acted differently had they known the "truth") because they have explicitly disavowed such a theory. *See* Dkt. 202 at 15 (arguing that how "class members reacted to the truth" is "inapposite").

Regardless, Plaintiffs' decisions to use MSB were not "caused" by this alleged misrepresentation. Neither Plaintiff read any information on Heartland's website or TOS—where the statement was made—before enrolling in and using MSB. *See* Ex. K 130:18-131:18; Ex. M 169:15-171:4; *In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*, 2018 WL 497071, at *8 (D.N.J. Jan. 22, 2018) (no causation where named plaintiff said she "was not focused on the label when purchasing [the product] and, in fact, did not even look at it").

*Alternative Payment Channel.* Finally, Plaintiffs contend that Heartland violated a Visa rule that allows convenience fees to be charged only for use of "an alternative payment channel outside the Merchant's customary" channels. Dkt. 202 at 7. Plaintiffs assert Heartland violates this rule because "the MSB portal *is* the customary payment channel for the MSB program." *Id.* Plaintiffs miscomprehend the rule—Heartland is not the "merchant" here—school districts are—for the reasons given above; the use of cash or check has long been the "customary" way to pay for school lunch; and MSB is an "alternative payment channel outside the Merchant's [i.e., each district's] customary" channels. *See* Ex. O ¶¶ 52-55. But even setting that aside, Plaintiffs have not explained how Heartland's purported violation of this rule caused them any injury. In fact, both Plaintiffs were able to stop using MSB and use cash instead, confirming that MSB *is* an optional, "alternative" method of paying for school lunch. Ex. K 123:1-15; Ex. M 141:11-21. *See also* Ex. D 99:12-101:18 (Heartland executive testifying that parents may deliver cash or check directly to the school in lieu of using MSB).

As this Court has recognized, the NJCFA "requires a plaintiff to demonstrate

'how the alleged wrongdoing had any bearing on plaintiff's decision to purchase the product or service.'" Dkt. 75 at 19 (citing *Annecharico*, 2016 WL 7015615, at *8-9). Plaintiffs have no evidence to make that showing here. Thus, accepting Plaintiffs' position would "virtually eliminate the requirement that there be a connection between the misdeed complained of and the loss suffered," which is impermissible. *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 178 (N.J. App. Div. 2003).

## 2. Plaintiffs Cannot Show Ascertainable Loss.

New Jersey recognizes only "two relevant theories to ascertain losses under the NJCFA: (1) the out-of-pocket-loss theory, and (2) the loss-in-value or benefit-of-the-bargain theory." *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) ("ascertainable loss" is "either an out-of-pocket loss or a demonstration of loss in value"). Plaintiffs have no evidence that either cognizable theory applies.

### a. *Out-of-Pocket Loss Theory*

The out-of-pocket loss theory of ascertainable loss applies in "two circumstances." *Annecharico*, 2016 WL 7015615, at *7–8; *Gumba v. LeafFilter N. of New Jersey, LLC*, 2024 WL 378698, at *4 (D.N.J. Feb. 1, 2024). First, it applies when a plaintiff incurs expenses in addressing deficiencies in the service or product caused by the NJCFA violations, e.g., "repair" or replacement costs. *Annecharico*, 2016 WL 7015615, at *7; *Gumba*, 2024 WL 378698, at *4. This type of out-of-pocket loss does not apply here because Plaintiffs do not claim MSB suffered from any deficiencies due to the alleged rule violations or that they incurred costs in attempting to cure them.

Second, the out-of-pocket loss theory applies when a defendant's NJCFA violations cause a plaintiff "to purchase a worthless product." *Gumba*, 2024 WL 378698, at *4; *White v. Samsung Elecs. Am., Inc.*, 2019 WL 8886485, at *3 (D.N.J. Aug. 21, 2019) ("[B]ecause she does not allege that her Smart TV was essentially worthless, she cannot allege an ascertainable loss [based on] purchase price."). Here, Plaintiffs do not contend MSB was a worthless product. The evidence shows that MSB functioned as a cashless payment platform exactly the way it was supposed to. *See* Ex. C at No. 15; Ex. U at p. 4; Ex. M 123:3-25, 165:15-166:5, 167:1-12. That, in itself, precludes any finding that MSB was "worthless." *See Annecharico*, 2016 WL 7015615, at *8.

