**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MAX STORY, *et al.*, *on behalf of
themselves and all others similarly situated*,

        Plaintiffs,

v.

HEARTLAND PAYMENT SYSTEMS,
LLC,

        Defendant.

No. 3:19-cv-724-TJC-JBT

**PLAINTIFFS' OPPOSITION TO DEFENDANT HEARTLAND PAYMENT
SYSTEMS, LLC'S MOTION FOR SUMMARY JUDGMENT**

**REDACTED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

COUNTER-STATEMENT OF FACTS ...................................................2

    A.    Heartland's Terms of Service were false and misleading. ...................2

    B.    The network rules prohibited Heartland's Fees. ...................3

ARGUMENT ...................................................................................5

I.    Plaintiffs can assert NJCFA claims. ...................................................5

    A.    Heartland's choice-of-law provision encompasses Plaintiffs' NJCFA claims. ...................................................5

        1.    New Jersey courts hold that the phrase "governed by" captures NJCFA claims. ...................6

        2.    Florida courts also hold that the phrase "governed by" captures related statutory claims. ...................7

        3.    The meaning of Heartland's choice-of-law provision is a question of state law, not federal law, but the result is the same either way. ...................7

    B.    Heartland previously maintained that New Jersey law governed Plaintiffs' claims and so waived its new choice-of-law argument. ...................9

II.    Sufficient evidence supports Plaintiffs' NJCFA claims. ...................12

    A.    A jury can find unlawful conduct. ...................12

    B.    A jury can find causation. ...................16

    C.    A jury can find ascertainable loss. ...................17

III.    Summary judgment as to Plaintiffs' contract claim is improper. ...................18

    A.    Heartland promised to send the Program Fees to schools. ...................18

    B.    Heartland's breach harmed Plaintiffs. ...................19

    C.    The jury can find restitution justified. ...................20

CONCLUSION ...................................................................................20

3002121.3

# TABLE OF AUTHORITIES

**Cases**

*Akhtar v. JDN Props. at Florham Park, L.L.C.*,
  2015 WL 751769 (N.J. Super. Ct. App. Div. Feb. 24, 2015)............................14

*Ala. Aircraft Indus., Inc. v. Boeing Co.*,
  2022 WL 433457 (11th Cir. Feb. 14, 2022) ........................................................8

*Amakua Dev. LLC v. Warner*,
  411 F. Supp. 2d 941 (N.D. Ill. 2006)...................................................................7

*Annecharico v. Raymour & Flanigan*,
  2016 WL 7015615 (D.N.J. Nov. 30, 2016) .................................................17, 18

*Ardino v. Retrofitness, LLC*,
  2019 WL 2181906 (N.J. Super. Ct. App. Div. May 21, 2019) .........................17

*Arriaga v. Fla. Pac. Farms, LLC*,
  305 F.3d 1228 (11th Cir. 2002) ...........................................................................9

*Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp.*,
  364 So. 2d 15 (Fla. 4th DCA 1978).....................................................................7

*Bosland v. Warnock Dodge, Inc.*,
  964 A.2d 741 (N.J. 2009) ..........................................................................*passim*

*Brockland v. Roundy's Ill., LLC*,
  2022 WL 17082542 (N.D. Ill. Nov. 18, 2022) ..................................................14

*CDK Glob., LLC v. Tulley Auto. Grp., Inc.*,
  489 F. Supp. 3d 282 (D.N.J. 2020)...................................................................6, 9

*In re Checking Account Overdraft Litig.*,
  694 F. Supp. 2d 1302 (S.D. Fla. 2010)..............................................................12

*Ciser v. Nestle Waters N. Am., Inc.*,
  596 F. App'x 157 (3d Cir. 2015) .......................................................................14

*Coleman v. CubeSmart*,
  328 F. Supp. 3d 1349 (S.D. Fla. 2018)..............................................................19

3002121.3

*Costa v. Kerzner Int'l Resorts, Inc.*,
 2011 WL 2519244 (S.D. Fla. June 23, 2011) .....................................................19

*Demmick v. Cellco P'ship*,
 2010 WL 3636216 (D.N.J. Sept. 8, 2010) ...........................................................6

*Fridman v. 1-800 Contacts, Inc.*,
 554 F. Supp. 3d 1252 (S.D. Fla. 2021) ................................................................8

*Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*,
 341 F.3d 1292 (11th Cir. 2003) .....................................................................7, 8, 9

*Heyert v. Taddese*,
 70 A.3d 680 (N.J. Super. Ct. App. Div. 2013) ......................................12, 17, 18

*Jaasma v. Shell Oil Co.*,
 412 F.3d 501 (3d Cir. 2005) ...............................................................................19

*Katz v. Live Nation, Inc.*,
 2010 WL 2539686 (D.N.J. June 17, 2010) ...........................................12, 16, 18

*Kugler v. Romain*,
 279 A.2d 640 (N.J. 1971) ...................................................................................12

*Lott v. Levitt*,
 556 F.3d 564 (7th Cir. 2009) ................................................................................9

*MacDonald v. Cashcall, Inc.*,
 333 F.R.D. 331 (D.N.J. 2019) .....................................................................*passim*

*Maddy v. Gen. Elec. Co.*,
 80 F. Supp. 3d 544 (D.N.J. 2015) ...................................................................9, 19

*Mango v. Pierce-Coombs*,
 851 A.2d 62 (N.J. Super. Ct. App. Div. 2004) ...................................................13

