# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MAX STORY, *et al., on behalf of themselves and all others similarly situated,*

        Plaintiffs,

v.

HEARTLAND PAYMENT SYSTEMS, LLC,

        Defendant.

No. 3:19-cv-724-TJC

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

## [REDACTED]

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

SUMMARY OF THE SETTLEMENT ............................................................. 2

LEGAL STANDARD ....................................................................................... 4

ARGUMENT ..................................................................................................... 4

I.     The Settlement is likely to be approved as fair, reasonable, and
       adequate. ................................................................................................. 4

       A.     The Class Representatives and Class Counsel have adequately
              represented the Class. ..................................................................... 5

       B.     The Settlement was negotiated at arm's length. ............................. 7

       C.     The Settlement provides exceptional relief. .................................... 8

              1.     The Settlement appropriately reflects the costs, risks, and
                     delay of litigation. ................................................................. 8

              2.     The method of providing relief is effective............................ 11

              3.     The proposed award of attorneys' fees raises no barrier to
                     preliminary approval............................................................. 11

              4.     There are no agreements between the parties other than
                     the Settlement........................................................................ 12

       D.     The Settlement treats Class Members equitably................................ 12

II.    The Settlement Class is likely to be certified............................................. 14

       A.     The class is adequately defined and clearly ascertainable. ................. 14

       B.     The class satisfies the four prerequisites of Rule 23(a). ...................... 14

              1.     The class is sufficiently numerous........................................... 14

              2.     There is at least one common question that will drive
                     resolution of this litigation..................................................... 15

              3.     Plaintiffs' claims are typical.................................................... 15

              4.     Plaintiffs and their counsel are adequate. ............................... 16

       C.     Common questions predominate.................................................... 16

       D.     A settlement class action is superior to individual lawsuits. .............. 17

**TABLE OF CONTENTS**
**(continued)**

Page

III.    The notice plan satisfies the requirements of Rule 23 and due process......... 18

CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................ 14, 18

*Ault v. Walt Disney World Co.*,
692 F.3d 1212 (11th Cir. 2012) ................................................ 15

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) .................................................. 5

*In re Brinker Data Incident Litig.*,
2021 WL 1405508 (M.D. Fla. Apr. 14, 2021), *vacated in part on other
grounds by Green-Cooper v. Brinker Int'l, Inc.*, 73 F. 4th 883 (11th Cir.
2023) ............................................................................. 14, 17, 18

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) ................................................... 16

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) .................................................. 12

*Carriuolo v. Gen. Motors Co.*,
823 F.3d 977 (11th Cir. 2016) .................................................. 18

*In re Checking Account Overdraft Litig.*,
2020 WL 4586398 (S.D. Fla. Aug. 10, 2020) .............................. 11

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ................................................................ 10

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ................................................................ 18

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) ................................................ 13

*Faught v. Am. Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) ................................................ 18

# TABLE OF AUTHORITIES
## (continued)

Page

*George v. Acad. Mortg. Corp. (UT)*,
369 F. Supp. 3d 1356 (N.D. Ga. 2019) ............................................. 6

*Gibbs Props. Corp. v. CIGNA Corp.*,
196 F.R.D. 430 (M.D. Fla. 2000) .................................................. 17

*Grant v. Ocwen Loan Serv., LLC*,
2019 WL 367648 (M.D. Fla. Jan. 30, 2019) ...................................... 5

*Hanley v. Tampa Bay Sports & Ent't LLC*,
2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) ................................... 7

*In re Health S. Corp. Sec. Litig.*,
334 F. App'x 248 (11th Cir. 2009) ................................................ 12

*Ingram v. The Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) .................................................... 7

*Jabbari v. Farmer*,
965 F.3d 1001 (9th Cir. 2020) ................................................. 14, 17

*Johnson v. NPAS Sols., LLC*,
975 F.3d 1244 (11th Cir. 2020), *cert denied*, 143 S. Ct. 1746 (2023) ...................... 2

