## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MAX STORY, *et al., on behalf of*
*themselves and all others similarly situated,*

        Plaintiffs,

v.

HEARTLAND PAYMENT SYSTEMS,
LLC,

        Defendant.

No. 3:19-cv-724-TJC

## PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL, PERMISSION TO PAY UNTIMELY CLAIMANTS, AND AWARD OF ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY ........................................... 2

SUMMARY OF THE SETTLEMENT ............................................................. 2

LEGAL STANDARD ...................................................................................... 4

ARGUMENT ................................................................................................... 5

I.      The Class Notice Plan was implemented successfully .................................. 5

II.     Final approval of the Settlement is appropriate because it is a fair,
        reasonable, and adequate resolution of this case ........................................... 7

        A.      Rule 23(e)(2)(A): The Class Representatives and Class Counsel
                have and will continue to zealously represent the Class (*Bennett*
                factors four and six). .......................................................................... 8

        B.      Rule 23(e)(2)(B): The Settlement was the result of informed,
                arm's length negotiations. ................................................................ 10

        C.      Rule 23(e)(2)(C): The Settlement provides strong relief .................... 11

                1.      Rule 23(e)(2)(C)(i): The Settlement mitigates the costs,
                        risks, and delay of litigation (*Bennett* factors one, two, and
                        three) .......................................................................................... 12

                2.      Rule 23(e)(2)(C)(ii): The method of distributing relief is
                        simple and effective .................................................................. 13

                3.      Rule 23(e)(2)(C)(iii): The proposed award of attorneys'
                        fees raises no barrier to preliminary approval. ........................ 15

                4.      Rule 23(e)(2)(C)(iv): There are no agreements between the
                        Parties other than the Settlement bearing on final
                        approval. .................................................................................... 15

        D.      Rule 23(e)(2)(D): The Settlement treats Class Members equitably ..... 15

        E.      Class Members' participation in and support for the Settlement is
                overwhelming (*Bennett* factor 5) ...................................................... 16

III.    All criteria for certification of the Settlement Class are satisfied. ............... 18

CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Begley v. Ocwen Loan Servicing, LLC*,
2017 WL 11672899 (N.D. Fla. Nov. 22, 2017) ................................................. 5

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984)........................................................................7, 16

*Canupp v. Liberty Behavioral Health Corp.*,
417 F. App'x 843 (11th Cir. 2011) ..................................................................... 7

*Cotter v. Checkers Drive-In Restaurants, Inc.*,
2021 WL 3773414 (M.D. Fla. Aug. 25, 2021)..............................................9, 10

*Grant v. Ocwen Loan Serv., LLC*,
2019 WL 367648 (M.D. Fla. Jan. 30, 2019)................................................*passim*

*Hall v. Bank of America, N.A.*,
2014 WL 7184039 (S.D. Fla. Dec. 17, 2014).................................................... 16

*Harvey v. Hammel & Kaplan Co., LLC*,
2020 WL 7138568 (M.D. Fla. Dec. 7, 2020) (Corrigan, J.).........................*passim*

*Juris v. Inamed Corp.*,
685 F.3d 1294 (11th Cir. 2012)........................................................................... 5

*Kukorinis v. Walmart, Inc.*,
2021 WL 8892890 (S.D. Fla. Sept. 20, 2021) .................................................. 10

*Kukorinis v. Walmart, Inc.*,
2024 WL 3226772 (M.D. Fla. June 28, 2024) .................................................... 7

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ........................................................................................... 5

**Statutes**

Fed. R. Civ. P. 23 ................................................................................................ 5

Fed. R. Civ. P. 23(a)........................................................................................... 18

## TABLE OF AUTHORITIES
### (continued)

Page

Fed. R. Civ. P. 23(b) ........................................................................................... 5

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 18

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................. 5, 6

Fed. R. Civ. P. 23(e) ................................................................................. 4, 7, 16

Fed. R. Civ. P. 23(e)(1) ...................................................................................... 5

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................. 5

Fed. R. Civ. P. 23(e)(2) ............................................................................. 5, 7, 8