### b.      *Loss in Value or Benefit of the Bargain*

"A benefit-of-the-bargain" theory "requires that the consumer be misled into buying a product that is ultimately worth less than the product that was promised." *Mladenov*, 124 F. Supp. 3d at 375. The corresponding measure of damages is "the quantifiable difference in value between the merchandise as advertised and the merchandise as delivered." *Mann v. TD Bank, N.A.*, 2010 WL 4226526, at *5 (D.N.J. Oct. 20, 2010). Here, Plaintiffs do not claim that the MSB they used was in any way different, let alone "worth less," than the MSB they expected. Nor do Plaintiffs provide a method for calculating any hypothetical difference in the value of an MSB that allegedly complies with the card brand rules versus an allegedly non-compliant MSB. That is fatal—they cannot invoke the loss-in-value or benefit-of-the-bargain theory. *See White*, 2019 WL 8886485, at *3 (plaintiff failed to plead loss-in-value theory because she did not "allege[] any method by which the Court could calculate the difference in

value between a Smart TV with Defendants' tracking technology, and one without").

Because Plaintiffs have failed to establish either an out-of-pocket loss or a loss in value, they cannot establish an ascertainable loss under the NJCFA.[7]

## III. PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS.

A breach of contract claim requires proof of (1) a valid contract; (2) performance by plaintiffs; (3) nonperformance by defendants; and (4) that defendant's breach caused plaintiffs loss. *Goldfarb v. Solimine*, 245 N.J. 326, 338 (2021). Plaintiffs' Complaint identifies only one purported "contractual promise" that Heartland allegedly breached—a provision in the TOS stating: "Your child's school receives the full payment." Compl. ¶ 119. Plaintiffs allege Heartland breached that statement "by not paying the Program Fee to the school as promised." *Id.* ¶ 120.

### A. Heartland Did Not Breach Any Promise in the TOS.

The basis for Plaintiffs' claim that Heartland promised to give Program Fees to school districts hinges on the term "full payment." Plaintiffs assume that the reference to "full payment" means that Heartland "contracted to send the 'full payment' to the school including the MySchoolBucks Program Fee." *Id.* ¶ 120. The TOS, however, distinguishes between "payment" and Program Fees, making clear that "full payment" does not include Program Fees. The "Program Fee" provision of the TOS states:

> If you are required to pay a ***program fee***, you will be notified on a screen prior to completing the ***payment*** transaction and any such ***program fee*** will be required for each ***payment*** you make using the Service.

---

[7] It is unclear whether Plaintiffs still intend to individually pursue their TCCWNA claim. Regardless, Plaintiffs' TCCWNA claim fails for similar reasons as their NJCFA claim. Heartland's contracts did not contain provisions that violate Plaintiffs' "clearly established rights," nor can Plaintiffs show they were harmed by such provisions. *See Spade v. Select Comfort Corp.*, 232 N.J. 504, 517-22 (2018).

*See* Ex. E at 6 (emphasis added). This provision establishes that "*payment*" refers to the deposit amount—which is indisputably given to schools—whereas "*program fee*" refers to the fee charged on the deposit for using MSB (which Heartland receives). If "payment" included "program fees," the provision would be read as: a "program fee will be required for each [deposit and program fee] you make using the Service," which makes no sense. *See Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 103–04 (2009) (contract must be read "as a whole in a fair and common sense manner" so as to avoid "render[ing its] terms meaningless."). No reasonable reading of the TOS suggests that Heartland had a contractual obligation to transfer Program Fees to school districts.

### B.    Plaintiffs Have No Evidence of Causation.

Even if Plaintiffs could prove a breach, their contract claim fails for lack of causation. *See Barrett Fin. of N. Jersey, LLC v. Creative Fin. Grp. of N.J.*, 2019 WL 2067552, at *10 (D.N.J. May 10, 2019). To establish causation, a "plaintiff must prove that defendant's breach . . . was both a but for cause as well as a proximate cause of the damages, that is, that defendant's breach was a substantial factor in causing the damages." *Merchants Ins. Co. of N.H. v. 3R Painting & Contracting Co.*, 2009 WL 3030126, at *3 (D.N.J. Sept. 16, 2009). Plaintiffs have no evidence of causation.