*Maor v. Dollar Thrifty Auto. Group, Inc.*,
 303 F. Supp. 3d 1320 (S.D. Fla. 2017) ...............................................................19

*Mladenov v. Wegmans Food Mkts., Inc.*,
 124 F. Supp. 3d 360 (D.N.J. 2015) .....................................................................18

3002121.3

*N.J. Citizen Action v. Schering-Plough Corp.*,
842 A.2d 174 (N.J. Super. Ct. App. Div. 2003) ..................................................17

*Nanopierce Techs., Inc. v. Southridge Cap. Mgmt.*,
2002 WL 31819207 (S.D.N.Y. Oct. 10, 2002)..................................................6, 7

*Nolen v. Fairshare Vacation Owners Assoc.*,
591 F. Supp. 3d 1191 (M.D. Fla. 2022)..................................................7

*Norfolk S. Ry. Co. v. Basell USA Inc.*,
512 F.3d 86 (3d Cir. 2008) ..................................................20

*Petri Paint Co. v. OMG Americas, Inc.*,
595 F. Supp. 2d 416 (D.N.J. 2008)..................................................14

*Pierre-Charles v. Consumer Portfolio Servs., Inc.*,
2018 WL 3425737 (D.N.J. July 16, 2018) ..................................................14

*Portillo v. Nat'l Freight, Inc.*,
323 F. Supp. 3d 646 (D.N.J. 2018)..................................................6

*Pro v. Hertz Equip. Rental Corp.*,
2008 WL 5218267 (D.N.J. Dec. 11, 2008)..................................................5

*Pyott-Boone Elecs., Inc. v. IRR Tr.*,
918 F. Supp. 2d 532 (W.D. Va. 2013) (Virginia)..................................................7

*Rapoport v. Caliber Home Loans, Inc.*,
617 F. Supp. 3d 241 (D.N.J. 2022)..................................................12, 14

*Rayle Tech., Inc. v. DeKalb Swine Breeders, Inc.*,
133 F.3d 1405 (11th Cir. 1998) ..................................................7

*Razi v. Razavi*,
2012 WL 7801361 (M.D. Fla. Dec. 21, 2012) ..................................................7

*Riverside Apartments of Cocoa, LLC v. Landmark Am. Ins. Co.*,
505 F. Supp. 3d 1293 (M.D. Fla. 2020)..................................................11

*Roach v. BM Motoring, LLC*,
155 A.3d 985 (N.J. 2017) ..................................................20

3002121.3

*Sack v. Cessna Aircraft Co.*,
    676 F. App'x 887 (11th Cir. 2017) ........................................................................8

*Sullivan v. Sovereign Bancorp, Inc.*,
    33 F. App'x 640 (3d Cir. 2002) ............................................................................6

*Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*,
    904 F.3d 1197 (11th Cir. 2018) ......................................................................9, 10

*Waldemar v. Golden*,
    2018 WL 6326206 (M.D. Fla. Dec. 4, 2018) ......................................................8

**Statutes**

N.J. Stat. § 56:8-2...........................................................................................*passim*

**INTRODUCTION**

Heartland sold its MySchoolsBucks ("MSB") product to school districts, with the idea that parents would foot the bill through a fee charged each time they loaded value on their children's accounts. At every step, Heartland intentionally charged its fees in a manner to avoid parents scrutinizing the amount of the fee or the value Heartland supposedly provided in return. In its Terms of Service ("TOS"), Heartland falsely told any parent who happened to notice the fees that it was their child's school that was charging them. Heartland also capped the deposit amount (█████████ ████████████████████████████████) and lied about that too, stating in the TOS that it was the credit card companies that imposed the cap.

Heartland is hardly the first to exploit consumer acquiescence to small transaction fees, although Heartland arguably perfected the grift by targeting parents with fees that Heartland (falsely) says support their children's schools. Precisely because many consumers do not notice small fees, however, such fees are restricted under the credit card network rules. And every component of the parent-paid model that made it such a cash cow for Heartland is a violation of these rules.

Heartland's motion for summary judgment is without merit. Plaintiffs properly assert claims under the New Jersey Consumer Fraud Act ("NJCFA") because Heartland drafted the New Jersey choice-of-law provision in the TOS to encompasses claims (like Plaintiffs') that are directly related to the TOS, and Heartland waived any argument otherwise. The NJCFA, moreover, prohibits Heartland's misconduct here: the elements of an NJCFA claim are satisfied where

plaintiffs plead the charging of improper fees. *See, e.g.*, *MacDonald v. Cashcall, Inc.*, 333 F.R.D. 331 (D.N.J. 2019). Heartland also breached its contract with Plaintiffs: the TOS said the money was going to the parents' schools, and it wasn't. Plaintiffs respectfully ask this Court to deny Heartland's motion.

## COUNTER-STATEMENT OF FACTS

### A.  Heartland's Terms of Service were false and misleading.

Heartland's TOS described the transaction fees as "Program Fees" or "Membership Fees." Dkt. 241-7 (Mot. Ex. F) at 371. The TOS said that "Your school district may require a program fee or membership fee[.]" *Id.* Further:

> Your credit card provider may have imposed a maximum amount which can be placed on your credit card. Your child's school receives the full payment.

*Id.* at 370.

These statements were false. 

Ex. 1 (Loch Dep.) at 61:15–19.

*Id.* at 206:11–07:8; Ex. 2 (Schunk Dep.) at 181:8–22.[1]

Dkt. 248-13 (Webster Rpt.) ¶ 56.