*Kuehn v. Cadle Co., Inc.*,
245 F.R.D. 545 (M.D. Fla. 2007) .................................................. 15

*Kukorinis v. Walmart, Inc.*,
2024 WL 3226772 (M.D. Fla. June 28, 2024) ................................... 4

*Lyttle v. Trulieve, Inc.*,
2021 WL 3602996 (M.D. Fla. Aug. 13, 2021) ................................. 16

*Morgan v. Public Storage*,
301 F. Supp. 3d 1237 (S.D. Fla. 2016) .......................................... 19

*Peterson v. Am. Gen. Life Ins. Co.*,
2019 WL 11093816 (M.D. Fla. Oct. 22, 2019) ................................. 5

*Ressler v. Jacobson*,
822 F. Supp. 1551 (M.D. Fla. 1992) ................................................... 6

*Roundtree v. Bush Ross, P.A.*,
2015 WL 5559461 (M.D. Fla. Sept. 18, 2015)............................................ 18, 20

*Stanaford v. Genovese*,
2015 WL 4930568 (S.D. Fla. Aug. 17, 2015) ................................................. 17

*In re: TikTok, Inc., Consumer Privacy Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) ............................................................. 13

*In re Titanium Dioxide Antitrust Litig.*,
2013 WL 5182093 (D. Md. Sept. 12, 2013)..................................................... 13

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........................................................................................ 16

*In re U.S. Oil and Gas Litig.*,
967 F.2d 489 (11th Cir. 1992).......................................................................... 4

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009)....................................................................... 17

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022) ........................................................................................ 13

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................................ 15

**Statutes**

9 U.S.C. § 16............................................................................................................. 10

N.J.S.A. § 56:8-19 .................................................................................................... 10

**Court Rules**

Fed. R. Civ. P. 23............................................................................................*passim*

# TABLE OF AUTHORITIES
## (continued)

**Other Authorities**

United State Courts, *U.S. Courts of Appeals – Median Times for Cases Terminated on the Merits* (Sept. 30, 2023) ........................................................... 10

# INTRODUCTION

This has been a hard-fought case involving more than five years of litigation, including extensive fact and expert discovery.[1] Following the Parties' argument about experts, class certification, and summary judgment, the Court strongly encouraged the Parties to resolve their different perspectives, emphasizing that if Plaintiffs survived summary judgment, it would only be "by the skin of the plaintiffs' teeth." Following the Court's guidance, the parties mediated with Hunter Hughes, one of the country's most respected mediators. While the Parties were unable to reach agreement at their in person mediation, negotiations continued over phone and e-mail, and the Parties ultimately agreed to a mediator's proposal from Mr. Hughes, for an all-cash, non-reversionary common fund of $18,250,000.

This is an excellent result for the proposed class considering the expense, risk, and delay of further litigation. Particularly where, as here, those risks were laid out not only in extensive class certification and merits briefing, but by the Court itself.

Plaintiffs respectfully request that the Court: (1) find that it will likely be able to approve the Settlement; (2) find that it will likely be able to certify the Settlement Class; (3) approve the notice plan and appoint the parties' selected Settlement Administrator, Eisner Advisory Group LLC (and thereby direct notice to the Class); (4) direct that each potential Class Member who wishes to be excluded from the Settlement Class timely respond to the Class Notice in writing pursuant to the notice

---

[1] Capitalized terms, unless otherwise stated, are defined in the Settlement Agreement, which is attached as Exhibit ("Ex.") A.

plan, or else be bound by the Final Approval Order and Final Judgment; (5) establish a schedule for a final approval hearing and attendant dates as set forth in the Proposed Order Granting Preliminary Approval of Class Action Settlement (attached as Ex. 1 to Ex. A); and (6) permit Plaintiffs to submit the foregoing Proposed Order, pursuant to Local Rule 3.01(j).