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................. 8

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................... 10

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C)(i) ...................................................................... 12, 13

Fed. R. Civ. P. 23(e)(2)(C)(ii) ......................................................................... 13

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................................ 15

Fed. R. Civ. P. 23(e)(2)(C)(iv) ........................................................................ 15

Fed. R. Civ. P. 23(e)(2)(D) ......................................................................... 15, 16

Fed. R. Civ. P. 23(e)(5) ...................................................................................... 5

**Court Rules**

Local Rule 3.01(j) ......................................................................................... 2, 18

**Other Authorities**

William B. Rubenstein, et al., *Newberg on Class Actions* § 13:49 (5th ed. 2012) ............................................................................................................. 10

## INTRODUCTION

Plaintiffs respectfully move for final approval of the Settlement with Heartland Payment Systems, LLC ("Heartland"), which represents an outstanding result for the Settlement Class.[1] The Settlement brings this challenging litigation—involving substantial fact and expert discovery, complete motion practice, protracted settlement negotiations, and a litany of risks at every stage—to a successful close. It provides an all-cash, non-reversionary common fund of $18,250,000 to Class Members, thereby eliminating the significant risks of non-recovery and further delay.

The Settlement elicited near-universal Class Member support: 173,333 timely, valid claims, only five opt-out requests, and *no* objections to total relief to be provided to the class, the total amount that Heartland will pay, or the requested attorneys' fees and costs. The lone objection—involving the appropriate recipient in the unlikely event that there is any undistributed money to class members—was already overruled by the Court, although, the Parties have agreed to the objector's request because it does not harm the rest of the class to do so, whereas permitting the objector to hold up the settlement on appeal would be a significant detriment to them.

Plaintiffs now seek final approval, so that the benefits promised in this Settlement can flow to Class Members.  Plaintiffs respectfully request that the Court: (1) certify the Settlement Class; (2) grant the Parties' request to permit Class

---

[1] Capitalized terms, unless otherwise stated, are defined in the Settlement Agreement. Dkt. 271-2.

Members to submit late-filed claims; (3) grant final approval to the Settlement; (4) approve an award of attorneys' fees in the amount of $4,927,500 (27 percent of the total value of the settlement), plus reimbursement of litigation expenses in the amount of $547,500; and (5) permit Plaintiffs to submit the Proposed Order and Proposed Final Judgment attached hereto, pursuant to Local Rule 3.01(j).

## BACKGROUND AND PROCEDURAL HISTORY

Class Counsel detailed the procedural history of this litigation most recently in the motion for preliminary approval of this Settlement and in the petition for attorneys' fees and expenses. *See* Dkts. 271, 280. These motions and accompanying declarations recount the complexity and risks associated with this litigation, and the hard-fought, six-year history of the case through a comprehensive pre-filing investigation, three separate pleadings challenges, extensive motion practice, fact and expert discovery lasting 1.5 years, class certification, and summary judgment. *Id.* That work made it possible for the Parties to participate in months-long settlement negotiations, including with the assistance of one of the country's most well-respected mediators, Mr. Hunter Hughes, which produced the proposed Settlement. *Id.* At the preliminary approval phase, the Court considered this Settlement and found that it satisfied all relevant criteria. Dkt. 281.

## SUMMARY OF THE SETTLEMENT

As detailed in Plaintiffs' motion for preliminary approval (Dkt. 271), the Settlement (Dkt. 271-2) calls for Heartland Payment Systems, LLC ("Heartland") to

create a non-reversionary cash settlement fund of $18,250,000 to compensate the

following Settlement Class:

> All natural persons who enrolled in MySchoolBucks and paid Program Fees
> to Heartland on credit or debit card "Meals" transactions between June 18,
> 2013 and July 31, 2019, except those whose last transaction occurred before
> January 1, 2015.