The Complaint alleges causation in purely conclusory terms, stating only that "Plaintiffs and Class members suffered actual damages in the amount of Program Fees paid as a direct and proximate result of Defendant's breach." Compl. ¶¶ 121-22. The record is also silent as to how Heartland's purported failure to send a school "the full

payment" could possibly have caused Plaintiffs harm. There is no evidence Plaintiffs used MSB because they believed schools received the Fees. Ex. K 122:4-10; Ex. M 122:13-16. And Plaintiffs have no recollection of reviewing the TOS when they began using MSB and were not even aware of the provision Heartland supposedly breached. Ex. K 131:7-11; Ex. M 151:3-9. Simply put, Plaintiffs have no evidence that they would have avoided any injury but for the alleged breach. Nor have they presented evidence that the alleged breach was a "substantial factor" in causing Plaintiffs damages—or had any impact on them at all.

### C. Plaintiffs Have No Evidence of Any Cognizable Injury.

"Breach of contract claims require the plaintiff to have suffered damage." *Buck v. Am. Gen. Life Ins. Co.*, 2021 WL 733809, at *12 (D.N.J. Feb. 25, 2021). Plaintiffs studiously avoid pleading or arguing any theory of contract injury, and it is unclear what damages they contend they suffered from the alleged breach. Plaintiffs do not allege that MSB failed to deliver the promised services. Plaintiffs got exactly what they bargained for: funds delivered to the school via card payment rather than cash or check. Nor do they contend MSB was less valuable than expected because Program Fees were paid to Heartland. While Plaintiffs claim the Fees should have been paid to school districts, they lack standing to pursue any damages that would have been suffered by school districts, if anyone. Moreover, Plaintiffs' Class Certification Motion affirmatively disclaims any injury based on individualized "intangible" benefits or "subjective" measures, *see* Dkt. 202 at 20-21, foreclosing injuries resulting from a personal preference in having Program Fees go to school districts instead of to

Heartland. There is no evidence of cognizable injury due to the alleged breach.

## D.  Plaintiffs Are Not Entitled to Restitution.

Despite failing to prove a breach, Plaintiffs contend they are entitled to restitution—"a refund of the amount paid as 'Program Fees'"—due to Heartland's alleged failure to pay the fees to school districts. Compl. ¶ 121. Restitution is available as a contract remedy only in cases of total or material breaches. *See Shea v. Willard*, 205 A.2d 74, 77 (N.J. App. Div. 1964) (restitution available only "where there is a total breach"). And a material breach is one that goes to the "essence of the contract." *Linan-Faye Const. Co. v. Hous. Auth. of City of Camden*, 995 F. Supp. 520, 523 (D.N.J. 1998).

Here, there can be no dispute that the alleged breach is not one that goes to the "essence" of the TOS. The "essence" of the TOS was the provision of a platform for cashless transactions that parents could use to pay for their children's school lunches. It had nothing to do with whether Program Fees for using MSB would go to Heartland or school districts. Again, at the time of contracting, Plaintiffs were not even aware of the provision that they now claim was breached. Ex. K 131:7-11; Ex. M 151:3-9. And, notably, Plaintiffs had no particular expectation that their school district would receive the Program Fees. Ex. K 149:4-9; Ex. M 203:19-21. The notion that Plaintiffs had no knowledge of the provision at issue nor expectation about who would receive Program Fees at the time of contracting but that Heartland's purported failure to transfer the Fee to school districts is somehow a breach that goes to the "essence" of the TOS borders on the absurd. Plaintiffs cannot establish a material breach. As a result, restitution is not available to Plaintiffs.

Dated: April 9, 2024.

Respectfully submitted,

*/s/ Michael Fox Orr*
Michael Fox Orr
Kathleen H. Crowley
**ORR|COOK**
50 N. Laura St.
Jacksonville, Florida
32202
Telephone: (904) 358-8300)
morr@orrcook.com
kcrowley@orrcook.com

David L. Balser (pro hac vice)
Timothy H. Lee (pro hac vice)
Peter Starr (pro hac vice)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-4600
dbalser@kslaw.com
tlee@kslaw.com
pstarr@kslaw.com

Laura Harris (pro hac vice)
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 790-5360
lharris@kslaw.com

*Attorneys for Heartland*
*Payment Systems, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 9, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ *Michael Fox Orr*
Attorney