These misrepresentations were calculated and significant. For example,

Ex. 5 (Orliss Ex. 13); Ex. 2 (Schunk Dep.) at 308:8–

---

[1] *See also* Ex. 2 (Schunk Dep.) at 228:24–30:17, 268:19–69:10, 276:16–77:17; Ex. 3 (Schunk Ex. 31); and Ex. 4 (Schunk Ex. 32).

3002121.3

24; *accord* Ex. 6 (HPS 29864) (Heartland discussed 

Ex. 5 (Orliss Ex. 13) at 24789. Nevertheless,

*See* Ex. 7

(HPS 43853) at 43855–56; and Ex. 8 (Loch Ex. 75) at 43038.

Ex. 7 (HPS 43853); Ex. 9 (Orliss Dep.) at

184:22–85:2; s*ee also* Ex. 10 (Miceli Dep.) at 202:21–04:5 (

. And,

Ex. 11 (HPS 5532); *see also, e.g.*, Ex. 12 (HPS 157840) at Row 54

.

**B. The network rules prohibited Heartland's Fees.**

The major card networks set forth rules applicable to merchants accepting credit or debit cards. These rules are in place in part to protect consumers from predatory fees. Ex. 13 (Webster Rebuttal) ¶ 36. Under the rules, merchants are permitted to charge only certain types of transaction fees, and others are prohibited. *Id.* ¶ 7; Dkt. 248-13 (Webster Rpt.) ¶ 84.

Heartland asserts that the credit card companies approved of its Fees. Mot. at 3. But nothing Heartland cites shows that the card companies believed or stated that the Program Fees complied with their rules. To the contrary, ████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Ex. 14 (HPS 142223).

For this litigation, Heartland's expert maintains that the Program Fee is "broadly consistent with the concept of a convenience fee," Dkt. 248-11 (Moran Rpt.) ¶ 64, a charge "for the privilege of paying . . . using an alternative payment method that is not standard for a business." Dkt. 248-13 (Webster Rpt.) ¶¶ 20, 65. That is not what the Program Fees are, and prior to litigation ████████████ ████████████████████████████████████████████████████████████████ ██████████████████████ Ex. 15 (HPS 24795) at 24796. Little wonder the employee had concerns:

- **Not for an "alternative" channel**. The rules permit convenience fees only "for a bona fide convenience in the form of an alternative payment channel outside the Merchant's customary payment channels." Dkt. 248-13 (Webster Rpt.) at App'x E § 5.5.2.1. Here, the MSB portal *is* the customary payment channel. *Id.* ¶¶ 46–48; Ex. 13 (Webster Rebuttal) ¶ 9(a).[2]

- **No clear disclosure**. Convenience fees must be "disclosed clearly" as a "charge for the alternative payment channel convenience." Dkt. 248-13

---

[2] Heartland argues that the fact that parents could go to their school in person and pay with cash means that the Program Fee *was* for an "alternative payment channel." Mot. at 19. But as Plaintiff's expert explains, █████████████████████████ Ex. 13 (Webster Rebuttal) ¶ 9 n. 8; *see also* Ex. 2 (Schunk Dep.) at 147:6–19 ████████████████████████████████████████████ ).

3002121.3

(Webster Rpt.) at App'x E § 5.5.2.1. Here, Heartland labeled the fees "Program Fees" required by the school. Ex. 13 (Webster Rebuttal) ¶ 9(b).

- **Cap on transaction size.** The rules preclude merchants from capping the size of a transaction (and therefore racking up fees). *Id.* ¶¶ 9(e), 10(c). Heartland, to increase the number of Program Fees, imposed a transaction cap. *Id.*

- **Applied to recurring transactions.** The rules prohibit convenience fees from being charged on recurring transactions, but Heartland did just that. *Id.* ¶ 9(d).

## ARGUMENT

### I. Plaintiffs can assert NJCFA claims.

Heartland argues that Plaintiffs cannot assert NJCFA claims because the choice-of-law provision in the parties' TOS does not encompass such claims. This is incorrect: Plaintiffs' claims are governed by the law Heartland selected, a position Heartland itself advocated until it became inconvenient. Even if there were some colorable argument that New Jersey law did not apply, Heartland waived it.

### A. Heartland's choice-of-law provision encompasses Plaintiffs' NJCFA claims.

The TOS Heartland imposed provided that "the laws of the State of New Jersey will govern these Terms of Use, and any dispute relating to the Service provided herein shall be subject to the jurisdiction of the courts of the State of New Jersey." Dkt. 241-6 (Mot. Ex. E) at 366; Dkt. 241-7 (Mot. Ex. F) at 373–74. The ordinary understanding of Heartland's use of the word "govern" is "broad[,] capturing both contract and tort claims, particularly tort claims that relate to the contract[.]" *Pro v. Hertz Equip. Rental Corp.*, 2008 WL 5218267, at *5–6 (D.N.J. Dec. 11, 2008). And the law is in accord with common sense.

## 1. New Jersey courts hold that the phrase "governed by" captures NJCFA claims.

Provided those claims "relate[] to the performance" of the contract, a provision that a contract is "governed by" New Jersey law encompasses NJCFA claims. *Demmick v. Cellco P'ship*, 2010 WL 3636216, at *3 (D.N.J. Sept. 8, 2010); *see also CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 301–07 (D.N.J. 2020) (similar).[3] This contrasts with narrower clauses providing only that a contract will be "construed under" New Jersey law. *Demmick*, 2010 WL 3636216, at *3; *accord Sullivan v. Sovereign Bancorp, Inc.*, 33 F. App'x 640, 642 (3d Cir. 2002) (affirming decision that "governed by and construed" provision encompassed fraud claims).