## SUMMARY OF THE SETTLEMENT

The Settlement (Ex. A) calls for Heartland Payment Systems, LLC ("Heartland") to create a non-reversionary cash settlement fund of $18,250,000 to compensate the following Settlement Class:

> All natural persons who enrolled in MySchoolBucks and paid Program Fees to Heartland on credit or debit card "Meals" transactions between June 18, 2013 and July 31, 2019, except those whose last transaction occurred before January 1, 2015.

This class definition reflects a slightly modified version of the definition proposed in Plaintiffs' class certification motion. Dkt. 202 at 2.

The Settlement Fund will be distributed to valid claimants based on the amount of Program Fees they paid, after deduction of the costs of notice and claims administration and attorneys' fees and expenses.[2] Under no circumstances will any money revert to Heartland.

---

[2] Currently, the Eleventh Circuit prohibits class representative service awards. *See Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1259–61 (11th Cir. 2020), *cert denied*, 143 S. Ct. 1746 (2023). The Settlement provides that, if there is a change in the law, Plaintiffs may seek service awards. If that change occurs before Plaintiffs' motion for attorneys' fees is due, then any awards approved by the Court may be paid from the Settlement Fund.

The Settlement Administrator was selected after a competitive big process that maximized value for the Class. Declaration of Jason L. Lichtman ISO Mot. for Prelim. Approval of Class Action Settlement ("Lichtman Decl.") ¶ 12. Notice will be provided directly to Class Members using the contact information each Class Member provided Heartland to use MySchoolBucks. Ex. A § IV(C)(1). The Settlement Administrator will send email notice to all Class Members, and mailed notice to those for whom email addresses are unavailable, or whose email addresses in Heartland's records send bounce-backs. *Id.* § IV(C)(1)(a)–(b). The Settlement Administrator will also establish a Settlement Website to inform members of the Settlement Class of the Settlement Agreement's terms and members' rights, dates and deadlines, and related information, including, in .pdf format, a long form notice. *Id.* § IV(C)(1)(c).

Because Heartland has information regarding how much Class Members paid in Program Fees, the claims process will be streamlined. Class Members need only confirm they are members of the Class, that they desire to submit a claim in the Settlement, and select a manner of receiving payment. *Id.* § IV(D)(3).[3]

Class Members who do not exclude themselves from the Class will be bound by a Released Claims provision specifically tailored to the Program Fees at issue in his matter. *Id.* § VII.

---

[3] Plaintiffs considered making automatic payments to the method of payment used to pay Program Fees, but deemed this option impractical given that the Class Period dates back to 2013. Lichtman Decl. ¶ 14.

## LEGAL STANDARD

Rule 23(e), as amended in December 2018, codifies a two-step process of class action settlement approval. The first step is a preliminary fairness determination where the parties submit the proposed terms of settlement to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A).

The amended Rule 23 calls for front-loaded scrutiny of a proposed settlement so that any issues are identified before notice goes out to the class. Grounds for class notice exist where the parties show that "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The "Rule 23(e) analysis should be informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Kukorinis v. Walmart, Inc.*, 2024 WL 3226772, at *4 (M.D. Fla. June 28, 2024) (citation and alteration omitted); *see also In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits.").

## ARGUMENT

### I.     The Settlement is likely to be approved as fair, reasonable, and adequate.

In determining whether a settlement is fair, reasonable, and adequate, the Court considers whether:

> (A)     the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Those factors, which encompass the "analogous" *Bennett* factors previously considered by the Eleventh Circuit, weigh in favor of approval. *Grant v. Ocwen Loan Serv., LLC*, 2019 WL 367648, at *4–5 (M.D. Fla. Jan. 30, 2019) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

## A.   <u>The Class Representatives and Class Counsel have adequately represented the Class.</u>

Under the first Rule 23(e)(2) factor, courts consider whether the class representatives and class counsel have adequately represented the Class. Courts assessing this factor ask "whether class counsel and plaintiffs 'had an adequate information base' before negotiating and entering into the settlement." *Peterson v. Am. Gen. Life Ins. Co.*, 2019 WL 11093816, at *5 (M.D. Fla. Oct. 22, 2019) (quoting Fed. R. Civ. P. 23(e)(2)(A), advisory comm. n., 2018 amendments).