Dkt. 271-2 §§ II(A), III(A). The Settlement Fund will be equitably distributed to valid

claimants based on the amount of Program Fees they paid, after deduction of the

costs of notice and claims administration and attorneys' fees and expenses. Dkt. 271-

2 at 2. ***No money will money revert to Heartland under any circumstances.*** *Id.* Following

final approval of the Settlement, moreover, Class Members who did not timely

exclude themselves from the Class will be bound by a Released Claims provision

specifically tailored to the Program Fees at issue in his matter. *Id.* at 3.

On July 28, 2025, the Court granted the Parties' joint motion to modify the

Settlement to designate Feeding America to receive residual events in the unlikely

event that such funds remain after distribution. Dkt. 281. As explained in their joint

motion to modify the Settlement, the Parties made this request because Scott

Dodson, a law professor and Class Member, expressed concern that the issue of

residual funds would arise in the event of an incomplete electronic payment transfer,

despite that Class Members could elect from five forms of electronic payment. Dkt.

279 at 1–2. But Mr. Dodson objected regardless, explaining that while he generally

approves of the Settlement, Feeding America is purportedly an inappropriate cy pres

recipient because its mission is not to deter or address improper fees. Dkt. 282 at 3.

The Court ultimately found the objection is not well-taken. Dkt. 286. Nonetheless, the Court held that it would modify the Settlement to name an alternative residual fund recipient recommended by Mr. Dodson if Plaintiffs would independently research the candidate and confirm Heartland's agreement. *Id.* Plaintiffs have done so, selecting the charity on Mr. Dodson's proposed list that with a 100% rating on Charity Navigator (and confirming Heartland's non-opposition to same): National Consumer Law Center. (The Parties have informed Mr. Dodson that they selected this charity and will, consistent with the Court's order, update the Court when Mr. Dodson informs them as to whether he still intends to appear at the final approval hearing.)

Further, prior to granting final approval, Plaintiffs respectfully ask the Court to extend the claims submission deadline to September 23, 2025, consistent with Section IV(D)(1) of the Settlement Agreement (Dkt. 271-2).[2] Heartland does not oppose this request. In particular, the Parties have received 49 requests to submit late claims since the claims deadline passed on August 20, 2025. Decl. of Elena MacFarland ("MacFarland Decl.") ¶ 17.

## **LEGAL STANDARD**

Class actions "may be settled … only with the court's approval." Fed. R. Civ. P. 23(e).  Rule 23(e) governs a district court's analysis of the fairness of a proposed class action settlement and creates a three-step approval analysis. This Court has

---

[2] This is two days prior to the Fairness Hearing, which should ensure that Plaintiffs can give the Court a final, accurate count of late-submitted claims at that hearing.

already taken the first two steps. First, it has determined that it is likely to (a) approve
the proposed Settlement as fair, reasonable, and adequate, after considering the
factors outlined in Rule 23(e)(2), and (b) certify the Settlement after the Fairness
Haring. *See* Fed. R. Civ. P. 23(e)(1)(B); Dkt. 278 ¶¶ 3–6, 11. Second, it has directed
Notice to the Class, approved notices that describe the terms of the proposed
Settlement and explained how Class Members can submit claims, object to, and opt
out of the proposed Settlement, and appointed a Settlement Administrator to
supervise and administer the Notice process. *See* Fed. R. Civ. P. 23(c)(2)(B); Fed. R.
Civ. P. 23(e)(1), (5); Dkt. 278 ¶¶ 15–29. Because the Settlement satisfies all relevant
criteria, Plaintiffs now ask that this Court take the third and final step and grant final
approval of the Settlement with Heartland. *See* Fed. R. Civ. P. 23(e)(2).

## ARGUMENT

### I.    The Class Notice Plan was implemented successfully.

The first step before granting final approval is to "ensure that reasonable and
adequate notice was provided to Class Members." *Begley v. Ocwen Loan Servicing,
LLC*, 2017 WL 11672899, at *3 (N.D. Fla. Nov. 22, 2017) (citing *Phillips Petroleum
Co. v. Shutts*, 472 U.S. 797, 811–12 (1985)). Under Rule 23, "reasonable efforts
should be made to reach the entirety of the class," but it is not necessary "that each
individual class member actually receive notice." *Id.* (citing *Juris v. Inamed Corp.*, 685
F.3d 1294, 1321 (11th Cir. 2012)).