Under this standard, Plaintiffs' NJCFA claims are encompassed within the choice-of-law provision. The claims arise directly out of Heartland's TOS and its conduct governed by the contract, including how those TOS designed the Program Fees and what Heartland promised it would do with the Program Fees. *Indeed, the entire concept of a "Program Fee" exists only because Heartland's TOS invented it.*[4]

Heartland primarily responds to the line of New Jersey cases holding that "governed by" encompasses related NJCFA claims by saying that the Court should

---

[3] Even more so because Heartland provided that "any dispute" must be brought in New Jersey state court—it would make little sense to imagine that a Florida plaintiff could sue an Oklahoma defendant in New Jersey state court under Florida or Oklahoma law. *See Nanopierce Techs., Inc. v. Southridge Cap. Mgmt.*, 2002 WL 31819207, at *10 (S.D.N.Y. Oct. 10, 2002) (presence of forum selection clause supported understanding choice-of-law clause to encompass fraud claims).

[4] Heartland cites *Portillo v. Nat'l Freight, Inc.*, 323 F. Supp. 3d 646 (D.N.J. 2018), but that case found that the claims did not "require" *any* "interpretation of" the contract. *Id.* at 656–57. Even so, the court found the issue "present[ed] a close question." *Id.* at 657. In addition, *Portillo* did not cite any New Jersey cases, and instead relied primarily on an unpublished Third Circuit decision applying *Pennsylvania* law. *See id.*

apply "forum law" to the scope of the choice-of-law provision. Mot. at 7 n. 2. It's not clear why. That "who decides" question is a state-law question, and Heartland cites no Florida cases adopting its view (*Rayle Tech., Inc. v. DeKalb Swine Breeders, Inc.*, 133 F.3d 1405 (11th Cir. 1998) was in a Georgia forum, not a Florida one).

### 2. Florida courts also hold that the phrase "governed by" captures related statutory claims.

If the Court looks to Florida law, the outcome is no different than it would be in New Jersey: Florida courts also distinguish the "governed by" provision Heartland drafted (encompassing related statutory claims) from narrower "construed under" provisions. *See Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp.*, 364 So. 2d 15 (Fla. 4th DCA 1978) ("interpreted and construed" provision did not encompass statutory claims as compared to broader "governed by" language); *see also, e.g.*, *Razi v. Razavi*, 2012 WL 7801361, at *6 (M.D. Fla. Dec. 21, 2012) (Florida law) ("governed" includes fraud claims "inextricably and factually tied to the transactions" referenced in the contract); *Nolen v. Fairshare Vacation Owners Assoc.*, 591 F. Supp. 3d 1191, 1198 n. 5 (M.D. Fla. 2022) (same).[5]

### 3. The meaning of Heartland's choice-of-law provision is a question of state law, not federal law, but the result is the same either way.

Heartland primarily argues that its choice-of-law clause does not apply by relying on *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1298

---

[5] This standard is widely adopted. *See, e.g.*, *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 955 (N.D. Ill. 2006) (Illinois); *Nanopierce*, 2002 WL 31819207, at *10 (New York); *Pyott-Boone Elecs., Inc. v. IRR Tr.*, 918 F. Supp. 2d 532, at 545–46 (W.D. Va. 2013) (Virginia).

(11th Cir. 2003), holding that a choice-of-law provision in a settlement did not govern fraudulent inducement claims. That case looked to *federal* precedents and did not purport to apply either New Jersey or Florida contract law to interpret the choice-of-law provision. *See id.* at 1300–01. This is normal when the parties brief choice-of-law but fail to distinguish between "the law of various sovereigns." *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 2022 WL 433457, at *8 & n. 16 (11th Cir. Feb. 14, 2022) (same federal analysis of choice–of-law as *Green Leaf*).[6] But it has no persuasive force where, as here, the parties *do* cite state law. *See Sack v. Cessna Aircraft Co.*, 676 F. App'x 887, 889–90 & n. 2 (11th Cir. 2017) (discussing *Green Leaf* but looking to Florida law to decide whether choice-of-law provision encompassed tort claims).

Even if some sort of federal common law applied here, however, it would not change the outcome. The claims in *Green Leaf*—a "massive scheme of perjury, falsification [and] concealment of evidence to induce" a fraudulent settlement, 341 F.3d at 1296—concerned conduct that, if proven, would have invalidated contract formation itself. Of course, the better-reasoned opinions explain that it makes little sense to apply a choice-of-law provision to determine whether a contract was properly formed in the first instance. *See, e.g.*, *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1259 (S.D. Fla. 2021) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its

---

[6] Heartland's citation to *Waldemar v. Golden*, 2018 WL 6326206 (M.D. Fla. Dec. 4, 2018) is the same: the parties in that case did not adequately brief choice of law, so the court also did not cite Florida cases (nor did it analyze whether those claims had a sufficient relationship to the at-issue contract). *Id.*

adoption[.]"). And unlike *Green Leaf*, the contract in this case is one of adhesion, meaning that any ambiguities must be interpreted against Heartland. *See Maddy v. Gen. Elec. Co.*, 80 F. Supp. 3d 544, 552 (D.N.J. 2015); *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1247–48 (11th Cir. 2002); *accord, e.g.*, *CDK*, 489 F. Supp. 3d at 307 (emphasizing that the choice-of-law provision "was drafted by" the opposing party "in its own interest").