Here, Plaintiffs entered mediation only after more than 1.5 years of active discovery. Lichtman Decl. ¶ 3. Heartland produced, and Plaintiffs reviewed, more than 12,600 documents and data files. *Id.* Plaintiffs deposed nine Heartland

witnesses, as well as the company itself under Rule 30(b)(6). *Id*. Plaintiffs responded to 21 requests for production, 29 interrogatories, and 24 requests for admission, and both sat for deposition. *Id*.

Expert discovery was extensive. Plaintiffs produced three experts and five reports on the topics of Heartland's compliance with the network rules, the reliability of Heartland's survey evidence, and the source code produced by Heartland for its MySchoolBucks website. *Id*. Heartland produced three experts and three reports in response. *Id*. Plaintiffs deposed all of Heartland's experts. *Id*.

This case also included complete motion practice. Heartland filed three motions to dismiss, a motion for judgment on the pleadings, and a motion for injunctive relief. Dkts. 12, 62, 82, 97, and 118. Plaintiffs also filed one motion to compel discovery. Dkt. 182. Further, the Parties fully briefed a motion for class certification, a motion for summary judgment, and two *Daubert* motions, culminating in a multi-hour hearing and oral argument on July 17, 2024. Dkts. 202, 221, 222, and 241.

In sum, the parties conducted enough discovery to be able to determine the "probability of [their] success on the merits, the range of possible recovery," and "the complexity, expense, and likely duration of the litigation" before negotiating the settlement. *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1369 (N.D. Ga. 2019); *accord Ressler v. Jacobson*, 822 F. Supp. 1551, 1554–55 (M.D. Fla. 1992).

**B.** __The Settlement was negotiated at arm's length.__

Under the second Rule 23(e)(2) factor, courts examine whether the parties negotiated the settlement at arm's length. Here, the Settlement Agreement resulted from good-faith, arm's-length settlement negotiations under the supervision of Mr. Hughes, a well-respected mediator (Lichtman Decl. ¶ 8). *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion.").

Plaintiffs and Heartland submitted detailed mediation submissions setting forth their respective views as to the strengths of their cases. Lichtman Decl. ¶ 8. And negotiations were always adversarial and often contentious. *Id.* In fact, the negotiations failed during the in-person session in November 2024. *Id.* Only after Mr. Hughes made a take-or-leave mediator's proposal did the parties reach agreement. *Id.* ¶ 9.

These facts support preliminary approval. *See, e.g.*, *Hanley v. Tampa Bay Sports & Ent't LLC*, 2020 WL 2517766, at *3 (M.D. Fla. Apr. 23, 2020) (approving settlement where "the parties aggressively litigated this case and participated in a full day mediation session in front of a well-respected mediator, and only after continued settlement discussions following mediation did they reach terms on a proposed class settlement").

## C.    The Settlement provides exceptional relief.

Rule 23(e)(2)(C) requires the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) and any agreement [made in connection with the proposal]."

Here, the Settlement provides $18,250,000 in non-reversionary cash (Lichtman Decl. ¶ 10) for the benefit of approximately ████████ Class Members. Dkts. 223 at 7, 226-6 at 254:7–16. This is a fantastic result in the abstract, and even more so when measured against Rule 23(e)(2)(C)'s concerns. Lichtman Decl. ¶ 11.

### 1.    The Settlement appropriately reflects the costs, risks, and delay of litigation.

The parties did not need to speculate as to the risks of continued litigation; the Court made them crystal clear at the June 2024 hearing. The Court explained it was "inclined" "to grant class certification," but that summary judgment was "50/50 and pick them," with the Court expressing "some skepticism about" Plaintiffs' core legal "theory" and warning that any denial of summary judgment would be "by the skin of the plaintiffs' teeth." 7/17/24 H'rg Tr. at 96:10–103:9.