The Court previously approved the form and content of the Parties' proposed
Notice plan, finding that it "meets the requirements of Fed. R. Civ. P. 23 and

constitutes the best notice practicable under the circumstances[.]" Dkt. 278 ¶¶ 15–16. The Court thus directed that the parties effectuate a multi-faceted notice plan, including direct notice by email to Settlement Class Members, mailed notice to those for whom email addresses are unavailable, or whose email addresses in Heartland's records send bounce-backs, and the establishment of a dedicated settlement website, post office box, and toll-free telephone number. Dkt. 278 ¶¶ 15–18; Dkt. 271 at 19; Dkt. 271-2 §§ V(C)(1)(a)–(c). The record supports the Court's preliminary finding.

The Parties and Court-appointed Settlement Administrator (Dkt. 278 ¶¶ ¶ 17) have carried out the streamlined notice plan to great effect, providing notice to 94.93% of the Settlement Class Members. MacFarland Decl. ¶¶ 6–15. In response, Class Members broadly supported the Settlement, which received over 173,000 valid claims, in contrast with merely five opt-out requests and one objection that is unrelated to the amount that any class member will receive under the settlement. *Id.* ¶¶ 16, 21–22; *id.* Ex. B (the list of names and addresses of all entities and natural persons requesting exclusion). This constitutes valid notice "[b]ecause the Parties complied with the agreed-to notice provisions as preliminarily approved by this Court, and . . . there are no developments or changes in the facts to alter the Court's previous conclusion" that the notice plan likely would satisfy "due process and of Rule 23(c)(2)(B)." *Harvey v. Hammel & Kaplan Co., LLC*, 2020 WL 7138568, at *4 (M.D. Fla. Dec. 7, 2020) (Corrigan, J.) (granting final approval where parties provided timely notice in accordance with approved plan).

## II.   Final approval of the Settlement is appropriate because it is a fair, reasonable, and adequate resolution of this case.

A "court may approve [a settlement agreement] only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2)). Along with the criteria from Rule 23(e), courts in this Circuit also look to the six *Bennett* factors, which overlap with the federal rule. *Grant v. Ocwen Loan Serv., LLC*, 2019 WL 367648, at *4–5 (M.D. Fla. Jan. 30, 2019) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).[3] The Court's analysis "should be informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Kukorinis v. Walmart, Inc.*, 2024 WL 3226772, at *4 (M.D. Fla. June 28, 2024) (citation and alteration omitted); *see also Harvey*, 2020 WL 7138568, at *5 ("Settlements are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits.") (cleaned up). When "weighing these factors, the Court may 'rely upon the judgment of experienced counsel for the parties,' and 'absent fraud, collusion, or the like,' is 'hesitant to substitute its own judgment for that of counsel.'" *Grant*, 2019 WL 367648, *4 (quoting *Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011)).

---

[3] The *Bennett* factors are: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986.

At the preliminary approval phase, the Court concluded that: (1) "the Settlement is likely to be found fair, adequate, and reasonable"; (2) "the Class Representatives and Class Counsel have vigorously and effectively represented the Class"; (3) "[t]he Settlement was negotiated at arm's length, without collusion, and under the supervision of an experienced and well-respected mediator"; and (4) that "[t]he relief provided by the Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class[.]"  Dkt. 278 ¶¶ 3–6, 16. These conclusions apply equally now.

A.    Rule 23(e)(2)(A): The Class Representatives and Class Counsel have and will continue to zealously represent the Class (_Bennett_ factors four and six).