### B. Heartland previously maintained that New Jersey law governed Plaintiffs' claims and so waived its new choice-of-law argument.

For years, Heartland litigated this case on the premise that "New Jersey law governs Plaintiffs' claims." Dkt. 118 at 21–22. Heartland argued in four Rule 12 motions that it had drafted a choice-of-law provision requiring Plaintiffs to sue exclusively under New Jersey law. *See, e.g.*, Dkt. 82 at 2–3 ("[T]his dispute is governed by New Jersey Law . . . the parties' agreed choice-of-law is reason enough to dismiss the [] FDUPTA claim."); Dkt. 118 at 21 ("Plaintiffs have agreed that Florida law does not apply; they must be held to that agreement.").

Now that Plaintiffs have demonstrated those same claims are supported by evidence and meet the Rule 23 requirements, Heartland has changed its tune. This new argument is waived: a party "is not entitled to get a free peek at how his dispute will shake out under [one state's] law and, when things don't go his way, ask for a mulligan under the laws of a different jurisdiction." *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009); *cf. Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904

F.3d 1197, 1208 (11th Cir. 2018) (to avoid waiver, party must articulate choice-of-law position "in its [] first motion or response when choice-of-law matters").

Heartland excuses the flip-flop by arguing that Plaintiffs' NJCFA claims have changed, that they previously were "explicitly premised on statements from the TOS" and now are somehow different. Mot. at 9. This argument is wrong on the facts and the law.

On the facts, Heartland dramatically overstates any evolution in Plaintiffs' theory. Plaintiffs alleged from the outset that Heartland was "bound by all the rules imposed . . . by the credit companies" and that the company's violation of those rules made the Program Fees "prohibited" and "unlawful." Dkt. 117 ¶¶ 13, 31, 34, 83–85; *see also* Dkt. 85 at 1–2 (same); Dkt. 95 at 4–5 (same). Heartland responded accordingly: "The Program Fee *is not* a 'surcharge' under the credit card Rules." Dkt. 118 at 10; *see also id.* at 11 (arguing Heartland is not a "merchant"); *id.* at 6 n. 2 ("[T]he Program Fee was a properly disclosed convenience fee that in no way violated the credit card Rules."). Heartland's industry expert, too, did not seem confused by Plaintiffs' theory; his report is dedicated to arguing that the Program Fee *is* an appropriate convenience fee. *See generally* Dkt. 248-11 (Moran Rpt.).

On the law, Heartland never explains how the choice-of-law issue is different now than it was at the outset of litigation: Heartland simply states that the claim evolved from one under the "misrepresentation" prong of the NJCFA to one under the "unlawful act" prong. This is the quintessential distinction without a difference. Either way, the claim involves Heartland's transactions, conduct, and

representations as governed by the TOS, and either way, the claim triggers liability under the NJCFA. It is impossible to square Heartland's "distinction" with any of the New Jersey, Florida, or federal decisions cited above. Plaintiffs' claims have always been "explicitly premised on statements from the TOS." *See* Dkt. 248-13 (Webster Rpt.) ¶¶ 66–68 (Fees were not "clearly disclosed"). Plaintiffs' NJCFA claim is related to—and requires reference to and interpretation of—the TOS.

Heartland cites cases excusing waiver in the absence of "gamesmanship" or "prejudice." *Riverside Apartments of Cocoa, LLC v. Landmark Am. Ins. Co.*, 505 F. Supp. 3d 1293, 1303 (M.D. Fla. 2020). Here, both are present: Heartland argued that its choice-of-law provision bound Plaintiffs to New Jersey law, to the exclusion of Florida claims (or to other plaintiffs from other states seeking to assert their own state-specific claims). Now, after three years of discovery has proved up Plaintiffs' NJCFA claims, Heartland seeks to re-construe the provision to exclude New Jersey claims and relies on this position to oppose class certification.[7]

Finally, Heartland says that Plaintiffs' theory was not pleaded. Mot. at 15 n. 5. This is false, as explained above. To the extent Heartland is criticizing Plaintiffs for applying the law to the evidence produced in discovery, that is how litigation is supposed to work. The question is not "do the parties know more about the case now

---

[7] Heartland suggests that Plaintiffs are not prejudiced because the Court dismissed their Florida claim on the merits. Not quite. Plaintiffs explained in their motion for leave to amend that they crafted that Florida claim—premised *only* on a Florida-specific rule banning credit card surcharges—to comply with Heartland's (accurate) expansive view of its choice-of-law provision. *See* Dkt. 110 at 4. Even so, Heartland argued that the claim was based on "inapplicable law" and that "this Court must give effect to the parties' contractual choice of law." Dkt. 118 at 5. This is waiver.

than they did at the outset"—by definition they do—but rather "has anything changed that materially affects the choice-of-law question"—nothing has.

## II.    Sufficient evidence supports Plaintiffs' NJCFA claims.

Under the NJCFA, "Plaintiffs must show (1) unlawful conduct by Defendant[]; (2) an ascertainable loss []; and (3) a causal connection between the two." *Cashcall*, 333 F.R.D. at 350–51.