The total estimated Program Fees paid for the Class is $██████████ Dkt. 202 at 2–3. But Plaintiffs conceded that, under either an NJCFA or breach of contract claim, Heartland was entitled to a credit for the "interchange fees" it paid to credit

card companies. *See* Dkt. 202 at 19 & n.11. The data Heartland produced shows those fees average about ███████ per year. Dkts. 202-10, 202-36. So that reduces maximum damages to $███████████, assuming zero risk of loss at class certification, arbitration, or summary judgment.

But we know those risks are not zero. The Court has explained that Plaintiffs face a 50/50 chance on summary judgment. 7/17/24 H'rg Tr. at 101:7–17. No trial is a sure thing, and it's fair the assume a 50/50 chance the jury agrees with this Court's suggestion that Heartland's violation of the network rules did not rise to the level of unconscionable commercial conduct in violation of the NJCFA, and that Heartland did not breach its contract by charging a disclosed fee. Applying those two factors alone reduces the value of the case to approximately $███████

The arbitration clause—to which approximately 60% of the class agreed, Dkt. 223 at 7, presents further risk. Although the Court expressed skepticism about the circumstances surrounding Heartland's implementation of the arbitration clause, 7/17/24 H'rg Tr. at 33:20–36:17, 61:23–63:14, the Court earlier denied a motion to enjoin Heartland's communications imposing the clause, explaining that "[c]onsidering the totality of the circumstances, the Court does not find that Heartland's communications have misled or coerced putative class members into waiving their rights in this litigation." Dkt. 75 at 11–12. Reducing damages by a 50/50 chance that 60% of the Class is evicted from court yields $███████, comfortably in range of the agreed Settlement. And there is at best an 80% chance

that the Eleventh Circuit would uphold such a verdict, leading to an expected value of $███████, nearly the exact same amount as this Settlement.

To be sure, if Plaintiffs succeed on their NJCFA claim, damages would be trebled. N.J.S.A. § 56:8-19. But the Court (or a jury, or the Eleventh Circuit) could determine that the NJCFA claim does not survive, leaving only the single-damage contract claims. Another risk unique to that claim is the New Jersey court system. As Heartland has emphasized repeatedly, no case from that court has endorsed NJCFA liability on this specific fact pattern. And while Plaintiffs maintained no such case is required, at any time the New Jersey courts could issue an appellate opinion on a sufficiently analogous question to torpedo Plaintiffs' case.

Finally, the Settlement appropriately accounts for the inevitable delay between now and a judgment (and the millions of dollars in costs that would be expended), especially considering the interlocutory appeal and mandatory stay from any order denying a motion to compel arbitration. *See* 9 U.S.C. § 16(a) (authorizing interlocutory appeal of orders denying motions to compel arbitration); *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743–44 (2023) (holding that district courts must stay proceedings pending such an appeal); United State Courts, *U.S. Courts of Appeals – Median Times for Cases Terminated on the Merits* (Sept. 30, 2023) (median of 9.4 months for Eleventh Circuit to resolve appeal).[4]

---

[4] *Available at*
https://www.uscourts.gov/sites/default/files/data_tables/jb_b4_0930.2023.pdf.

In all, the costs, risks, and delay attendant to this case demonstrate the Settlement is fair, reasonable, and adequate. *See In re Checking Account Overdraft Litig.*, 2020 WL 4586398, at *11 (S.D. Fla. Aug. 10, 2020) ("Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot be seen as anything except a fair compromise.").

### 2. The method of providing relief is effective.

The "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). This Settlement proposes the gold standard in class member relief: non-reversionary cash payments. This claims process, unlike many consumer settlements, does not require Class Members to scour through emails or receipts to figure out how much money they paid the Defendant; Heartland's records will supply that information. Class Members need provide only their contact information, confirmation they are members of the Class, and affirmations that they wish to make claims. No documentary evidence is required.