Under the first Rule 23(e)(2) factor, courts consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). When "evaluating the adequacy of class counsel and the class representative," the Court must consider "whether class counsel and plaintiffs had an adequate information base before negotiating and entering into the settlement." _Harvey_, 2020 WL 7138568, at *5. At preliminary approval, the Court held that "[t]he Class Representatives and Class Counsel have adequately represented the Class. The Court has observed that the Class Representatives and Class Counsel have vigorously and effectively represented the Class through the briefing and arguing motions for class certification, exclusion of expert testimony, and summary judgment." Dkt. 278 ¶ 4. The record continues to support that "Plaintiffs here retained counsel with extensive experience in large class-action lawsuits who have

vigorously represented the class during this matter." *Cotter v. Checkers Drive-In Restaurants, Inc.*, 2021 WL 3773414, at *8 (M.D. Fla. Aug. 25, 2021); Dkt 171 at 5–6; Dkt. 280 at 2–5, 10–12, 17–19.[4]

As detailed in Plaintiffs' preliminary approval briefing and petition for attorneys' fees, the Parties entered mediation only after counsel and the proposed class representatives doggedly pursued this case for nearly six intense years. Dkt. 280 at 2, 17–19. The Parties engaged in more than 1.5 years of active discovery, wherein Class Counsel reviewed and analyzed more than 12,600 documents and 40 gigabytes of data; prepared for and took ten fact depositions; defended two depositions of the named Plaintiffs; produced three experts and five reports; defended all three experts in depositions; and deposed each of Heartland's three experts. Dkt. 271 at 5–6; Dkt. 280 at 2–4, 10–14. The Parties also fully briefed a motion for judgment on the pleadings, three motions to dismiss, a motion for injunctive relief, a motion to compel discovery, class certification, summary judgment, and two *Daubert* motions, and argued the latter four motions at a lengthy hearing with oral argument on July 17, 2024. Dkt. 271 at 5–6; Dkt. 280 at 10–14. Throughout, Class Counsel leveraged their extensive experience and knowledge in complex class action litigation to confront Heartland's highly skilled counsel, whose efforts were unyielding. Dkt. 280 at 4, 17–19.

---

[4] For example, while the lone objection to this Settlement does not impact the compensation that Class Counsel will receive or the time when they will receive it, counsel has spent more than two dozen hours of attorney time (and additional staff time) addressing that objection to ensure that Class Members are timely paid.

In these circumstances, "[a] court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information." William B. Rubenstein, et al., *Newberg on Class Actions* § 13:49 (5th ed. 2012); *see also Grant*, 2019 WL 367648, *5 (Plaintiffs provided adequate representation where their discovery efforts prior to settlement enabled them to confirm the defendant's "practices with regard to the Class, the exact persons who made up the class, and the legal landscape."); *Kukorinis v. Walmart, Inc.*, 2021 WL 8892890, at *7 (S.D. Fla. Sept. 20, 2021) (the parties fully briefed a dispositive motion to dismiss on the merits, engaged in informal discovery, and exchanged additional information during the mediation process, which provided class counsel sufficient information to analyze the strengths and weaknesses of the case); *Cotter*, 2021 WL 3773414, at *9 (this factor supports the Settlement where the issues are complex, the law is evolving, and the parties expend "significant time and energy on this litigation").

### B. Rule 23(e)(2)(B): The Settlement was the result of informed, arm's length negotiations.

To evaluate "the fairness, adequacy, and reasonableness of a settlement, a court must ensure that the settlement is not the product of collusion by the negotiating parties." *Grant*, 2019 WL 367648, at *6.  At preliminary approval, the Court correctly found that "[t]he Settlement was negotiated at arm's length, without collusion, and under the supervision of an experienced and well-respected mediator." Dkt. 278 ¶ 5. There is no cause to change the Court's prior determination: it is

difficult to envision the reasonable person who could see the Settlement as a product
of fraud or collusion.

As detailed at length in Plaintiffs' preliminary approval briefing and attorneys'
fees petition, Plaintiffs signed the Settlement Agreement only after engaging in
protracted settlement negotiations under the supervision of Hunter Hughes, a
nationally-acclaimed mediator with vast experience mediating complex class actions.
Dkt. 271 at 7; Dkt. 280 at 4–5. These adversarial and contentious negotiations
involved detailed mediation statements, a failed in-person session, and required a
take-it-or-leave it mediator's proposal to reach agreement. *Id.* Accordingly, there
should be no dispute that the Settlement was the product of hard-fought, arms-length
bargaining. *See Grant*, 2019 WL 367648, at *6 (finding settlement the product of
arms' length bargaining where "[p]arties' protracted settlement negotiations occurred
after substantial discovery and were overseen by a well-regarded, independent
mediator"); *see also Harvey*, 2020 WL 7138568, at *6 (similar).