### A.    A jury can find unlawful conduct.

The NJCFA defines "unlawful conduct" as including "any unconscionable commercial practice." *Id.* at 351 (quoting N.J. Stat. § 56:8-2). The prohibition is "designed to establish a broad business ethic," establishing a "standard of conduct" of "good faith, honesty in fact and observance of fair dealing." *Kugler v. Romain*, 279 A.2d 640, 651–52 (N.J. 1971). As a practical matter, a jury resolving an NJCFA claim "must typically determine whether the challenged conduct falls outside a reasonable business practice." *Rapoport v. Caliber Home Loans, Inc.*, 617 F. Supp. 3d 241, 247 (D.N.J. 2022) (citation omitted).

Courts recognize regularly that the charging of non-permitted fees and amounts can constitute an "unconscionable commercial practice" under the NJCFA. *See Cashcall*, 333 F.R.D. at 350–51 (usurious interest).[8] Here, the Program Fees to parents violated rules which are in part designed to protect consumers from

---

[8] *See also Heyert v. Taddese*, 70 A.3d 680, 696 (N.J. Super. Ct. App. Div. 2013) (rent in excess of rent control); *Katz v. Live Nation, Inc.*, 2010 WL 2539686, at *6 (D.N.J. June 17, 2010) (concert fees); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1326 (S.D. Fla. 2010) (overdraft fees); and *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749–50 (N.J. 2009) (auto fees).

predatory fees. Ex. 13 (Webster Rebuttal) ¶ 36. A reasonable jury could surely find that Heartland acted outside a "reasonable business practice" when it violated credit card rules by labeling its profit surcharge a "Program Fee" required by the school, capping the transaction amount to extract more Fees, or charging the Fee on recurring transactions (evading consumer notice altogether). *Id.* ¶¶ 9–10.[9]

Heartland's arguments for summary judgment should be rejected.

*First*, Heartland says that the many cases Plaintiffs cited to support a claim based on unlawful fees are inapplicable because they did not involve "card brand rules." Mot. at 11. Heartland describes the facts of each case and then assumes, with no support or citation, that this case must rest on identical facts or fail. That is not how the law works generally, much less the NJCFA in particular: the "history of the [NJCFA] is one of constant expansion of consumer protection[;]" courts "construe the [statute] broadly, not in a crabbed fashion." *Bosland*, 964 A.2d 741 at 748 (citation omitted). In any event, the analysis of what is unconscionable under the NJCFA is *always* "fact-specific and applied on a case-by-case basis[.]" *Mango v. Pierce-Coombs*, 851 A.2d 62, 69 (N.J. Super. Ct. App. Div. 2004).

---

[9] The network rules regulate fees to prevent merchants from manipulating consumers (*e.g.*, hiding the true price of their service in a transaction fee) or extracting fees under false pretenses (*e.g.*, without clear disclosure). *Id.* ¶¶ 35–38. But this is precisely what Heartland did, Dkt. 248-13 (Webster Rpt.) ¶¶ 57, 65–75, ██████████████████████ *See, e.g.*, Ex. 1 (Loch Dep.) at 54:10–25 (█████████████'). This is presumably why, to parents, Heartland falsely disclosed the Fee as a payment to the school district and blamed the deposit cap on the credit card companies. Dkt. 241-7 (Mot. Ex. F) at 370–71. ████████████████████████████ ████████████ *See* Ex. 1 (Loch Dep.) at 54:21–55:25; Ex. 2 (Schunk Dep.) at 109:15–10:6.

*Second*, Heartland argues that Plaintiffs' claims are nothing more than breach of contract. Even setting aside that Plaintiffs do not invoke contractual remedies under the network rules, "[c]onduct constituting a breach of contract may certainly present grounds for a consumer fraud claim," so long as "some aggravating circumstances" make the conduct unconscionable. *Akhtar v. JDN Props. at Florham Park, L.L.C.*, 2015 WL 751769, at *3–4 (N.J. Super. Ct. App. Div. Feb. 24, 2015). Qualifying circumstances include "bad faith," *Petri Paint Co. v. OMG Americas, Inc.*, 595 F. Supp. 2d 416, 421 (D.N.J. 2008), or "some element of deceptive conduct, explicit or implicit," such that the defendant's conduct "evince[s] a *capacity* to mislead." *Ciser v. Nestle Waters N. Am., Inc.*, 596 F. App'x 157, 161–62 (3d Cir. 2015).[10] Here, there is sufficient evidence to support findings of bad faith or that Heartland's conduct had the capacity to mislead.[11] (Heartland cites *Brockland v. Roundy's Ill., LLC*, 2022 WL 17082542 (N.D. Ill. Nov. 18, 2022) and *Pierre-Charles v. Consumer Portfolio Servs., Inc.*, 2018 WL 3425737 (D.N.J. July 16, 2018), but neither had anything to do with the NJCFA's "unlawful" prong—*Brockland* was about an Illinois statute, and *Pierre-Charles* is about the "misrepresentation" prong.)

---

[10] *See also, e.g.*, *Rapoport*, 617 F. Supp. 3d at 246–47 (finding "conduct in the performance of a contract . . . had a capacity to mislead" and so was actionable even though "Plaintiff has not identified any statement made by Defendant that is demonstrably false"); and *Akhtar*, 2015 WL 751769, at *4–5 ("A factfinder could find that the circumstances surrounding the breach were so egregious as to constitute" a CFA violation despite "no factual misrepresentation outside of the contractual term.").