### 3. The proposed award of attorneys' fees raises no barrier to preliminary approval.

The "terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel will

seek an award of fees of a reasonable percentage of the common fund, the approach required in this Circuit. *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991). As required by Rule 23(h), the Class will be noticed of the amount requested and given the opportunity to object before the Court awards any fees. And any unawarded fees will be paid to the Class.

4. **There are no agreements between the parties other than the Settlement.**

No side agreements required to be identified under Rule 23(e)(3) exist. This provision is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e), advisory committee n., 2003 amendments. Plaintiffs have not entered into any such agreements. The only separate agreement extant is that containing the opt-out threshold necessary to trigger Heartland's right to terminate the settlement. Such agreements are not controversial and are typically confidential and not filed in the public record. *See, e.g.*, *In re Health S. Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the [termination] provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.").

D. **The Settlement treats Class Members equitably.**

The final factor for approval is whether the Settlement treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does: all

Class Members have the same right to a pro rata share of the non-reversionary fund, scaled relative to each Class Member's damages (i.e., the total Program Fees they paid).

This includes Class Members potentially subject to Heartland's arbitration clause. This is appropriate for several reasons. First, no court has ever decided that the arbitration clause is enforceable. Second, an arbitration agreement, whatever its practical effect on a person's ability to enforce their claims, does not "alter or abridge substantive rights; it merely changes how those rights will be processed." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022). And it is those substantive rights Class Members are compromising in exchange for the Settlement payments. Third, courts routinely approve class settlements that compensate class members equally, notwithstanding that some class members have stronger legal claims than others. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1276–77 (11th Cir. 2021) (approving data breach settlement compensating class members uniformly even though "some class members had state statutory damages claims while others did not"). This is particularly so where the differences reflect affirmative defenses like arbitration, not the underlying liability elements. *See In re: TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1085–86 (N.D. Ill. 2021) (approving class settlement where defendant contended many class members were subject to arbitration, even where objector contended that class member potentially not subject to arbitration "should receive greater compensation"); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 5182093, at *5 (D. Md. Sept. 12, 2013) (including those who signed

arbitration agreements in the settlement class and preliminarily approving settlement).

## II.   The Settlement Class is likely to be certified.

The Parties have already submitted many pages on the question of whether this Class meets the Rule 23 requirements, and the Court has indicated its inclination to certify. 7/17/24 H'rg Tr. at 99:24–25. The question is only simpler now. Settlement "is a factor in the calculus," because it removes the requirement that the Class be manageable for trial, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 622 (1997), and in particular "obviate[s] the need to litigate individual issues . . . making common questions more important in the relative analysis." *Jabbari v. Farmer*, 965 F.3d 1001, 1005–06 (9th Cir. 2020) (citation and alteration omitted).

### A.   The class is adequately defined and clearly ascertainable.

The class "membership is capable of determination" because class members are all identified in Heartland's own database. *In re Brinker Data Incident Litig.*, 2021 WL 1405508, at *6 (M.D. Fla. Apr. 14, 2021), *vacated in part on other grounds by Green-Cooper v. Brinker Int'l, Inc.*, 73 F. 4th 883 (11th Cir. 2023).

### B.   The class satisfies the four prerequisites of Rule 23(a).

#### 1.   The class is sufficiently numerous.

Rule 23(a)(1) requires a class be "so numerous that joinder of all members is impracticable." Here, parents from more than ███ school districts paid Program Fees within the class period. Dkts. 202 at 9, 202-10. There should be no dispute

about numerosity, even acknowledging the slightly reduced scope of the Class. *See Kuehn v. Cadle Co., Inc.*, 245 F.R.D. 545, 548 (M.D. Fla. 2007).