## C.    Rule 23(e)(2)(C): The Settlement provides strong relief.

Rule 23(e)(2)(C) requires the Court to consider whether "the relief provided
for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and
appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,
including the method of processing class-member claims; (iii) the terms of any
proposed award of attorney's fees, including timing of payment; and (iv) any
agreement [made in connection with the proposal]." A court's "inquiry" under this
factor "is whether the proposed settlement affords relief that falls within the range of

- 11 -

reasonableness, and not whether it is the most favorable possible result of litigation." *Grant*, 2019 WL 367648, at *6 (cleaned up).

Here, the Settlement provides $18,250,000 in non-reversionary cash for the benefit of approximately 5,670,000 Class Members (Dkt. 271 at 8), a result that the Court previously held provides for "fair, adequate, and reasonable" relief and is "in the best interests of the Settlement Class." Dkt. 278 ¶¶ 3, 6. Nothing has changed to alter that conclusion.

### 1.    Rule 23(e)(2)(C)(i): The Settlement mitigates the costs, risks, and delay of litigation (*Bennett* factors one, two, and three).

Plaintiffs previously explained the many risks of continued litigation in connection with the preliminary approval briefing and motion for attorneys' fees and costs. Further, at the preliminary approval stage the Court held that the Settlement provides for "fair, adequate, and reasonable" relief "when measured against, among other things, the costs, risks, and delay of trial and appeal. In particular, this case presents numerous risks on liability, as illustrated by the fulsome summary judgment briefing and oral argument presented at the July 17, 2024 hearing." Dkt. 278 ¶¶ 3, 6. The Court's preliminary finding remains supported by the record.

As explained in Plaintiffs' preliminary approval motion and attorneys' fees petition, Plaintiffs reiterate that success at each stage can never be assured but, given the novelty and difficulty of the issues in this litigation, delay and costs would be certain. Dkt. 271 at 8–11; Dkt. 280 at 7–10, 14–16. Indeed, the Court has already explained that though it was "inclined" "to grant class certification," summary

judgment was far less certain at "50/50 and pick them," with the Court expressing "some skepticism about" Plaintiffs' core legal "theory" and warning that any denial of summary judgment would be "by the skin of the plaintiffs' teeth." 7/17/24 H'rg Tr. at 96:10–103:9. Even if Plaintiffs survived summary judgment, the odds of securing a favorable verdict were no better than a coin flip (Dkt. 271 at 9), and the Eleventh Circuit and Supreme Court presented yet more risk (and delay) beyond that. To that end, Plaintiffs respectfully reiterate that the Settlement will avoid prolonging the litigation, pursuant to the Court's observation at the July 17 hearing that "you shouldn't have a case that's [already] five years old and be where we are[.]" 7/17/24 H'rg Tr. at 6:2–5.

In short, this Settlement will obviate years of additional, costly, and risky litigation in exchange for immediate cash payments. This principled compromise will inure to the clear benefit of the Settlement Class, and thus this factor strongly favors final approval. Fed. R. Civ. P. 23(e)(2)(C)(i); *Grant*, 2019 WL 367648, at *7 (cleaned up) (granting final approval where "there exists real potential for years of further litigation, as well as a possibility that [the defendant] could prevail on the merits or defeat contested class certification").

### 2.  Rule 23(e)(2)(C)(ii): The method of distributing relief is simple and effective.

Another relevant factor at final approval is "[t]he process by which the settlement proceeds will be distributed to Settlement Class members." *Grant*, 2019 WL 367648, at *7 (citing Fed. R. Civ. P. 23(e)(2)(C)(ii)). At preliminary approval,

the Court observed that "[t]he Settlement is non-reversionary and is proposed to be distributed based on each Class Member's paid Program Fees, a method that is well established as fair." Dkt. 278 ¶ 7. The record continues to support the Court's finding.