[11] *See* Ex. 16 (Miceli Ex. 47) at 146065 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); and Ex. 5 (Orliss Ex. 13) at 24788 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

*Third*, Heartland argues that its conduct cannot be deemed "unconscionable" because "Plaintiffs are not unsophisticated or vulnerable." Mot. at 12–13. Heartland is welcome to argue to the jury that school parents are sophisticated consumers, justifying Heartland's conduct. There is no support for the argument that Plaintiffs are required to make a contrary showing to create a triable question of fact, but the evidence is there regardless. *See, e.g.*, Ex. 12 (HPS 157840) at Row 5982 ███████.[12]

*Fourth*, Heartland argues that Plaintiffs' claims fail because Heartland is not a "merchant" subject to the network rules. Mot. at 14–15. Plaintiffs' expert opines that Heartland is a "merchant." Dkt. 248-13 (Webster Rpt.) ¶¶ 50–64.[13] For the reasons explained in Plaintiffs' opposition to Heartland's motion to exclude Webster's opinions, Webster's opinion creates a fact question on this issue. Dkt. 240 at 19–20. Additionally, as explained there, even if Heartland is not a merchant, its Fees were still unlawful. *Id.*

---

[12] *See also, e.g.*, *id.* at Row 149 ██████████████████████████ ), Row 210 ███████████████████████████████ ), Row 3750 ██████████████████ █████████████████████████████████ ); and Ex. 17 (HPS 145822) ( ████████████████████████████████████ ).

[13] In particular, Webster explains why Heartland's designation of the school districts as the "merchant" is "plainly superficial," a sham. *Id.* ¶ 62. Heartland's position would have the school play patsy for Heartland's violations, "improperly processing Heartland's payments and improperly assessing convenience fees." *Id.* ¶ 61. Heartland ignores that Heartland conducts all of the functions of a merchant, *id.* ¶¶ 50–64, and that the Visa rules' (applicable to Plaintiffs' transactions) definition of merchant does not reference any "Merchant Agreement." *Id.* ¶ 24.

3002121.3

### B.    A jury can find causation.

Heartland's causation arguments echo those it made in opposition to class certification and should be rejected for the same reasons (Heartland does not address the cases Plaintiffs cited in that briefing). Plaintiffs' causation theory is simple: the network rules prohibited Heartland from charging Program Fees in the matter it did; as a result, Plaintiffs paid prohibited fees. This is exactly the causation found sufficient in other "improper fee" cases under the NJCFA. *See, e.g.*, *Katz*, 2010 WL 2539686, at *6 ("[T]he Complaint adequately alleges both ascertainable loss—the payment of allegedly improper fees—and that this loss was allegedly caused by Defendants as a result of their assessment of improper fees.").

Heartland argues that Plaintiffs must show that Heartland's conduct "had [a] bearing on their decision to purchase the product." Mot. at 16. This argument—"that Plaintiffs must show not only that defendants acted in a uniform manner, but also that plaintiffs responded in a sufficiently uniform fashion"—"misunderstands Plaintiffs' theories under the CFA." *Cashcall*, 333 F.R.D. at 352. How "class members reacted to the truth, if knowable" is relevant only where an NJCFA claim is "based on a misrepresentation or omission." *Id*. Where, as here, Plaintiffs' claims are "not premised on a misrepresentation or omission, but rather on the affirmative act of charging [improper fees]," how class members responded is "inapposite." *Id*.[14]

---

[14] *See also id*. at 352 ("Plaintiffs have [] shown that they can use common evidence to prove their CFA claims . . . the nearly identical, allegedly usurious loan agreements . . . caused an out of pocket loss in the form of usurious interest."); *see also Katz*, 2010 WL 2539686, at *6 ("[T]he Complaint

(Heartland's cases *were* premised on such theories. *Annecharico v. Raymour & Flanigan*, 2016 WL 7015615 at *6 (D.N.J. Nov. 30, 2016) ("fraudulent[] induce[ment]"); *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 178 (N.J. Super. Ct. App. Div. 2003) ("misleading [] advertisements").)

Heartland also argues (as it did on class certification) that Plaintiffs must show that harm is traceable to each way in which Heartland's Program Fee failed to conform with the network rules' requirements for a "convenience fee." This misconstrues Plaintiffs' theory. Plaintiffs say Heartland violated the network rules by charging fees that did not fall into the categories (convenience fees, surcharges) authorized by those rules. Heartland's defense is that its Fee is broadly consistent with the concept of a convenience fee. Plaintiffs' response is that the Program Fee is not a permitted convenience fee because it does not comply with the rules applicable to such fees. Heartland's charging of prohibited fees injured Plaintiffs because they paid the fees.[15]

### C. A jury can find ascertainable loss.

As with causation, Heartland's ascertainable loss arguments are the same it made in opposition to class certification. This element requires only that the alleged loss be "quantifiable or measurable," *Bosland*, 964 A.2d at 750 (citation omitted),

---

adequately alleges both ascertainable loss—the payment of allegedly improper fees—and that this loss was allegedly caused by Defendants as a result of their assessment of improper fees on purchasers of tickets."); *Heyert*, 70 A.3d at 700 ("The landlords' overcharge caused the tenants to lose money every month that they paid the illegal rent.").

[15] Heartland cites *Ardino v. Retrofitness, LLC*, 2019 WL 2181906 (N.J. Super. Ct. App. Div. May 21, 2019), but in that case, the relevant standard of conduct did not restrict fees. *See id.* at *10.

which Heartland's Fees are. Heartland argues that a Program Fee cannot constitute an "out of pocket loss," but the cases Plaintiffs cited foreclose that argument. *See, e.g.*, *Cashcall*, 333 F.R.D. at 352 ("usurious interest"); *Katz*, 2010 WL 2539686, at *6 ("improper fees").