### 2. There is at least one common question that will drive resolution of this litigation.

A common question is one "capable of classwide resolution" such that a "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Even "a single common question will do." *Id.* at 359 (citation and alteration omitted). Plaintiffs' claims raise significant common questions in droves, for example, whether the Program Fees were permitted by the credit card rules, and whether Heartland had a contractual obligation to remit Program Fees to the schools.

### 3. Plaintiffs' claims are typical.

Typicality is satisfied "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (citation omitted). Here, they do and are: Plaintiffs paid Program Fees like every other Class Member. Dkts. 202-1 and 202-2. Plaintiffs previously explained why the inclusion of Mastercard users does not raise any typicality concerns, Dkt. 202 at 10. That fact is now proven, as Plaintiffs negotiated a Settlement that treats all credit and debit card users alike.

### 4. Plaintiffs and their counsel are adequate.

The adequacy inquiry asks: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Lyttle v. Trulieve, Inc.*, 2021 WL 3602996, at *5 (M.D. Fla. Aug. 13, 2021) (citation and alteration omitted). Here, there are no conflicts, and the representatives and their counsel have proven they have adequately prosecuted the action and will continue to do so. Lichtman Decl. ¶¶ 3–7; Dkts. 202-1-4 (attesting to no conflicts); Declaration of Lisa R. Considine ISO Mot. for Prelim. Approval (same).

### C. Common questions predominate.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation and alteration omitted). Predominance is not "determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). Rather, "[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453 (citation and alteration omitted).

Here, Plaintiffs have explained that the key issues that drive the litigation are common, including Heartland's conduct in charging Program Fees, the relevant network rules, and the meaning of Heartland's Terms of Service. *See* Dkt. 202 at 12–

17. Unlike a typical class settlement where the Rule 23 issues are first discussed in a settlement approval motion, here we had a fully-briefed and argued class certification motion, opposed by able defense counsel on a full record. Plaintiffs respectfully submit that a review of that briefing and that record shows that Heartland failed to identify even a single significant individual issue that cast any doubt on the propriety of class certification.

Now, with the Class being proposed only for settlement purposes, the calculus is even easier. The reason an individual issue can predominate is that "after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points," *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (citation omitted), thus requiring "individual 'mini-trials,'" *Gibbs Props. Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 441 (M.D. Fla. 2000). But a settlement means no trial, mini or otherwise, and so "obviate[s] the need to litigate individual issues . . . making common questions more important in the relative analysis." *Jabbari*, 965 F.3d at 1005–06 (citation and alteration omitted); *see also, e.g.*, *Stanaford v. Genovese*, 2015 WL 4930568, at *4–5 (S.D. Fla. Aug. 17, 2015) (explaining, for example, that a "Section 10(b) settlement class does *not* have to satisfy the fraud-on-the-market presumption" otherwise required for a litigation class).

### D.   A settlement class action is superior to individual lawsuits.

Rule 23(b)(3) provides four factors pertinent to superiority. *Brinker*, 2021 WL 1405508, at *13. In addition, superiority is easier to find where claims are low-value.

*See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016). Here, Plaintiffs previously showed (and Heartland never disputed) that class action is superior because "significant litigation has proceeded, and allowing class members to bring claims as one class will provide an efficient method of adjudication while continuing to move along this [] [five]-year-old case." *Brinker*, 2021 WL 1405508, at *13. Now, this is only more true because the factor identified in Rule 23(b)(3)(D)—"whether the case, if tried, would present intractable management problems"—is not a consideration when settlement-only certification is requested, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

III. **The notice plan satisfies the requirements of Rule 23 and due process.**

Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice of a proposed settlement to class members must be the "best notice that is practicable," Fed. R. Civ. P. 23(c)(2)(B), meaning "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (alteration omitted).

The "adequacy of class notice 'is measured by reasonableness,'" and "[t]he notice must provide the class members with 'information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action.'" *Roundtree v. Bush Ross, P.A.*, 2015 WL 5559461, at *1 (M.D. Fla. Sept. 18, 2015) (quoting *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011)).