Payment procedures are straightforward and implemented easily. Following final approval, the Settlement Administrator will promptly effectuate the claims and payment process to class members, by calculating Class Members' pro rata share of the Settlement, scaled relative to each Class Members' damages, after deducing the costs of notice and claims administration and attorneys' fees and expenses. Dkt. 271 at 2. Because claimants have already submitted payment information, valid claimants do not need to submit additional information to receive money from the Settlement. Dkt. 271-2 §§ V(D)(3). With respect to claims suspected as fraudulent pursuant to the Settlement Administrator's robust anti-fraud procedures, the Settlement Administrator will send a deficiency notice to each claimant and provide instructions for verifying the claim. MacFarland Decl. ¶¶ 18–19. Claimants with suspected fraudulent claims will have 21 days to complete the verification process, and any claim that is not verified will be denied. *Id.* Additionally, with respect to timely claims rejected due to missing information or documentation, the Settlement Administrator will send a deficiency notice to each Claimant and provide 30 days to resubmit the claim along with the requested information. *Id.* ¶ 20.

### 3.    Rule 23(e)(2)(C)(iii): The proposed award of attorneys' fees raises no barrier to preliminary approval.

The "terms of any proposed award of attorney's fees, including timing of payment," are also factors in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(iii). As explained in the separately-filed motion for attorneys' fees, Class Counsel have sought a fee award worth 27 percent of the non-reversionary Settlement, a request that is consistent with (or less than) fee awards in other common fund cases involving significant risks, novel and difficult issues, and substantial attorney time and labor, and reasonable for all of the reasons described in that motion. *See* Dkt. 280. Class Counsel's request was described in each notice (*see* Dkt. 271-4, Dkt. 275-1 at 2, Dkt. 275-2 at 14), formally filed with the Court (*see* Dkt. 280), and posted on the Settlement website well in advance of the deadline to object to that request. MacFarland Decl. ¶ 11. Accordingly, this factor weighs in favor of final approval of the Settlement. *See Harvey*, 2020 WL 7138568, at *8 (awarding requested attorneys' fees and costs where no objection was filed).

### 4.    Rule 23(e)(2)(C)(iv): There are no agreements between the Parties other than the Settlement bearing on final approval.

Plaintiffs confirmed in their prior preliminary approval motion that no side agreements required to be identified under Rule 23(e)(3) exist. Dkt. 271 at 12; Dkt. 278 ¶ 8. Nothing has changed. This factor therefore supports final approval.

### D.    Rule 23(e)(2)(D): The Settlement treats Class Members equitably.

Rule 23(e)(2)(D) directs the Court to consider whether the proposed Settlement treats Class Members equitably relative to each other. *See Grant*, 2019 WL

367648, at *7. This subsection of Rule 23(e) determines "whether the apportionment
of relief among class members takes appropriate account of differences among their
claims, and whether the scope of the release may affect class members in different
ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), Advisory
Committee's Note to 2018 amendments. As the Court previously found at the
preliminary approval stage, this Settlement satisfies Rule 23(e)(2)(D): "The
Settlement apportions the Settlement Fund, after deductions for attorneys' fees,
costs, and settlement expenses, based on the amount of Program Fees each valid
claimant paid, an apportionment that treats Settlement Class Members equitably."
Dkt. 278 ¶ 10. There is no cause to alter that finding; this factor therefore supports
final approval of the Settlement.

### E.    Class Members' participation in and support for the Settlement is overwhelming (*Bennett* factor 5).

Finally, at the final approval stage courts must also consider "the substance
and amount of opposition to the settlement[.]" *Grant*, 2019 WL 367648, at *4
(quoting *Bennett*, 737 F.2d at 986).