Heartland says Plaintiffs must prove "expenses in addressing deficiencies in the service or product" or that a product is "worthless." Mot. at 20–21. But the cases Heartland cites involved claims about product quality and corresponding damages theories that the product was worth less than what was promised. *See Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 373–75 (D.N.J. 2015); *Annecharico*, 2016 WL 7015615, at *1. Plaintiffs' theory is not about the value of MSB, but rather about Heartland's improper tack-on fees. Under cases like *Bosland*, *Cashcall*, *Heyert*, and *Katz*, that is sufficient.[16]

## III.  <u>Summary judgment as to Plaintiffs' contract claim is improper.</u>

### A.  **Heartland promised to send the Program Fees to schools.**

The TOS said that "Your child's school receives the full payment." *See, e.g.*, Dkt. 241-7 (Mot. Ex. F) at 370. Heartland says that the TOS distinguishes between "program fee" and "payment." Mot. at 22–23. But Heartland omits the crucial sentence "Your school district may require a program fee or membership fee for your use of the Service." Dkt. 241-7 (Mot. Ex. F) at 371. These two statements together

---

[16] To the extent Heartland maintains that Plaintiffs must offset damages by the value they received, Plaintiffs respectfully refer the Court to their discussion of this issue in the class certification briefing. Dkt. 202 at 17–19; Dkt. 232 at 10. Heartland has the burden to prove offset. *See id.*

mean that the amounts parents pay go to the schools. That is how Plaintiffs and

other class members understood it,[17] and that is how Heartland explained it.[18] At

worst, the TOS are ambiguous. *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 507 (3d Cir.

2005). And ambiguities are interpreted against Heartland. *Maddy*, 80 F. Supp. 3d at

552.

### B. Heartland's breach harmed Plaintiffs.

Heartland claims that taking someone's property with a promise to deliver it

to a third party and then keeping it for oneself does not cause any harm. But "if a fee

is described in a contract as for a specific purpose," "then not using the fee for that

purpose . . . could constitute a breach." *Maor v. Dollar Thrifty Auto. Group, Inc.*, 303 F.

Supp. 3d 1320, 1325 (S.D. Fla. 2017) (collecting cases); *see also Costa v. Kerzner Int'l

Resorts, Inc.*, 2011 WL 2519244, at *4 (S.D. Fla. June 23, 2011) (same, where

"mandatory housekeeping gratuity [] fee" did not go to housekeeping staff); and

*Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1365 (S.D. Fla. 2018) ("[C]ausation and

damages are shown by the fact that Coleman parted with money for what should

have been a . . . pass-through charge, but was instead kept by CubeSmart.").

Plaintiffs' injury is the misuse of their property. Heartland's breach caused that

---

[17] *See, e.g.*, Ex. 18 (Murrey-Settle Dep.) at 160:6–9 ("I was told . . . the fees went to the school."); Ex. 19 (Story Dep.) at 106:15–21 (Heartland "said the school receives all your money."); and Ex. 20 (HPS 106854) ███████████████████████████████████████████████████.

[18] *See, e.g.*, Ex. 8 (Loch Ex. 75) at 43038 ███████████████████████████████████████████ ; Ex. 5 (Orliss Ex. 13) at 24789 ( ███████████████████████████████████████████; and Ex. 7 ███████████████████████████████████████████████.

injury. Heartland says that Plaintiffs must show that they "used MSB because they believed schools received the Fees." Mot. at 24. But Heartland cites no contract case evaluating causation under a subjective standard, and Plaintiffs know of none.

## C.     The jury can find restitution justified.

Heartland argues that no reasonable jury could find Heartland's breach material sufficient to support restitution.[19] But New Jersey courts weigh five factors in determining whether a breach is material; Heartland argues only one—Plaintiffs' reasonable expectations. *See Roach v. BM Motoring, LLC*, 155 A.3d 985, 991–92 (N.J. 2017). Whether Heartland's promise was part of the "benefit" Plaintiffs objectively expected is a question of fact (Heartland certainly thought it was important enough to lie about it). *See* Opp. at 19 nn. 17 & 18, *supra*. And other factors Heartland ignores support a finding of materiality, including whether Heartland's "behavior . . . comports with standards of good faith and fair dealing," the "likelihood" Heartland "will cure [its] failure," and the extent to which expectation damages are "inherent[ly] uncertain." *Norfolk*, 512 F.3d at 92–94.

## CONCLUSION

Plaintiffs respectfully request that Heartland's motion for summary judgment be denied.

---

[19] Heartland cites a 1964 case for the proposition a breach must be "total." That is not New Jersey law. *See, e.g.*, *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 94 (3d Cir. 2008).

May 14, 2024

*/s/ Jason L. Lichtman*

Jason L. Lichtman
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
212.355.9500
jlichtman@lchb.com

Reilly T. Stoler
Sarah D. Zandi
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
415.956.1000
rstoler@lchb.com
szandi@lchb.com

Kenneth S. Byrd
Andrew R. Kaufman
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
222 2nd Ave. South, Suite 1640
Nashville, TN 37201-2379
615.313.9000
kbyrd@lchb.com
akaufman@lchb.com

Brian W. Warwick, FBN: 0605573
Janet R. Varnell, FBN: 0071072
VARNELL & WARWICK, P.A.
1101 E. Cumberland Ave., Suite 201H, #105
Tampa, FL 33602
352.753.8600
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

On May 14, 2024, I caused to be electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will deliver the document to all counsel of record.

*/s/ Sarah D. Zandi*