Here, the Settlement provides a robust notice program involving direct e-mail notice (Ex. A § IV(C)(1)(a)), which is reasonable and effective because these Class Members already agreed to communicate with this Defendant over email about the transactions relevant to this case. *See, e.g.*, *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1245 (S.D. Fla. 2016) (approving e-mail as primary notice where the defendant "primarily communicates with its customers through email and had the email address of more than 90% of the Settlement Class members" and the notice vendor used "industry-recognized best practices" "to avoid spam filters"). The Settlement Administrator will use best email practices including "unsubscribe" links, administrator contact information, and the maintenance of multiple IP addresses with strong sender reputations to avoid spam filters. Lichtman Decl. ¶ 13. For those without email or for whom email bounces back, the Settlement Administrator will send mailed notice. Ex. A § IV(C)(1)(b); *see also Morgan*, 301 F. Supp. 3d at 1245–46 (approving similar). And notice will be supplemented with a dedicated settlement website, including in pdf format a long form notice, and a toll-free telephone number, all operated by an experienced and vetted Settlement Administrator— Eisner Advisory Group LLC. Ex. A § IV(C)(1)(c); Lichtman Decl. ¶ 12.

The Class Notice (Exs. B–D) complies with Rule 23 and due process because it informs Class Members of: (1) the nature of the action; (2) the essential terms of the Settlement, including the definition of the Class and claims asserted; (3) the binding effect of a judgment if the Class Member does not request exclusion; (4) the process to object to, or to be excluded from, the Class, including the time and

method for objecting or requesting exclusion and that Class Members may make an appearance through counsel; (5) information regarding Class Counsel's request for an award of attorneys' fees and expenses; (6) the procedure for submitting claims to receive Settlement benefits for Class Members from whom claims are necessary; and (7) how to make inquiries and obtain additional information. Fed. R. Civ. P. 23(c)(2)(B); *Roundtree*, 2015 WL 5559461, at \*1 ("The class notice provides reasonably adequate information about the nature of the action and the class settlement, and provides sufficient details for class members to determine whether to remain in the class or opt out. Accordingly, the form and content of the class notice are approved.").

## CONCLUSION

Plaintiffs respectfully request that the Court: (1) find that it will likely be able to approve the Settlement; (2) find that it will likely be able to certify the Settlement Class; (3) approve the notice plan and appoint the parties' selected Settlement Administrator, Eisner Advisory Group LLC (and thereby direct notice to the Class); (4) direct that each potential Class Member who wishes to be excluded from the Settlement Class timely respond to the Class Notice in writing pursuant to the notice plan, or else be bound by the Final Approval Order and Final Judgment; (5) establish a schedule for a final approval hearing and attendant dates as set forth in the proposed order (attached to Ex. A as Ex. 1); and (6) permit Plaintiffs to submit the proposed order pursuant to Local Rule 3.01(j).

April 1, 2025              */s/ Jason L. Lichtman*

Jason L. Lichtman
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592
jlichtman@lchb.com

Sarah D. Zandi
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008
szandi@lchb.com

Kenneth S. Byrd
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
222 2nd Ave. South, Suite 1640
Nashville, Tennessee 37201-2379
Telephone: 615.313.9000
Facsimile: 615.313.9965
kbyrd@lchb.com

Brian W. Warwick, FBN: 0605573
Janet R. Varnell, FBN: 0071072
VARNELL & WARWICK, P.A.
1101 E. Cumberland Ave., Suite 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

*Attorneys for Plaintiffs*

## LOCAL RULE 3.01(g) CERTIFICATION

Under Middle District of Florida Local Rule 3.01(g), I, Sarah D. Zandi, certify that Plaintiffs' counsel have conferred with counsel for Defendant, and Defendant does not oppose the requested relief for settlement purposes only.

## CERTIFICATE OF SERVICE

On April 1, 2025, I caused to be electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will deliver the document to all counsel of record.

*/s/ Sarah D. Zandi*