The Class has voted with its feet and provided near-universal support for the
Settlement. Class Members submitted 173,333 timely, valid claims. MacFarland
Decl. ¶ 16. Only five submitted opt-out requests, and just one Class Member
objected. *Id.* ¶¶ 21–22. "The low opt-out and objection rates weigh in favor of
granting final approval to the Settlement." *Grant*, 2019 WL 367648, at *8; *see also
Hall v. Bank of America, N.A.*, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014)

(where objections from settlement class members equated to less than one-tenth of a percentage of the class and no attorney general or regulator submitted an objection, "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"). Additionally, as explained in Plaintiffs and Class Counsel's attorneys' fees motion, the undersigned even received two e-mails from notice recipients requesting representation in other matters, further indicating that Class Members are pleased with the Settlement. Dkt. 280 at 15.

The Court, moreover, has already overruled the sole objection to the Settlement, which did not implicate the amount any Class Member will or could receive, the amount Heartland will or could pay, the quantum of attorneys' fees Class Counsel will or could receive, and almost certainly implicates less than $100. Dkts. 284, 286. The objector, Mr. Dodson, generally approved of the Settlement, and objected only that Feeding America is an improper cy pres recipient because its mission is not closely related to this lawsuit. Dkt. 282 at 3. While Mr. Dodson's objection was in error, *see id.*, Plaintiffs have nevertheless researched all of his proposed alternative recipients to avoid holding up the distribution of money to class members during appeal, selecting National Consumer Law Center (to which Heartland does not object) to receive any cy pres funds (if any exist).[5]

---

[5] Out of an abundance of caution, Plaintiffs reiterate that neither the Parties nor Mr. Dodson see a reason for this modification to delay final approval. Dkt. 286 ("The Court does not expect that this further modification will impact the hearing date or current schedule[.]"); *cf. Grant*, 2019 WL 367648, at *8 (rejecting objections to settlement that did "not relate to the terms of the Settlement or the alleged conduct that gave rise to Plaintiff's complaint").

III.  **All criteria for certification of the Settlement Class are satisfied.**

As the Court concluded in granting preliminary approval and directing notice to the Class, the Settlement Class likely meets the requirements under Fed. R. Civ. P. 23(a) and 23(b)(3).  Dkt. 278 ¶ 11. This remains true: Plaintiffs have demonstrated that certification for Settlement is appropriate.

## CONCLUSION

Plaintiffs respectfully request that the Court: (1) certify the Settlement Class; (2) grant the Parties' request to permit Class Members to submit late-filed claims through September 23, 2025; (3) designate National Consumer Law Center as the recipient of any cy pres in the event it exists; (4) grant final approval to the Settlement; (5) approve an award of attorneys' fees in the amount of $4,927,500 (27 percent of the total value of the settlement), plus reimbursement of litigation expenses in the amount of $547,500; and (6) permit Plaintiffs to submit the Proposed Order and Proposed Final Judgment attached hereto, pursuant to Local Rule 3.01(j).

Date: September 8, 2025         */s/ Jason L. Lichtman*

Jason L. Lichtman
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
212.355.9500
jlichtman@lchb.com

Sarah D. Zandi
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
415.956.1000
szandi@lchb.com

Kenneth S. Byrd
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
222 2nd Ave. South, Suite 1640
Nashville, Tennessee 37201-2379
615.313.9000
kbyrd@lchb.com

Brian W. Warwick, FBN: 0605573
Janet R. Varnell, FBN: 0071072
VARNELL & WARWICK, P.A.
400 N. Ashley Drive, Suite 1900
Tampa, Florida 33602
352.753.8600
jvarnell@vandwlaw.com
bwarwick@vandwlaw.com

Lisa R. Considine, Esq.
David J. DiSabato
NAGEL RICE LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel: 973-618-0400 x 111
lconsidine@nagelrice.com

*Class Counsel*

## LOCAL RULE 3.01(g) CERTIFICATION

Under Middle District of Florida Local Rule 3.01(g), I, Sarah D. Zandi, certify that Plaintiffs' counsel have conferred with counsel for Defendant, and Defendant does not oppose the requested relief for Settlement purposes only.

## CERTIFICATE OF SERVICE

On September 8, 2025, I caused to be electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will deliver the document to all counsel of record.

*/s/ Sarah D. Zandi*